**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANITA GONZALEZ,<br><br>            Plaintiff,<br><br>        v.<br><br><br>CITY OF MCFARLAND, CALIFORNIA;<br>JOHN WOONER; MANUEL CANTU;<br>DOES 1 through 100.<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:13-cv-00086 - JLT<br><br>ORDER GRANTING IN PART DEFENDANTS'<br>MOTION TO STRIKE<br><br>(Doc. 16)<br><br>ORDER GRANTING IN PART DEFENDANTS'<br>MOTION TO DISMISS<br><br>(Doc. 17) |

The City of McFarland, California; John Wooner; and Manuel Cantu ("Defendants") seek to strike the defamation claims alleged by Plaintiff Anita Gonzalez ("Plaintiff") in her First Amended Complaint as a Strategic Lawsuit Against Public Participation.  (Doc. 16).  In addition, Defendants seek dismissal of the first, third, fourth, fifth, and sixth causes of action in the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 17).  Plaintiff filed her opposition to the motions to strike and dismiss her claims (Docs. 20, 22), to which Defendants filed replies on May 13, 2013.  (Docs. 23-24).

On May 20, 2013, the Court held a hearing on the motions.  For the following reasons, Defendants' motions to strike and dismiss are **GRANTED IN PART**.

///

I.        **Plaintiffs' Factual Allegations**

Plaintiff filed her First Amended Complaint ("FAC") on April 4, 2013.  (Doc. 15).  Plaintiff alleges she was employed by the McFarland Mutual Water Company in 1997 and, when this agency was taken over by the City of McFarland, California in 2003, she began her employment with the City. *Id.* at 1.  She was one of three employees in the City's finance department, and her duties included processing "utility and miscellaneous payments made to the City" as well as Accounts Payable.  *Id.* at 2.

On April 2, 2012, defendant John Wooner, the City Manager, advised Plaintiff and other employees at a staff meeting in the City Council Chambers that "nobody was going to be laid off or terminated by the City of McFarland and rumors to that effect were untrue." (Doc. 15 at 2). In addition, Wooner informed the staff that the City "would be hiring two positions for the Public Works Department." *Id.*

On April 26, 2012, Plaintiff and her two co-workers within the finance department, Sylvia Escalante and Cecilia Medina, went to breakfast together on their own time.  (Doc. 15 at 2).  At the restaurant, Plaintiff and her co-workers discussed the idea that "City funds were being spent unwisely." *Id.* at 3.  In addition, they "discussed the conduct of another employee that could cause liability to the City in a potential civil lawsuit."  *Id.*  Plaintiff asserts the owner of the restaurant informed Wooner of the discussions.  *Id.*  Plaintiff received an "Employee Warning Report" regarding the breakfast conversation on April 27, 2012.  *Id.*  The "Employee Warning Report" indicated Plaintiff committed the following violations:  carelessness, violation of company policies or procedures, unsatisfactory behavior towards others, and insubordination.  (Doc. 20-6 at 2).  Similar warnings were issued by Wooner to Sylvia Escalante and Cecilia Medina.  (Doc. 15 at 3).

On June 21, 2012, Plaintiff was informed that her position, as well as those held by Escalante and Medina, would be eliminated.  (Doc. 15 at 3).  In a letter dated July 26, 2012, Wooner reported "the City of McFarland had reorganized the three clerical positions within the City held by Plaintiff, Escalante, and Medina, which resulted in the elimination of the three positions."  *Id.*  Two clerical positions were opened, which required "a minimum of an associates degree or two full academic years of attendance at an accredited college or university in accounting, business administration, or public

administration." *Id.* Plaintiff asserts she was told she could apply, but "Wooner and other City officials were aware that Plaintiff had no such degree or academic history and could not qualify for either of the two positions." *Id.* According to Plaintiff, "Wooner was involved in establishing the criteria for the two new clerical positions," and "was aware at the time that Plaintiff could not meet the criteria." *Id.* at 4. In addition, Escalante and Medina were precluded from applying for the new clerical positions for this same reason. *Id.* Plaintiff's employment with the City ended on August 17, 2012. *Id.* At this time, Wooner provided Plaintiff a letter of reference and described her as a "tremendous asset" who has his "highest recommendation." (Doc. 20-5 at 2)

After the reorganization, Alicia Puentes, a friend of Plaintiff's who volunteers with the City's Police Department, had a conversation with defendant Manuel Cantu. (Doc. 15 at 9). She approached Cantu, the Mayor of McFarland, in the parking lot of City Hall, and inquired why Plaintiff was losing her job. *Id.* Cantu told Puentes that "the City needed to have a staff that would be able to perform alone and not be asking for help or asking what to do." *Id.* He told Puentes that the former employees, including Plaintiff, asked for guidance, and "indicat[ed] Plaintiff did not know how to perform her job function as an employee within the City finance department." *Id.*

In October 2012, Wooner prepared a "City Manager's report" that was circulated to citizens of McFarland. (Doc. 15 at 7). Wooner included the following information regarding the reorganization of the finance department:

> The reorganization was approved by the City Council during the budget process, which was to lay off three clerks and to replace them with two mid-range accountants. The reorganization saves the city money by eliminating one position and makes the office much more efficient by having higher level employees who have a strong understanding of accounting and in return this should go along (sic) way in approving (sic) customer service. The new positions will also aid by having full rounded staff members that understand the general ledger, fund balance accounting, account analysis and help to lower costs associated with audits.

(Doc. 15-2 at 2). Plaintiff asserts the reorganization and loss of her job was well-known to City employees, many of whom lived within the City limits and received a copy of the report. (Doc. 15 at 8). According to Plaintiff, "it was clear that the City Manager's report was referencing Plaintiff." *Id.*

Upon these facts, Plaintiff states the following claims: (1) a violation of the First Amendment under 42 U.S.C. § 1983 by Wooner; (2) a violation of 42 U.S.C. § 1983 by the City; (3) discrimination,

discharge, or refusal to hire for exercise of employee rights in violation of Cal. Labor Code 98.6 and 96(k) by the City; (4) injunctive relief from the interference with enjoyment of legal relief pursuant to Cal. Civil Code 52.1; (5) defamation by Wooner and the City; and (6) defamation by Cantu and the City. (Doc. 15). Plaintiff asserts she submitted a Government Tort Claim for her claims. *Id.* at 4.

## II.    Motion to Strike: Anti-SLAPP

Defendants seek to strike Plaintiff's defamation claims under Cal. Code Civ. Proc. § 425.16, which "provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump University*, ___F.3d___, 2013 U.S. App. LEXIS 7719 at *11-12, 2013 WL 1633097 at *4 (9th Cir. Apr. 17, 2013) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809 (1994)).

California's anti-SLAPP statute was enacted "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *see also Dickens v. Provident Life and Acc. Ins. Co.,* 117 Cal. App. 4th 705, 713 (2004) (explaining a SLAPP is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights"). In relevant part, Section 425.16 provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b). The California Supreme Court has found that governmental agencies are "persons" for purposes of an anti-SLAPP motion. *Vargas v. City of Salinas*, 46 Cal.4th 1, 17 (2009).

When ruling on a motion to strike pursuant to Section 425.16, the Court engages in a two-step process. *Metabolife Int'l*, 264 F.3d at 839; *Daniels v. Robbins*, 182 Cal. App. 4th 204, 214 (2010). First, a defendant bears the initial burden to demonstrate the challenged causes of action arise from an act in furtherance of the defendant's right of petition or free speech, including:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e).  If the defendant satisfies this burden, the burden shifts to the plaintiff to show the probability of prevailing on the challenged claim.  *Metabolife Int'l*, 264 F.3d at 840; *Daniels*, 182 Cal. App. 4th at 214.  The plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 741 (2003) (citation omitted).

### A.    Defamation Claim against Wooner and the City

Defendants assert Plaintiff's fifth cause of action for defamation against Wooner and the City should be stricken because Wooner's statements are protected by Section 425.16.[1]  (Doc. 16-1 at 5).

### 1.    Protected Activity

Plaintiff alleges Wooner made defamatory statements in his City Manager's Report, which was published and distributed to citizens of McFarland in October 2012 ("the Report").  (Doc. 15 at 7).  According to Plaintiff: "The comments by Wooner in the City Manager's report are defamatory per se as they impugned Plaintiff's abilities in her chosen field of employment, and indicate she was incompetent at her job and it implied that was why she had been terminated from her job." *Id.* at 8.

Defendants contend comments published in the Report are protected by Section 425.16(e)(3) (Doc. 16-1 at 5), which protects "a written or oral statement or writing in a place open to the public or a public forum in connection with an issue of public interest."  Accordingly, to carry their initial burden to demonstrate Plaintiff's defamation claim is subject to the anti-SLAPP statute, Defendants must show Wooner's written Report was (a) made in a public forum and (b) related to an issue of public interest.

---

[1] Public entities in California may be held liable only for violations of statutes and constitutions. (Cal Gov. Code 815 ["Except as otherwise provided by statute, (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."].  Thus, the Court presumes Plaintiff seeks to impose liability here under Civil Code § 45.

1

2          *a.      Public forum*

3          The public forum "is traditionally defined as a place that is open to the public where

4   information is freely exchanged." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 475

5   (2000).  Consequently, California courts have determined that "[u]nder its plain meaning, a public

6   forum is not limited to a physical setting, but also includes other forms of public communication." *Id.*

7   at 476; *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1006 (2001).  Accordingly, a news

8   publication may be public forum.  *Damon*, 85 Cal. App. 4th at 476; *see also Annette F. v. Sharon S.*,

9   119 Cal. App. 4th 1146 (2004).

10         In *Damon*, the California Court of Appeal considered whether "The Village Voice" newsletter

11   was a public forum for purposes of Section 425.16.  *Id.*, 85 Cal. App. 4th at 476-77.  The court noted it

12   "was distributed to . . . approximately 3,000 Ocean Hills residents and neighboring businesses." *Id.* at

13   476.  Although the plaintiff argued the newsletter "was essentially a mouthpiece for a small group of

14   homeowners who generally would not permit contrary viewpoints to be published," the court explained

15   "a single publication does not lose its 'public forum' character merely because it does not provide a

16   balanced point of view." *Id.*  The court determined "The Village Voice" newsletter was a public forum,

17   because "it was a vehicle for communicating a message about public matters to a large and interested

18   community" and "[a]ll interested parties had full opportunity to read the articles in the newsletter." *Id.*,

19   85 Cal. App. 4th at 476.

20         Here, Plaintiff alleges the Report was included in a newsletter "circulated to all citizens within

21   McFarland, CA."  (Doc. 15 at 7).  The newsletter communicated information to a community similar to

22   "The Village Voice," and members of the community had an opportunity to read the information

23   contained therein.  Consequently, Wooner's comments were made in a public forum.

           *b.      Connection with an issue of public interest*

24         Defendants must show "the topics of the allegedly defamatory statements concerned 'issues of

25   public interest." *Damon*, 85 Cal. App. 4th at 478 (quoting Cal. Code Civ. P. § 425.16(e)(3)).  Though

26   not defined within the anti-SLAPP statute, an "issue of public interest" is generally "something of

27   concern to a substantial number of people."  *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003).

28   "Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of

public interest." *Price v. Operating Eng'rs Local Union No. 3*, 195 Cal. App. 4th 962, 971-72 (2011).

Plaintiff asserts Wooner's comments "involved work performance which is private . . . and not a matter of public concern." (Doc. 15 at 8). According to Plaintiff, "[her] private work performance while she was employed by the City has absolutely nothing in common with the budget reorganization that eliminated her position." (Doc. 20 at 11). However, the Report written by Wooner contained information regarding the City's budget, approval of reorganization by the City Council, equipment purchases by the City, and the reduction in utility rates. (Doc. 15-2 at 2). Such topics are undeniably issues of public interest. *See Church of Scientology v. Wollersheim*, 42 Cal. App. 4 th 628, 250 (1996) ("matters of public interest include legislative and governmental activities"). Accordingly, the allegedly derogatory comments contained in the Report were made in connection with matters of public interest.

>    2.    Probability of prevailing on the merits

Because Defendants have carried their initial burden, Plaintiff must show a probability of prevailing on her defamation claim against Wooner and the City. *Metabolife Int'l*, 264 F.3d at 840; *Daniels* 182 Cal. App. 4th at 214.

Under California law, defamation "involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999); *see also Lee Myles Assocs. Corp. v. Paul Rubke Enters., Inc.*, 557 F. Supp.2d 1134, 1139 (S.D. Cal. 2008); Cal. Civil Code 45 ["Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."] "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." *Id.* Whether a published statement "is reasonably susceptible to a defamatory interpretation is a question of law for the trial court." *Id.* at 647.

Plaintiff alleges the statements made in the Report "are defamatory per se." (Doc. 15 at 8). Under the California statute, defamatory statements are "recognized as either being per se (on its face) or *per quod* (literally meaning, 'whereby')." *Palm Springs Tennis Club v. Rangel,* 73 Cal. App. 4th 1,

5 (1999).  To succeed on her claim for a statutory violation of libel per se by Wooner and the City, Plaintiff must show "defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts." *Id.* (citing *MacLeod v. Tribune Publishing Co.* 52 Cal. 2d 536, 549 (1959)).

Significantly, this is not the case here.  To find the statements in the Report to be defamatory toward Plaintiff, a third person must know extrinsic facts, including: (1) Plaintiff worked for the finance department as a clerk and (2) her position was one of those terminated.  Plaintiff alleges: "The reorganization and loss of [her] job was well known *by employees of the City of McFarland,*" many of whom "live within the City limits and received a copy of the City Manager's Report."  (Doc. 15 at 8) (emphasis added).  Accordingly, Plaintiff acknowledges the defamatory meaning requires knowledge beyond the information provided in the face of the Report.

The California Court of Appeal explained that when "the defamatory meaning would appear only to readers who might be able to recognize it through some knowledge of specific facts and/or circumstances, not discernible from the face of the publication and which are not matters of common knowledge attributable to all reasonable persons, then the libel cannot be libel per se." *Id.*; *Walker v. Kiousis*, 93 Cal.App.4th 1432, 1442 (2001) (same).  To find any defamatory meaning in the Report would require knowledge that is not "attributable to all reasonable persons," but rather only employees of the City.  Consequently, Plaintiff is unable to show a probability of prevailing on her claim that the Report was defamation per se by Wooner and the City.

On the other hand, the Plaintiff alleges also Wooner "defame[d]" her which indicates she also claims simple libel,[2] rather only libel per se.  (Doc. 15 at 8)  To succeed on a claim of libel, Plaintiff must demonstrate the statement is reasonably susceptible of being interpreted to imply a provably false assertion of fact. *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 115-116 (2007).  "Even if [the statements] are objectively unjustified or made in bad faith, publications which are statements of opinion rather than fact cannot form the basis for a libel action."  *Campanelli v. Regents of University*

---

[2] Under California Civil Code § 45, libel is defined as, "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

*of California*, 44 Cal.App.4th 572, 578 (1996).  This determination is as a matter of law.  *Id*. To determine whether the statement contains false assertions of fact, "[t]he court must look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed. (quoting *Hoffman Co. v. E.I. Du Pont de Nemours & Co.*, 202 Cal.App.3d 390, 398, (1988)).

Here, Plaintiff has pointed to little in the newsletter which she contends was demonstrably false.  For example, the reorganization *was* approved by the City Council, three employees *were* laid off and they *were* replaced with two people with accounting backgrounds.  Likewise, reducing the number of employees, in fact, *would* likely save the City money.  Thus, there is nothing demonstrably false about these statements.

On the other hand, whether the office will operate more efficiently, whether employees with greater educational credentials are "higher level" than those without this background and whether the new employees' backgrounds in accounting will improve customer service, improve accounting processes and lower auditing costs, are opinions.  When considered in context, these statements are aspirational in nature.  For example, the newsletter indicates the changes "should go along [sic] way in approving [sic] customer service."  It suggests also that the changes will "aid" the City and "help to lower costs associated with audits."  This is nothing more than "colorful hyperbole" intended to assure the citizenry the changes were fiscally sound and does not demonstrate provable falsity.  *Campanelli*, 44 Cal.App.4th at 579.

Even when considered, with the additional knowledge that Plaintiff was one of the people replaced, the Court's analysis does not change.  Plaintiff asserts that no conclusion can be drawn from the statements except that reducing staff would not improve customer unless the three staff members previously in place provided inferior customer service to the two who would be hired.  To the contrary, in light of the fact the statements refer to replacement of the three clerical staff members with two "mid-level accountants," Plaintiff's interpretation of the statement is unreasonable because the statement implies the new hires will possess greater skill.  This is not disparaging of Plaintiff's performance; it simply recognizes that those with greater knowledge and skill should produce better results. However, even if Plaintiff's interpretation of the statements is reasonable, there is no way the

9

1  Court can imagine that Plaintiff can demonstrate the statement of anticipated improvement in

2  customer service, accounting processes and auditing costs, was false.[3]

3      Unlike in *Maidman v. Jewish Publications, Inc.*, 54 Cal.2d 643, 649 (1960), the whole tenor

4  of Wooner's statements was not "sarcasm and derision, [which] obviously would, and was intended to,

5  expose [Plaintiff] to contempt and ridicule in said community, and would obviously cause [her] to be

6  shunned and avoided by any who read it."  Though a statement may be libelous even when the

7  defamatory meaning is merely insinuated (*Id*.at 651), here, there is no insinuation as to Plaintiff's

8  work performance and only through a calculated misinterpretation coupled with significant

9  background facts can even an inference of defamation be made out.

10      *Patton v. Rpoyal Industries*, 263 Cal.App.2d 760 (1968), provides no assistance to Plaintiff.  In

11  *Patton*, the plaintiffs notified their employer they intended to quit to start their own, competing

12  business.  *Id.* at 763-764.  In response, the defendant sent letters out to 72 customers or potential

13  customers and told them that the three plaintiffs had been "terminated" and specifically listed them by

14  name.  *Id.*  Despite that it was undisputed the three plaintiffs were highly-skilled, the letter reported

15  that the three would be replaced with employees of greater experience and knowledge which, the letter

16  assured, would result in improved and more efficient service.  *Id.*  Evidence from six who received the

17  letter indicated that after reading the letter, they believed the plaintiffs had been fired for cause. *Id.* On

18  appeal, the court determined that there was no non-libelous interpretation of the letter and the question

19  of liability should not have been submitted to the jury.  This is significantly different from the instant

20  situation where there is no evidence anyone, other than Plaintiff understood Wooner's Report to be

21  defamatory.

22          3.      Conclusion

23      Defendants have met their burden to show Plaintiff's cause of action for defamation against

24  Wooner and the City arises from an act in furtherance of Wooner's right of free speech, and Plaintiff

---

[3] Indeed, the Court finds it highly improbable that Plaintiff would be able to attest honestly that customer service, accounting processes and auditing costs when the three women were employed were perfect such that improvement, without equivocation, could not be achieved.  Further, the fact that the two people who were hired ultimately were not as qualified as the three who were let go, this does not demonstrate the statement is false because at the time the statement was made, the positions, apparently, had not been filled or, at least, the improvements, though anticipated, had not yet been achieved.

1   has not shown a probability of prevailing on the merits of this claim.  Therefore, Defendants' motion

2   to strike Plaintiff's fifth cause of action is **GRANTED**.

3         **B.**    **Defamation Claim against Cantu and the City**

4        Defendants contend Plaintiff's sixth cause of action for defamation against Cantu and the City

5   should be stricken because Cantu's statements to Alicia Puentes were statements in furtherance of his

6   right to free speech[4], and protected by Section 425.16(e)(1), (2), (3), and (4).  (Doc. 16-1 at 5-6).

7          <u>1.    Protected Conduct</u>

8        Oral statements "before a legislative, executive, or judicial proceeding, or any other official

9   proceeding authorized by law" are protected under section 425.16(e)(1).  However, Cantu's statements

10   were not made before any official proceeding.  Thus, this section is inapplicable.

11        In addition, Defendants contend the statements made by Cantu to Puentes are protected because

12   they were "made in connection with an issue under consideration or review" by the City Council.

13   (Doc. 16-1 at 5) (quoting Cal. Code Civ. P. § 426.16(e)(2)).  According to Defendants, the statements

14   made by Cantu "pertain[ed] to the City Council's decision to authorize organization of the Finance

15   Department." *Id.*  Even assuming this to be true, Cantu's statements would not be entitled to protection

16   under Section 425.16(e)(3).  The budget and reorganization were proposed to the City Council in June

17   2012, and "the new budget was scheduled to begin on July 1, 2012." (Doc. 15 at 4).  Because the

18   conversation between Cantu and Puentes took place "after July 26, 2012" (Doc. 15 at 9), the issues of

19   reorganization and the budget were no longer under consideration by the City Council. *See City of*

20   *Costa Mesa v. D'Alessio Investments, LLC*, 214 Cal. App. 4th 358, 373 (2013) ("a matter is under

21   consideration if it is kept before the mind [and] given attentive thought") (internal quotation marks

22   omitted).  Consequently, Defendants have not shown Cantu's statements are entitled to the protection

23   of Section 425.16(e)(2). *See Paul v. Friedman,* 95 Cal. App. 4th 853, 866 (2002) (explaining an issue

24   must be currently under consideration or review for protection to be accorded under Section 425(e)(2)).

25        Moreover, Defendants have not shown Cantu's statements were made "in connection with a

---

[4] Defendants assert that Plaintiff is being inconsistent when she claims that Mayor Cantu's comments are not protected but those she made at the restaurant on April 26, 2012, are.  (Doc. 24 at 1)  By the same token, the irony of the fact that Plaintiff, allegedly, was disciplined as a result of making these comments and seemingly Mayor Cantu was not, is not lost on the Court.

1    public issue or an issue of public interest" such that the statements would be protected under Sections

2    425.16(e)(3) or (4).  Defendants contend Cantu's "statement . . . was made in his capacity as Mayor and

3    during his official duties as Mayor."  (Doc. 16-1 at 6).  However, Plaintiff alleges—and Defendants do

4    not dispute—that Puentes approached Cantu in the City Hall parking lot to inquire "why the Plaintiff

5    was losing her job" and "why Plaintiff's job was eliminated during the reorganization."  (Doc. 15 at 9).

6    Cantu's response indicated Plaintiff "did not know how to perform her job function" and Plaintiff was

7    "always asking for help and what to do next."  *Id.*  Though the reorganization was an issue of public

8    concern, the statements related to how Plaintiff performed her job, were not. *Rivero v. American*

9    *Federation of State, County, and Municipal Employees, AFL-CIO,* 105 Cal.App.4[th] 913, 924-925

10   (2003) [a public employee performance of his supervision of eight employees, is not a public issue.].

11           The California Court of Appeal explained "a public issue is implicated if the subject of the

12   statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect

13   large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public

14   interest." *D.C. v. R.R.* 182 Cal. App. 4th 1190, 1215 (2010).  Plaintiff was not a person in the public

15   eye, the statement did not affect large numbers of people and the narrow scope the conversation—

16   Plaintiff's employment with the City—was not an issue of widespread, public interest.  Thus, as to

17   Cantu's statements, the anti-SLAPP motion is **DENIED**.

18                   2.       Probability of prevailing on the merits

19           Because Defendants have not carried their initial burden to show Plaintiff's cause of action for

20   defamation against Cantu and the City arises from an act in furtherance of Cantu's right of petition or

21   free speech, the burden does not shift to Plaintiff to show the probability of prevailing on the merits of

22   this claim.  Defendants' motion to strike the defamation claim raised against Cantu and the City

23   (Plaintiff's sixth cause of action) is **DENIED**.

24   **III.    Motion to Dismiss: Rule 12(b)(6)**

25           Under the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss for a

26   plaintiff's failure to state a claim upon which relief can be granted prior to filing a responsive

27

28

                                                        12

pleading. Fed. R. Civ. P. 12(b)(6). Here, Defendants seek dismissal of Plaintiff's first, third, fourth, fifth, and sixth causes of action pursuant to Rule 12(b)(6).[5]

### A.    Legal Standards

Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss for failure to state a claim. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). On a motion filed pursuant to Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted). Further, the Court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

### B.    First Cause of Action: Section 1983 against Wooner

Defendants assert: "Plaintiff's first claim against Mr. Wooner for free speech retaliation in violation of 42 U.S.C. § 1983 is redundant because it is identical to the claim against the City." (Doc. 17-1 at 8). Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the Court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading,

---

[5] Because the Court has determined Plaintiff's claim for defamation per se against Wooner and the City should be stricken as anti-SLAPP, it does not again discuss Plaintiff's fifth cause of action for purposes of the motion to dismiss.

either on the Court's own motion or by motion of a party. Under Rule 12(f), "[r]edundant allegations are those that are needlessly repetitive." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.,* 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted).  Accordingly, Defendants' motion to dismiss this claim is construed as a motion to strike under Rule 12(f).  *See Thompson v. Paul*, 657 F.Supp.2d 1113, 1129 (D. Ariz. 2009).

A suit against an individual in his official capacity may be treated as a suit against the governmental entity for which he works.  *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 524 n. 3 (9th Cir. 1999).  It follows that a claim against an individual in his official capacity is "needlessly repetitive" of a claim against the governmental entity for which he works.  *Butler v. Elle,* 281 F.3d 1014, 1023 (9th Cir. 2002) (explaining "[c]laims against governmental officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded"); *see also Hernandez v. City of Napa*, 781 F. Supp. 2d 975, 1001 (N.D. Cal. 2011) (an individual may be dismissed as a redundant defendant where the governmental entity for which he works is also identified as a defendant).  The claim against Wooner may be stricken as redundant if he is sued in his official capacity because Plaintiff also raised a claim against the City for a violation of Section 1983.

Significantly, however, Plaintiff asserts Wooner is liable in his individual capacity, rather than his official capacity.  (Doc. 22 at 1-2). The Ninth Circuit explained: "To state a claim under § 1983 against state officials in their individual capacities, a plaintiff must plead that the officials, 'acting under color of state law, caused the deprivation of a federal right.'" *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  In the First Amended Complaint, Plaintiff alleges that "Wooner was a person acting under color of state law under 42 U.S.C. 1983" when he violated her rights under the First Amendment.  (Doc. 15 at 4).  This is sufficient for Section 1983 liability to attach to Wooner in his individual capacity, and the claim against him is not redundant.  Consequently, Defendants' motion to dismiss Plaintiff's first cause of action, construed as a motion to strike under Rule 12(f), is **DENIED**.

### C.    Third Cause of Action: Violations of California Labor Code

Defendants argue Plaintiff's third claim, raised under Cal. Labor Code §§ 98.6 and 96(k), is deficient because she does not allege she exhausted her remedies by filing a charge with the Labor

1     Commissioner. (Doc. 17-1 at 9-11). Cal. Labor Code § 98.6 provides in pertinent part that "No

2     person shall discharge an employee or in any manner discriminate against any employee … because

3     the employee … engaged in any conduct delineated in this chapter, including the conduct described in

4     subdivision (k) of Section 96… or because of the exercise of the employee … of any rights afforded

5     him or her." The conduct described in Section 96(k) includes "lawful conduct occurring during

6     nonworking hours away from the employer's premises." Cal. Labor Code § 96(k). Plaintiff recognizes

7     "there is a strong disagreement among the courts as to whether exhaustion is necessary," but contends

8     there is not an exhaustion requirement for her Labor Code claim. (Doc. 22 at 3-5). Accordingly, the

9     parties dispute whether Plaintiff was required to exhaust of administrative remedies prior to bringing a

10    claim under § 98.6.

11        Defendants observe: "Labor Code section 98.6 states that claims brought under the Labor Code

12    fall 'under the jurisdiction of the Labor Commissioner'" and "[t]he California Supreme Court has held

13    that a litigant seeking damages under the Labor Code is required to exhaust administrative remedies

14    before the Labor Commissioner prior to bringing suit." (Doc. 17-1 at 8-9) (citing *Campbell v. Regents*

15    *of the Univ. of Cal.*, 35 Cal. 4th 311 (2005)). In *Campbell*, the court explained:

> 16    [T]he rule of exhaustion of administrative remedies is well established in California
> 17    jurisprudence. In brief, the rule is that where an administrative remedy is provided by
>      statute, relief must be sought from the administrative body and this remedy exhausted
> 18    before the courts will act. The rule is not a matter of judicial discretion, but is a
>      fundamental rule of procedure … binding upon all courts. We have emphasized that
> 19    [e]xhaustion of administrative remedies is a jurisdictional prerequisite to resort to the
>      courts.

20    *Id.* 35 Cal. 4th at 321 (internal quotation marks, citations omitted). Therefore, the Court determined

21    the plaintiff was required to comply with administrative remedies available with the university. As

22    noted by Defendants, the Eastern District followed *Campbell* and held the Court did not have

23    jurisdiction to hear a plaintiff's claim under Labor Code § 1102.5 "because the plaintiff failed to

24    exhaust his administrative remedies before the Labor Commissioner prior to bringing suit." (Doc. 17-

25    1 at 10) (citing *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1180 (E.D. Cal. 2005)).

26        In *Neveu*, the defendants argued the Court lacked jurisdiction over the "[p]laintiff's claim for a

27    violation of Cal. Labor Code § 1102.5 because, pursuant to Cal. Labor Code §§ 98.6 and 98.7, claims

28    under Section 1102.5 are solely within the province of the Labor Commissioner." *Neveu*, 392

F.Supp.2d at 1179-80.  The Court noted the plaintiff failed "to allege that he exhausted available administrative remedies, including bringing a complaint before the Labor Commissioner, before bringing suit." *Id.* at 1180.  Accordingly, the Court dismissed the plaintiff's Labor Code claim for failure to exhaust administrative remedies.

Likewise, the Northern District found plaintiffs were "required to exhaust their § 98.6 claim administratively." *Hall v. Apartment Inv. & Mgmt. Co.*, 2008 U.S. Dist. LEXIS 105698 at *10, 2008 WL 5396361 at *4 (N.D. Cal. 2008).  In so finding, the court noted: "Labor Code § 98.7(a) provides an administrative remedy before the Labor Commissioner for 'any person who believes that he or she has been discharged or otherwise discriminated against *in violation of any law* under the jurisdiction of the Labor Commissioner.'" *Id.* (emphasis in original).  Because Section 98.6(a) and (b) describe claims in violation of various sections of the Labor Code, the court determined "exhaustion of the administrative remedies prescribed in § 98.7 applies to §§ 1102.5 and 98.6." *Id.*  Similar holdings are found in *Ferretti v. Pfizer, Inc.*, 855 F.Supp.2d 1017, 1023 (N.D.Cal. Feb.29, 2012); *Miller v. Sw. Airlines, Co.*, 2013 WL 556963 at *3 (N.D. Cal. Feb. 12, 2013); *Papillon v. San Francisco Unified Sch. Dist.*, 2012 WL 4892429 at *6-7 (N.D. Cal. Oct. 12, 2012); *Casissa v. First Republic Bank*, 2012 WL 3020193 at *8 (N.D. Cal. July 24, 2012); *Morrow v. City of Oakland*, 2012 WL 2133755 at *21-22 (N.D. Cal. June 12, 2012); *Dolis v. Bleum USA, Inc.*, 2011 WL 4501979 at *2 (N.D. Cal. Sept. 28, 2011); *Carter v. Dep't of Corr.-Santa Clara Cnty.*, 2010 WL 2681905 at *10 (N.D. Cal. July 6, 2010); *Romaneck v. Deutsche Asset Mgmt.*, 2006 WL 2385237 at *6-7 (N.D. Cal. Aug. 17, 2006); *Thompson v. Genon Energy Servs.*, 2013 WL 968224 (N.D. Cal. Mar. 12, 2013) ("The weight of California case law, as well as district court decisions interpreting the California cases, have found that exhaustion to the Labor Commissioner is required under California Labor Code § 98.7, despite its permissive language.").

Plaintiff notes the Eastern District has also determined "there was no exhaustion requirement" for claims such as hers arising under the Labor Code.  (Doc. 22 at 4) (citing *Creighton v. City of Livingston ("Creighton II")*, 2009 WL 3246825 at *8-12 (E.D. Cal. Oct. 7, 2009); *Paterson v. California Dep't of Gen. Servs.*, 2007 WL 756954 at * 7, n. 5 (E.D. Cal. Mar. 8, 2007).  Further, Plaintiff cites several more recent cases in support of her assertion that she was not required to exhaust

administrative remedies.  (Doc.  22 at 5) (citing *Lloyd v. County of Los Angeles*, 172 Cal.App.4th 320, 331 (2009); *Turner v. City & County of San Francisco*, 892 F.Supp.2d 1188, 1200-1204 (N.D. Cal. 2012); *Ortiz v. Permanente Med. Group, Inc.,* 2013 WL 1748049 at * 4-5 (N.D. Cal. April 23, 2013)).

In *Lloyd*,[6] the California Court of Appeal reviewed Labor Code 98.7 and determined there is no requirement that a plaintiff exhaust the Labor Code administrative remedy by filing a complaint with the Labor Commissioner prior to suit.  Supporting this finding, the Court found persuasive the permissive language of Labor Code section 98.7 [an employee "*may file"* a complaint with the Labor Commissioner"] and the express language of subdivision (f) [the employee need not be bound by the remedies provided by section 98.7 but is free to pursue "any other rights and remedies under any other law"].  *Lloyd*, 172 Cal. App. 4th at 331-332.   Likewise, the court found that requiring exhaustion would be inconsistent with PAGA.  *Id.*  "[E]nlisting aggrieved employees to augment the Labor Commissioner's enforcement of state labor laws, undermines the notion that Labor Code section 98.7 compels exhaustion of administrative remedies with the Labor Commissioner."  *Id*.   Accordingly, the California Court of Appeal concluded the plaintiff was not required to exhaust administrative remedies prior to filing suit for violations of the Labor Code.  *Id.*

Nevertheless, soon thereafter in an unpublished decision, California's Third District Court of Appeal determined *Adams v. Robert Mondavi Winery Woodbridge*, 2009 WL 3166669 at * 6-11 (Cal. Ct. App. Oct. 5, 2009), which disagreed with *Lloyd* and held that the permissive language of Labor Code section 98.7 applied *only to* non-statutory based claims.  The court held, "Thus, while an employee can pursue common law claims without exhausting administrative remedies, an employee cannot file a complaint alleging direct statutory violations without first exhausting administrative remedies. This distinction is critical." *Id* at 7.

In *Creighton II*, the Eastern District Court reviewed the opinion in *Lloyd* as well as an opinion letter prepared by an attorney for the California Labor Commissioner, which has also been filed in the matter now before the Court.  *Creighton*, 2009 WL 3246825 at *8-12; *see also* Doc. 21-1.  The Court noted the position of the Division of Labor Standards Enforcement was that "the exhaustion of

---

[6] *Lloyd's* primary weakness is that it relied on authority which predated *Campbell* by many years and because it failed to address *Campbell's* holding.

remedies under Labor Code Section 98.7 is not required prior to filing a civil action." *Id.* at \*16.  The Court observed: "No California decision requires as a prerequisite to suit for statutory violation of the Labor Code exhaustion of administrative remedies before the Labor Commissioner.  California case law is to the contrary." *Id.* at \*32.   *Creighton II* noted, "by its terms, *Campbell* only held that exhaustion of *internal* administrative remedies is required"and it did not discuss exhaustion of administrative remedies before the Labor Commission. *Id.* Based upon California appellate case law and the limitations of *Campbell*, the Court determined a plaintiff is not required to exhaust administrative remedies before the Labor Commissioner prior to filing suit for statutory violations of the Labor Code.  *Id.* at \* 33-34.[7]. *Mango v. City of Maywood*, 2012 WL 5906665 at \*13 (C.D. Cal. Oct. 5, 2012), held similarly.  However, in *Reynolds v. City & Cnty. of San Francisco*, 2011 WL 4808423 at \*1-2 (N.D. Cal. Oct. 11, 2011), the Court found that though *Campbell* referred only to the internal administrative remedies provided, "its reasoning is fully applicable to exhaustion requirements under the Labor Code, whether or not internal grievance procedures may also be at issue in a particular case."

In *Turner,* the Northern District revisited whether exhaustion of administrative remedies was a prerequisite to suit.  The court found "the statutory language of § 98.7 indicates that exhaustion is permissive and "the plain language of § 98.7(f) provides that the administrative remedies provided in § 98.7 are not exclusive and do not preclude remedies provided elsewhere in the Code." *Id.* at 1203. Also, the court observed: "*Campbell* itself acknowledges a right to seek damages exists under § 1102.5, a statute it describes as 'creating a right that did not exist at common law.'" *Id.* (quoting *Campbell*, 35 Cal. 4th at 328); Cal. Lab. Code § 1105 ("Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter"); Cal. Lab. Code § 1102.6 (allocating burdens of proof in "a civil action *or* administrative proceeding"). Finding *Creighton II* and *Lloyd* persuasive, the court concluded "exhaustion under § 98.7 is not required before bringing a civil action under §§ 98.6 and 1102.5." *Turner*, 892 F. Supp. 2d at 1202.

---

[7] *See also Paterson v. Cal. Dep't of Gen Servs.*, 2007 WL 756954 at \* 7, n. 5 (disagreeing with Neveu "[t]o the extent Neveu interprets Campbell as requiring that remedies before the Labor Commissioner must necessarily be exhausted as a prerequisite to suit under § 1102.5) Notably, however, *Paterson* found the plaintiff had sufficiently exhausted her Labor Code § 1102 claim because she had exhausted the procedures set forth by the EEOC and FEHA. *Id.* at 7.

1    *Dowell v. Contra Costa,* ---F.Supp.2d--- at *12 (March 1, 2013), found the reasoning of *Turner* to be

2    persuasive and held that a plaintiff asserting a Labor Code violation "is not required to exhaust

3    administrative remedies before the Labor Commissioner . . . " *Id.*

4            On the other hand, the Eastern District is not uniform in its determination as to whether

5    exhaustion is required.  In *Brazill v. California Northstate Coll. of Pharmacy, LLC,* 2012 WL 3204241

6    at * 5-7 (E.D. Cal. Aug. 2, 2012), the Court found *Creighton II* to be an "aberration" and held that the

7    remedy presented in Labor Code section 98.7 must be exhausted. "The fact that this administrative

8    remedy is neither mandatory nor exclusive does not abrogate the exhaustion requirement." *Id.*

9    Likewise, in *Hanford Executive Mgmt. Employee Ass'n v. City of Hanford*, 2012 WL 603222 at * 16

10   (E.D. Cal. Feb. 23, 2012), the Court held, "nothing suggests the *Campbell* court intended to limit its

11   holding to require the exhaustion of only internal remedies, and no California decision has interpreted

12   *Campbell* as narrowly as *Creighton II*." Again, in *Ortiz v. Lopez*, 688 F.Supp.2d 1072, 1080 (E.D. Cal.

13   2010), the Court followed *Creighton I* and *Neveu* and determined the plaintiff's failure to exhaust the

14   administrative remedies required dismissal.  In *Toth v. Guardian Indus. Corp.*, 2012 WL 1076213 at

15   *5 (E.D. Cal. Mar. 29, 2012), the Court noted, "The court finds the reasoning in *Handford*, *Adams*,

16   and the vast majority of the other district court cases which have uniformly found exhaustion

17   necessary, persuasive." *See also LaTourelle v. Barber*, 2012 WL 218952 at *8 (E.D. Cal. Jan. 24,

18   2012) (dismissing for failure to exhaust under Labor Code § 98.7); *Chacon v. Hous. Auth. of Cnty. of*

19   *Merced,* 2011 WL 2621313 at *4 (E.D. Cal. June 29, 2011) (same); *Cartwright v. Regents of Univ. of*

20   *California,* 2009 WL 2190072 at *7-8 (E.D. Cal. July 22, 2009) (same); *Ulmschneider v. Los Banos*

21   *Unified Sch. Dist.*, 2012 WL 525577 at *7 (E.D. Cal. Feb. 16, 2012) (same); *Fenters v. Yosemite*

22   *Chevron*, 2006 WL 2016536 at *22-23 (E.D. Cal. July 17, 2006);

23           When applying state substantive law, the Court is obligated to provide a similar remedy to that

24   offered in the state forum. *Gee v. Tenneco*, 615 F.2d 857, 861 (9th Cir.1980).  When there is no

25   precedent set by the state's highest court, the federal court must predict how that court would decide

26   the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes,

27   treatises, and restatements as guidance. *Nelson v. City of Irvine*, 143 F.3d 1196, 1206 (9th Cir.1998).

28   With this in mind, and what appears to be the weight of authority which finds exhaustion is required,

1   the Court here is not persuaded the California Supreme Court would follow *Lloyd, Creighton II*, *and*

2   *Turner*.  Instead, the Court is convinced California' highest court would follow and expand its own

3   precedent set forth in *Campbell* to find that exhaustion under Labor Code 98.7 is required before a

4   plaintiff may bring litigation raising statutory-based claims.  Accordingly, Plaintiff's claim for a

5   violation of Section 98.6 fails for lack of exhaustion, and Defendants' motion to dismiss the third

6   cause of action is **GRANTED**.

7        **D.        Fourth Cause of Action: California Civil Code 52.1, the Bane Act**

8            Plaintiff alleges that Wooner and the City interfered with, by use of intimidation, threats, and

9   coercion, the exercise or enjoyment by Plaintiff's rights secured by the California Constitution in

10  violation of California Civil Code § 52.1, known as the Bane Act.  (Doc. 15 at 6-7).  The Bane Act

11  provides a cause of action for interference "by threats, intimidation, or coercion" or attempted

12  interference, "with the exercise or enjoyment by any individual or individuals of rights secured by the

13  Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this

14  state." Cal. Civ.Code § 52.1(a).  Defendants contend Plaintiff's factual allegations fail to support her

15  claim for a violation of the Bane Act.  (Doc. 17-1 at 11-12).

16           A claim under the Bane Act "requires a showing of 'an attempted or completed act of

17  interference with a legal right, accompanied by a form of coercion.'" *Martin v. County of San Diego*,

18  650 F.Supp.2d 1094, 1108 (S.D. Cal. 2009) (quoting *Jones*, 17 Cal. 4th at 334).  Thus, unless there were

19  threats, coercion or intimidation, the Bane Act has no application. *See Gant v. County of Los Angeles*,

20  765 F. Supp. 2d 1238, 1253-54 (C.D. Cal. 2011).  In evaluating the threatening or corercive conduct,

21  the Court must consider "whether a reasonable person, standing in the shoes of the plaintiff, would

22  have been intimidated by the actions of the defendants and have perceived a threat of violence."

23  *Richardson v. City of Antioch*, 722 F.Supp.2d 1133, 1147 (N.D.Cal.2010).

24           Previously, this Court explained:  "The text of the Bane Act … indicates that a cause of action

25  under the act requires a predicate — the application of threat, intimidation or coercion — and an object

26  — interference with a constitutional or statutory right."  *Rodriguez v. City of Fresno*, 819 F.Supp.2d

27  937, 953 (E.D. Cal. 2011).  Put another way, a plaintiff must demonstrate that a constitution violation

28  "occurred *and* that the violation was accompanied by threats, intimidation or coercion within the

1   meaning of the statute." *Barsamian v. City of Kingsburg*, 597 F.Supp.2d 1054, 1057 (E.D. Cal. 2009)

2   (emphasis added).

3       In *Sanchez v. City of Fresno*, 2012 WL 6719556 (E.D. Cal. Dec. 26. 2012), the plaintiffs alleged

4   the defendants removed their personal property from their homeless encampment "in a threatening

5   manner because of the number of individuals involved and the use of heavy equipment." *Id.* at 26.  The

6   Court found this was sufficient to state a claim under the Bane Act, "in a general sense," but dismissed

7   the complaint with leave to amend because it failed to "connect each Individual Defendant to the

8   intimidating nature of the cleanups." *Id.*

9       In *Rodriguez*, the officers purposefully shot a person they claimed was a gang member and

10  whom they believed was reaching for a gun. *Rodriguez*, 819 F.Supp.2d at 943.  In doing so, Plaintiff

11  was struck by a bullet. *Id.*  Plaintiff asserted a number of claims including one brought under the Bane

12  Act. *Id.* at 953.  In granting summary judgment to the defendants, the Court first found Plaintiff had

13  not been seized in violation of the Fourth Amendment and did not suffer a cognizable Fourteenth

14  Amendment violation.  *Id.*  Thus, the court continued, "this court concludes that in order to maintain a

15  claim under the Bane Act, the coercive force applied against a plaintiff must result in an interference

16  with a separate constitutional or statutory right. It is not sufficient that the right interfered with is the

17  right to be free of the force or threat of force that was applied." *Id.*

18      Defendants argue that if Plaintiff believes the "Employee Warning Report" issued on April 27,

19  2012 is the threatening or intimidating act, it cannot also be the act in violation of her constitutional

20  right to state a claim under the Bane Act.  (Doc. 17-1 at 11).  For her part, Plaintiff asserts she

21  sufficiently alleged a Bane Act violation because "the predicate is the discipline and layoff of Plaintiff

22  from her job" and "[t]he object of the interference is her right to free speech set forth in the 1st

23  amendment."  (Doc. 22 at 7).

24      Following the language of Civil Code 52.1, the Court concludes Plaintiff has sufficiently

25  alleged Defendants interfered with her First Amendment rights by the threatening, intimidating or

26  coercive act of disciplining her and terminating her employment. Thus, Defendants' motion to dismiss

27  the fourth cause of action is **DENIED**.

28  *///*

### E.       Sixth Cause of Action: Defamation against Cantu and the City

Plaintiff asserts Cantu and the City are liable for defamatory comments spoken by Cantu.  (Doc. 15 at 7).  Slander is defined as "is a false and unprivileged publication, orally uttered, which "[t]ends to injure [an individual] in respect to his office, profession, trade or business . . . by imputing him general disqualification in those respects which the office or other occupation peculiarly requires."  Cal. Civ. Code § 46.  Accordingly, to survive a motion to dismiss on the defamation claim, Plaintiff must allege Cantu (1) intentionally published a statement of fact; (2) that is false; (3) unprivileged; and (4) has a natural tendency to injure.  *See* Smith, 72 Cal. App. 4th at 645-46.

In this case, Plaintiff alleges Cantu made statements from which it could be gleaned that "Plaintiff did not know how to perform her job function," although "Cantu was well aware that Plaintiff performed her job well for the City and was not incompetent at her job."  (Doc. 15 at 9-10).  Plaintiff asserts Cantu's statements were unprivileged and defamatory because, knowing his statements were false, he "impugned Plaintiff's abilities in her chosen field of employment, and indicate she was incompetent at her job." *Id.* at 9.  Thus, Plaintiff's factual allegations support her claim for slander in violation of California law.

Although Defendants assert the statement by Cantu is entitled to privileged and/or areimmunized from liability, the Court disagrees.  First, though a statement made "in the proper discharge of an official duty" is privileged (Cal. Civ. Code § 47(a)), for the privilege to apply, the statements must relate to the speaker's policymaking functions.  *McQuirk v. Donnelley*, 189 F.3d 793, 801 (9th Cir. 1999) (statements made by a sheriff in response to a reference check on a former employee are not within the sheriff's policy-making function.)  Here, though any statements made by Cantu which related to the City's reorganization would likely be privileged, his statements related to the quality of Plaintiff's performance bear no relation to any policy-making function. *Id.*  For the same reason, the assertion of the immunity provided by California Gov. Code §§ 820.2 and 815.2 fails. *Id.*

The assertion that the statements were immunized by Cal. Civil Code § 47(b) fails because they were not made in a proceeding of any kind.  Moreover, because the statement was not a report of an official, the privilege provided by Cal. Civil Code § 47(d), does not apply.  Finally, the immunities provided by Cal. Gov. Code §§ 822.2 and 815.2(b) do not apply because Plaintiff alleges Cantu acted

1   with actual malice. (Doc. 15 at 10).

2      Because Plaintiff's factual allegations are sufficient to support her claim for defamation,

3   Defendants' motion to dismiss the sixth cause of action is **DENIED**.

4   **IV.    Conclusion and Order**

5      For the foregoing reasons, Plaintiff's claim for defamation against Wooner and the City is

6   stricken pursuant to California's anti-SLAPP statute.  Leave to amend this complaint is not appropriate

7   as it "would completely undermine the statute by providing the pleader a ready escape from section

8   425.16's quick dismissal remedy." *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001);

9   *see also Browne v. McCain*, 611 F. Supp.2d 1062, 1068 (C.D. Cal. 2009) ("since the statutory intent is

10  to provide a quick, inexpensive method of dismissing SLAPP suits, leave to amend is improper").

11     In addition, the Court has determined Plaintiff failed to sufficiently plead her fourth cause of

12  action arising under the Bane Act.  However, leave to amend should be granted where the deficiencies

13  may be cured by amendment.  *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

14     Accordingly, **IT IS HEREBY ORDERED**:

15     1.    Defendants' special motion to strike Plaintiff's fifth cause of action is **GRANTED**;

16     2.    Plaintiff's fifth cause of action against Defendants Wooner and the City is **DISMISSED**

17           **WITH PREJUDICE**;

18     3.    Defendants' special motion to strike Plaintiff's sixth cause of action is **DENIED**;

19     4.    Defendant's motion to dismiss Plaintiff's first cause of action, construed as a motion to

20           strike pursuant to Rule 12(f), is **DENIED**;

21     5.    Defendants' motion to dismiss Plaintiff's third cause of action under Labor Code § 98.6

22           and 96(k) for failure to exhaust administrative remedies is **GRANTED with leave to**

23           **amend**. Plaintiff is granted 21 days leave to amend the complaint as to the third cause of

24           action only;

25     6.    Defendants' motion to dismiss Plaintiff's fourth cause of action for violation of the Bane

26           Act is **DENIED**;

27     7.    Defendant's motion to dismiss Plaintiff's fifth cause of action for defamation against

28           Defendants Wooner and the City is **MOOT**;

23

1    8.    Defendants' motion to dismiss Plaintiff's sixth cause of action for defamation claim

2    against Defendants Cantu and the City is **DENIED**.

3

4    IT IS SO ORDERED.

5    Dated:   **May 21, 2013**                        **/s/ Jennifer L. Thurston**

6                                                UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28