1
2
3
4
5
6
7

8                      **UNITED STATES DISTRICT COURT**

9                     **EASTERN DISTRICT OF CALIFORNIA**

10

11   ANITA GONZALEZ,                          )   Case No.: 1:13-cv-00086 - JLT
                                              )
12              Plaintiff,                     )   ORDER GRANTING IN PART DEFENDANTS'
                                              )   MOTION FOR SUMMARY JUDGMENT
13        v.                                  )
                                              )   (Doc. 46)
14   CITY OF MCFARLAND, CALIFORNIA;           )
     JOHN WOONER; MANUEL CANTU;               )
15   DOES 1 through 100.                       )
                                              )
16              Defendants.                    )
                                              )
17   _____)

18        The City of McFarland, California; John Wooner; and Manuel Cantu ("Defendants") seek

19   summary judgment, or in the alternative summary adjudication, on the claims brought by Plaintiff

20   Anita Gonzalez.  (Doc. 46.)  Plaintiff filed her opposition to the motion on July 25, 2014 (Doc. 47), to

21   which Defendants filed a reply on August 4, 2014 (Doc. 48.)  The Court heard the oral arguments of the

22   parties on August 11, 2014.

23        For the following reasons, Defendants' motion for summary judgment is **GRANTED IN**

24   **PART AND DENIED IN PART**.

25   **I.     Procedural History**

26        Plaintiff initiated this action by filing a complaint against the City of McFarland, California;

27   John Wooner; and Manuel Cantu on January 17, 2013.  (Doc. 1.)  She filed a First Amended Complaint

28   against Defendants on April 4, 2013.  (Doc. 15.)  Plaintiff alleged she was employed by the City of

McFarland ("the City") beginning in 2003.  (*Id.* at 1.)  She was one of three employees in the City's finance department, and her duties included processing "utility and miscellaneous payments made to the City" as well as Accounts Payable.  (*Id.* at 2.)  Defendants filed a motion to dismiss and a motion to strike on April 18, 2013.  (Docs. 16, 17.)  The Court granted the motions in part, dismissing Plaintiff's claim for defamation with prejudice and the claim arising under Labor Code §§ 98.6 and 96(k) without prejudice for failure to exhaust administrative remedies.  (See Doc. 27 at 23.)

Plaintiff filed her Second Amended Complaint on July 9, 2013.  (Doc. 33.)  Thereafter, the Labor Code § 224 was implemented, stating "[a]n individual is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of this code, unless that section under which the action is brought expressly requires exhaustion of an administrative remedy." In light of this, the Court granted a motion for reconsideration filed by Plaintiff, and reinstated her claim arising under Labor Code §§ 98.6 and 96(k) on January 24, 2014.  (Doc. 45.)  Accordingly, Plaintiff's claims include: (1) a violation of the First Amendment under 42 U.S.C. § 1983 by Wooner; (2) a violation of 42 U.S.C. § 1983 by the City; (3) discrimination, discharge, or refusal to hire for exercise of employee rights in violation of Cal. Labor Code 98.6 and 96(k) by the City; (4) violation of California Civil Code § 52.1; and (5) defamation by Cantu and the City.  (See Docs. 15, 45.)

## II.     Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); see also *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  See Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

2

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e); *Matsuhita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits.  *Id.* at 586 n.11; Fed. R. Civ. P. 56(c).  Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA,* 285

F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## III.   Evidentiary Objections

Plaintiff and Defendants object to statements filed by the opposing party for lack of personal knowledge and hearsay.  Rule 602 provides a witness may not testify unless "the witness has personal knowledge of the matter." Fed. R. Evid. 602.  A lay witness may testify only as to those opinions or inferences that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701. Applying these standards, the Court addresses the evidentiary objections as follows.

### A.   Plaintiff's objections

#### 1.   Manuel Cantu Declaration, Paragraph 3

Plaintiff objects to references to the city audit in the declaration of Manuel Cantu.  (Doc. 47-30 at 1.)  Cantu asserted: "In 2011, the City of McFarland had an audit conducted that recommended raising the qualifications of employees in the Finance Department. I reviewed the Auditor's Report." (Doc. 46-4 at 199, Cantu Decl. ¶ 3.)

Plaintiff argues that this statement contains hearsay and is not the best evidence, in violation of Fed. R. Evid. 1002. (Doc. 47-30 at 1-2.)  Specifically, Rule 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provide otherwise." The City has not produced the Auditor's Report, and the statements in Cantu's declaration are used to "prove the content of a writing"—namely, that the audit included a recommendation to raise the qualifications of Finance Department employees.  Such a use violates the best evidence rule. See e.g. *Medina v. Multaler, Inc*., 547 F.Supp.2d 1099, 1114 n.57 (C.D. Cal. 2007) (an employee's declaration was inadmissible under the best evidence rule where she stated that her supervisor sent emails to make her look bad, because she did not produce the emails and her testimony was offered to prove the content of the writings in question).

Likewise, Cantu's statements purporting to provide the information contained in the audit is hearsay and there is no showing that an applicable exception applies. Accordingly, the objections to Paragraph 3 of Cantu's declaration are **SUSTAINED**.

### 2.    Rocio Mosqueda Declaration, Paragraph 2

Plaintiff also objects to references to the audit in the declaration of Rosio Mosqueda, who asserts that "[t]he auditor pointed out to [her] that there were several errors in the City's billing and coding." (Doc. 46-4 at 195, Mosqueda ¶ 2.)  Plaintiff objects that this statement contains hearsay and is not the best evidence of the audit, similar to the Cantu declaration.  However, Mosqueda does not expressly refer to the content of the written Auditor's Report.   Nevertheless, Mosqueda's statement contains hearsay, because it is used to prove the truth of the matter asserted: that there were errors in the City's billing and coding. See  Fed. R. Evid. 801.  Plaintiff's objection to Paragraph 2 of Mosqueda's Declaration, on the grounds that it contains hearsay, is **SUSTAINED**.

### 3.    John Wooner Declaration, Paragraphs 19-20

Plaintiff objects to the potions of John Wooner's declaration in which he "indicat[es] he would have terminated Plaintiff for making recordings of discussions." (Doc. 47-30 at 2.)  Plaintiff argues, "This testimony violates Rule 26(a)(1)(A)(i) as it was never disclosed."  (*Id.*)

In response, Defendants note that discovery deadline was on March 3, 2014, yet they "were unable to verify that Plaintiff secretly recorded the June 21, 2012 and July 26, 2012 meetings until her deposition on April 14, 2014. (Doc. 48 at 23, 24.)  Defendants assert that "Wooner's deposition occurred two days after Plaintiff's deposition," and Plaintiff had the opportunity to "ask[] Wooner in his deposition what he would have done if he knew."  (*Id.* at 24.)

The Federal Rules of Civil Procedures require a party to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i).   Under Rule 37, "[i]f party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37.

To determine whether the untimely disclosure was harmless, a court may consider: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure that prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. App'x. 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)); see also *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Importantly, Wooner is a defendant in this action, and as such it is no surprise to Plaintiff that he offered testimony in the action.  Further, Plaintiff cannot plausibly argue any surprise at his declaration in light of the fact Plaintiff had an opportunity to question Wooner regarding the recordings during his deposition.  Finally, there is no showing that Defendants acted with bad faith in not disclosing this information.  In light of these facts, Plaintiff's objection to Paragraphs 19-20 of Wooner's declaration is **OVERRULED**.

### B.    Defendants' Objections

#### 1.    Declaration of Anita Gonzalez

**a.    Paragraph 8:** "[Wooner] stated that the City's financial situation was good and there would be no layoffs in the future."
**Paragraph 15:** "This shocked me because he had told us on April 12, 2012 that the city's finances were good and there would be no layoffs."

Defendants object to these statements, asserting they are hearsay.  (Doc. 48-1 at 1-2, citing Fed. R. Evid. 802.)  However, an opposing party's statement offered against that party is not considered hearsay. Fed. R. Evid. 801(d)(2)(A).  Similarly, statements offered against a party that were made by the party's agent or employee on a topic that is within the scope of the employment relationship, are excluded from the hearsay rule. Fed. R. Evid. 801(d)(2)(D).  Wooner is a defendant, and the statements related to the City's financial situation were within the scope of his employment with the City.  Thus, Defendants' objections are **OVERRULED**.

**b.    Paragraph 13:** "Mr. Wooner said he received a telephone call from a 'prominent resident' of the City of McFarland who had informed him that the three of us had been badmouthing the City at Pioneer Restaurant the day before." "[Wooner] told us that we were receiving written reprimands he had approved."

Defendants object to these statements, asserting they are hearsay.  (Doc. 48-1 at 2, citing Fed. R. Evid. 802; *Medina v. Multaler, Inc.*, 547 F.Supp.2d 1099 (C.D. Cal. 2007)).  Again, an opposing party's statement offered against that party is not considered hearsay. Fed. R. Evid. 801(d)(2)(A). Defendants' objections are **OVERRULED**.

> **c.**     **Paragraph 14:** "The only person in the restaurant who fit the description of a prominent resident during the Pioneer discussion was the owner, Milton Mar."  "I assumed (and still believe) it was Mr. Mar who told Mr. Wooner about what was discussed at the restaurant."

Defendants assert these statements lack foundation and are speculative.  (Doc. 48-1 at 2.) Plaintiff speculates that Mar was the person to whom Wooner referred without having a basis upon which to make this conclusion.  Though she may believe based upon her own definition of the phrase that Milton Mar was the person to whom Wooner referred, but she cannot know if, indeed, this was the correct person.  Indeed, in her declaration, Plaintiff admits that it this is her assumption.  (Doc. 47-1 at 6) Thus, Defendants' objections are **SUSTAINED**.

> **d.**     **Paragraph 16:** "Prior to that meeting, my husband had been telling me to record meetings at the city (after the April 27, 2012 reprimand)."

Defendants argue this statement is hearsay.  (Doc. 48-1 at 2.)  However, it appears the statement is offered to explain her subsequent action rather than as proof that her husband told her to take this action.  Thus, Defendants' objection is **OVERRULED**.

> **e.**     **Paragraph 16:** "I was not sure how to record anything and was unaware recording any discussion was illegal."
> **Paragraph 17:** "Not knowing such recording is illegal, I recorded the discussion on my phone so I could then let my husband hear it without being subjected to lengthy and numerous questions by him as to what was said."

Defendants object that Plaintiff's knowledge of the law governing recordings is irrelevant. (Doc. 48-1 at 2-3, citing Fed. R. Evid. 402; *US. v. Int'l Minerals & Chem. Corp.*, 402 US. 558, 564 (1971)).  The statements explain why Plaintiff made the recording and they bear some relevance to the reasonableness of Defendants' argument that she would have been fired had Wooner been aware of the recording at the time.  Thus, the objections are **OVERRULED**.

> **f.**     **Paragraph 16:** "During discovery, defendants produced a similar recording of that meeting."

Defendants object that Plaintiff's statement lacks foundation.  (Doc. 48-1 at 3, citing Fed. R. Ev*Id.* 602.)  However, Plaintiff is a party to this litigation and this provides her a sufficient basis to know what discovery Defendants provided. Defendants' objection is **OVERRULED**.

> g.     **Paragraph 16:** "There was at least one member of the public present who was not an employee of the City."

Defendants argue that Plaintiff's statement lacks foundation.  (Doc. 48-1 at 3, citing Fed. R. Ev*Id.* 602.)  Though Plaintiff is a City employee, she fails to describe the size of the meeting such that it is a reasonable inference that she could distinguish between employees and members of the public. Moreover, she fails to explain why she believed the person to whom she refers was not employed by the City.  Thus, Defendants' objection is **SUSTAINED**.

> h.     **Paragraph 17:** statements made by John Wooner during the conversation taped by Plaintiff on July 26, 2014.

Defendants object to statements in Paragraph 17, asserting the statements are hearsay and lack foundation.  However, the statements were made by John Wooner, a defendant in this action, in the course of a conversation with Plaintiff.  Therefore, Defendants' objections to the evidence, on these grounds, are **OVERRULED**.

In addition, Defendants object to statements in Paragraph 17 of Plaintiff's declaration because the statements were "clearly transcribed from Plaintiff's illegal recording of her confidential conversation with John Wooner on July 26, 2012." (Doc. 48-1 at 3-6.)  Plaintiff admits recording the conversation without Wooner's permission.  (Doc. 47-1 at 7, Gonzalez Decl. ¶ 17.)  Defendants argue that the transcribed statements should not be considered by the Court, because that under Cal. Pen. Code § 632(d), "no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of [Section 632] shall be admissible in any judicial . . . proceeding."  (*Id.*)

Significantly, the Ninth Circuit has determined that recorded evidence obtained in violation of California law "is admissible in federal court proceedings when obtained in conformance with federal law and without regard to state law."  *Roberts v. Americable Int'l*, 883 F.Supp. 499, 503 (E.D. Cal. 1995) (citing *United States v. Adams*, 694 F.2d 200, 201-02 (9th Cir. 1982).  Thus, the Court must

determine whether the evidence is a violation of the Omnibus Crime Control and Safe Streets Act.  See id; 18 U.S.C. § 2510, et seq.

The Omnibus Crime Control and Safe Streets Act "prohibits the intentional interception of any oral communication where the parties have a reasonable expectation of privacy and the circumstances justify such an expectation." *Roberts*, 883 F.Supp. at 503 (citing 18 U.S.C. § 2511; *Matter of John Doe Trader Number One*, 894 F.2d 240 (7th Cir. 1990)).  Interception includes "the use of any electronic, mechanical, or other device" to record a communication.  18 U.S.C. § 2150(4).  However, "the interception of oral communications is not unlawful . . . where a party to the conversation is either the one who has intercepted the conversation or who has consented to the interception, and the interception is not for the purpose of committing any criminal or tortious act." *Roberts*, 883 F.3d at 503 (citing 18 U.S.C. § 2511(2)(d); *Thomas v. Pearl*, 998 F.2d 447 (7th Cir. 1993)).

Here, it is undisputed that Plaintiff was a party to the recorded conversation.  There is no evidence that the interception was "for the purpose of committing any criminal or tortious act." The Ninth Circuit has permitted the admission of such communications where the recordings were legally made under federal law – despite the fact that the recordings may have been illegal under state law. See *Adams*, 694 F.2d at 201 ("We need not reach the issue of the legality of the interceptions and recordings under [state] law, for this circuit has established a clear and simple rule that evidence obtained from a consensual wiretap conforming to 18 U.S.C. § 2511(2) (c) is admissible in federal court proceedings without regard to state law.")  Because the recording was not illegal under federal law, Defendants' objections to the transcribed statements are **OVERRULED**.

        **i.**    **Paragraph 20:** "I was advised that on the last day available for me to sign the release, Mr. Wooner was very concerned as to whether I would sign it or not."

Defendants object that the statement lacks foundation and is hearsay. (Doc. 48-1 at 6.)  Because Plaintiff has not explained how she learned Wooner was concerned and she appears to be relaying only what someone else told her, the objection is **SUSTAINED**.

        **j.**    **Paragraph 21:** "[Puentes] told me about a discussion she had with Mayor Cantu about the reorganization.  I asked her to prepare a written statement concerning the discussion, and she did."

Defendants assert this statement is inadmissible hearsay.  (Doc. 48-1 at 6.)  However, Plaintiff does not report any contents of the conversation or discuss the contents of the written statement.  Thus, the statements are not hearsay and Defendants' objection to the statement is **OVERRULED**.

### 2.    Declaration of Sylvia Escalante

> **a.**    **Paragraph 5:** "We were told by Mr. Wooner he had received a phone call from a prominent McFarland resident that we had been badmouthing the City during our discussion at the Pioneer the day before. He said he did not care what we had to say because he 'trusted his source'. We were not allowed to tell him what had been said. Mr. Wooner never identified who his source was. Mr. Wooner told all three of us that if it were up to him he would terminate us."
>
> Paragraph 7: "Mr. Wooner informed us at that meeting that the City was doing fine financially and there were no plans for layoffs."

Defendants object to these statements as hearsay.  (Doc. 48-1 at 6.)  Because the statements identified were made by defendant Wooner, and are offered against Defendants, they are not hearsay. Fed. R. Evid. 801(d)(2)(A).  Similarly, the statement related to the City's financial situation is not hearsay, because it was a matter within the scope of Wooner's employment as the City Manager.  Fed. R. Evid. 801(d)(2)(D).  Therefore, Defendants' objections are **OVERRULED**.

> **b.**    **Paragraph 8:** "We were shocked by this announcement because we had been told earlier there would be no layoffs."

Defendants argue this statement is inadmissible hearsay.  (Doc. 48-1 at 6.)  Because Ms. Escalante does not identify the speaker who had told them earlier that there would be no layoffs, the Court is unable to determine whether the person to whom she is referring was made by an agent or employee of the City, and whether the statement is an admission of a party opponent.  See Fed. R. Evid. 801(d)(2)(D).  However, only part of the statement contains hearsay; the fact that the three Finance Department employees "were shocked" is admissible.  Thus, Defendants' objection is **SUSTAINED IN PART**.

### 3.    Declaration of Cecelia Medina

> **a.**    **Paragraph 5:** "The next day, City Manager Wooner called all three of us into his office and claimed that he had received a telephone call from a prominent resident who told him we had been saying bad things about the City of McFarland and about our boss, Rocio Mosqueda. He refused to allow us [to] tell him what had occurred, and told us he believed his source so it did not matter what we had to say.  Mr. Wooner told all three of us that if it was up to him he would terminate us."

**Paragraph 7:** "Mr. Wooner informed us at that meeting that the City was doing fine financially and there were no plans for layoffs."

Defendants assert these statements are hearsay. (Doc. 48-1 at 7.) Because defendant Wooner made the statements and they are offered against Defendants, they are not hearsay. Fed. R. Evid. 801(d)(2)(A). In addition, the statement related to the City's financial situation is not hearsay, because it was a matter within the scope of Wooner's employment with the City. Fed. R. Evid. 801(d)(2)(D). Defendants' objections are **OVERRULED**.

              **b.**      **Paragraph 8:** "We were shocked by this announcement because we had been told earlier there would be no layoffs."

Defendants object to the statement as hearsay. (Doc. 48-1 at 7.) Because Ms. Medina does not identify the speaker who had told them earlier that there would be no layoffs, the Court is unable to determine whether the individual to whom she is referring was made by an agent or employee of the City, and whether the statement is an admission of a party opponent. See Fed. R. Evid. 801(d)(2)(D). However, only part of the statement contains hearsay; the fact that the three Finance Department employees "were shocked" is admissible. Thus, Defendants' objection is **SUSTAINED IN PART**.

**4.**      **Declaration of Alicia Puentes dated June 30, 2014 (Doc. 47-4 at 2)**

      **a.**      **Sham Affidavit Rule**

Defendant objects to the declaration of Alicia Puentes dated June 30, 2014, filed in support of Plaintiff's opposition to summary judgment, and "request that Puentes' entire declaration be stricken." (Doc. 48-1 at 7-8.) Defendants observe that the declaration contains statements that directly conflict with the declaration filed in support of summary judgment, dated May 24, 2013. (*Id.*) Therefore, Defendants conclude that the declaration is a "sham affidavit." (Doc. 48-1 at 7-8.) Under the "sham affidavit" rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

Importantly, the sham affidavit rule applies only to parties, and Ms. Puentes is not a party in this action. The Ninth Circuit explained that this rule "should be applied with caution," and applies only in limited circumstances. *School District No.1J v. AC & S Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993); see also *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (explaining the sham affidavit rule has

11

limited application "because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment"). Indeed, the "sham affidavit" rule, as noted by Defendants, generally is applied where a *party* attempts to alter his previous deposition testimony with an affidavit. Here, leaving aside the fact that Puentes is not a party, there is no evidence she has been previously deposed. Moreover, the Court can find no basis to conclude that Puentes' earlier-filed declaration is more likely to be accurate than the later-filed one in light of the fact that Puentes had provided a written statement (Doc. 47-16 at 2) nearly two years ago in which she described the events consistently with the later-filed declaration and inconsistently with the earlier-filed one. Thus, the Court concludes it must consider these declarations as standing in conflict as to the material facts asserted in them. Accordingly, the Court declines to apply the sham affidavit rule to the declaration of Ms. Puentes, and Defendants' objections to the declaration, on these grounds, are **OVERRULED**.

### b.    Hearsay

Defendants object to several statements attributed to Manuel Cantu in the declaration, asserting they are hearsay. (Doc. 48-1 at 8.) However, an opposing party's statement offered against that party is not considered hearsay. Fed. R. Evid. 801(d)(2)(A). Because Cantu is a defendant in the action and the statements are offered against him, the statements are not hearsay. Thus, Defendant's objections are **OVERRULED**.

## IV.    Undisputed Material Facts

Plaintiff was hired as a clerk for the McFarland Mutual Water Company in 1997. (JSF 1.) The McFarland Mutual Water Company merged with the City in 2003, at which time Plaintiff became an employee of the City. (JSF 2; UMF 2.) In April 2012, Plaintiff was employed "as an Accounts Payable Clerk for the City's Finance Department," where she worked with Cecilia Medina and Sylvia Escalante. (UMF 3, 11.) On March 26, 2012, Rocio Mosqueda was hired as the Finance Director for the City. (Doc. 46-4 at 194, Mosqueda Decl. ¶ 1.)

A few days later, on April 2, 2012, defendant John Wooner, the City Manager, "held a meeting for City employees to discuss the City's overall financial health and address rumors about possible layoffs." (Doc. 46-4 at 190, Wooner Decl. ¶¶ 11-12; Doc. 47-1 at 4, Gonzalez Decl. ¶ 8.) Wooner

"explained that the City's financial health was improving" and reported that "the City was not planning any layoffs based on financial services." (Wooner Decl. ¶ 12.)  Plaintiff asserts Wooner "stated that the City's financial situation was good and there would be no layoffs in the future." (Gonzalez Decl. ¶ 8.)

In "late March-early April," Mosqueda began working with Wooner on the 2012-2013 budget for the City.  (UMF 5; Mosqueda Decl. ¶ 3.)  "After reviewing the budget proposals from each City department, Mosqueda and Wooner realized that the City was running a budget deficit for the next fiscal year, and as a result, asked each department to find ways to reduce spending and increase efficiency."  (UMF 6.)

On April 26, 2012, Plaintiff had breakfast with Cecilia Medina and Sylvia Escalante at Pioneer Restaurant. (UMF 24.) "Plaintiff alleges that they were discussing: (1) the potential legal consequences of an alleged affair between Iselda Nunez and another city employee; (2) Plaintiff's allegation that Mosqueda prohibited her from speaking with customers at the front counter of the Finance Department; and (3) fuel reimbursements[1] for the City's Public Works Director."  (UMF 25.)   Before the breakfast conversation,  Plaintiff did not have any knowledge of car allowances given to the City Directors, and she "never reported any concerns that Iselda Nunez' affair might result in a sexual harassment case against the City."  (UMF 26-27; see also Doc. 46-4 at 31-32, Gonzalez Depo. 150:3- 151:18.)

The same day, Chief Herrington "told Wooner and Mosqueda that Plaintiff, Escalante, and Medina, were heard calling [Claudia] Ceja and Mosqueda names, and speaking negatively about the City during their breakfast at Pioneer Restaurant."  (UMF 32.)

 On April 27, 2012, Plaintiff, Medina, and Escalante met with Wooner and Mosqueda.  (UMF 33.)  Mosqueda "issued Employee Warning Reports for insubordination, carelessness, violation of policy or procedures, and unsatisfactory behavior toward others" for the conduct reported to Wooner. (Id.) Plaintiff and Escalante refused to sign their Employee Warning Reports, but Medina signed the one she was issued.  (Doc. 46-4 at 190, Wooner Decl. ¶ 17.)

In May, Mosqueda "proposed reorganizing the Accounts Payable Clerk, Utility Billing Clerk,

---

[1] Plaintiff and the other two parties to the conversation refer to this topic as a discussion related to "car allowances." Because they are best suited to know whether they discussed "car allowances" as opposed to "fuel reimbursements," the Court uses the term expressed by these speakers.

1    and Payroll Clerk positions in the Finance Department – into two new positions: Accounting Assistant

2    II and Accounting Technician." (UMF 7; see also Mosqueda Decl. ¶4; Doc. 47-18, Mosqueda Depo.

3    19:9- 20:6.)  Wooner agreed with Mosqueda's proposal, believing reorganization "would reduce costs

4    and increase efficiency by consolidating the number of people performing similar tasks with no impact

5    on customer service." (UMF 9; see also Wooner Depo. 23:5-20; Mosqueda Decl. ¶4.)  Previously,

6    when Wooner was hired in 2011, he "considered recommending a reorganization of the Finance

7    Department so as to increase efficiency and decrease costs" (Doc. 46-4 at 189, Wooner Decl. ¶ 3) but

8    had not done so.

9        In June 2012, Wooner and Mosqueda presented the proposed 2012-2013 budget to the City

10   Council. (UMF 10.)  The proposed budget "included reorganizing the Finance Department by

11   eliminating the Accounts Payable Clerk, Payroll Clerk, and Utility Billing Clerk positions, and creating

12   the Accounting Assistant II and Accounting Technician positions." (*Id.*)  In addition, the proposal

13   changed positions in the City Sewer Division. (Doc. 46-4 at 195, Mosqueda Decl. ¶ 8.)  The City

14   Council had the power to modify the proposed budget prior to voting. (UMF 13.)  "The City Council

15   voted five to zero to pass the Budget, without modification." (UMF 14.)  Consequently, the Finance

16   Department positions occupied by Plaintiff, Medina, and Escalante were "re-organized as part of the

17   Budget." (UMF 15.)  Wooner informed employees that the City Council had approved the budget at a

18   staff meeting on June 21, 2012. (See UMF 41; Gonzalez Decl. ¶ 17.)

19       Plaintiff had a meeting with Wooner following the budget announcement on June 26, 2012.

20   (UMF 43.)  During the meeting, Wooner and Plaintiff discussed the organization of the Finance

21   Department and the elimination of Plaintiff's position. (*Id.*)

22       Plaintiff received a letter from Wooner on July 26, 2012, that included job descriptions for five

23   vacant positions with the City for which Plaintiff could apply. (JSF 3; UMF 17.)  The positions

24   included:  Accounting Technician, Accounting Assistant II, Police Officer Technician, Water Operator

25   I, and Wastewater Plant Operator II. (JSF 3.)  Job descriptions for the Accounting Assistant II and

26   Accounting Technician positions stated, in relevant part:

27       This position requires a self-motivated individual that has at least 5 years – 7 years of
         accounting experience primarily in payroll and accounts payable functions.  Candidate
28       should possess excellent oral and written communication skills.  The candidate should

14

have an Associate's Degree or 2 full academic years of attendance at an accredited
college or university in accounting, business administration, or public administration
preferably. Candidate should have a basic understanding in GAAP, FASB, and GASB
principles and all federal, state and local financial regulations, rules and guidelines as it
relates to public agencies. Candidate should also have knowledge of budgeting,
auditing, cash management, reconciliations and strong skills in computer accounting
and internal controls.

(Doc. 46-4 at 90; Doc. 47-13 at 2.)  Although given the opportunity to apply for the new Finance

Department positions, Plaintiff did not apply for either or the other vacant positions identified in

Wooner's letter.  (UMF 19-21.)  Plaintiff's last day with the City was August 17, 2012.  (JSF 6.)

Sometime in August 2012, Alicia Puentes approached defendant Manuel Cantu, the Mayor of

the City of McFarland, "at the entrance of the City Hall to ask him about what [she] had heard in regard

to the City's plan to reorganize City Hall."  (Doc. 46-4 at 201-02, Puentes Decl. ¶ 5.)  In addition, she

asked Cantu "about the City's plan to reorganize the positions in the Finance Department."  (*Id.* at 202,

¶ 5.)  According to Puentes, Cantu "told [her] that the City needed to have a staff that would be able to

perform alone and not be asking Claudia or Rocio for help."  (Doc. 47-4 at 2, Puentes Decl. ¶ 3; see

also Doc. 46-4 at 202.)  Cantu told Puentes that Plaintiff could apply for the new positions in the

Finance Department.  (Doc. 46-4 at 202, Puentes ¶ 6; Doc. 47-4 at 2, Puentes Decl. ¶ 4.)

## V.   Discussion and Analysis

### A.   Plaintiff's Section 1983 Claims

Plaintiff's First and Second Claims for Relief are for violations of 42 U.S.C. § 1983 ("Section

1983") by Wooner and the City. (Doc 33-1 at 4-5.)  Section 1983 "is a method for vindicating federal

rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In relevant part, Section

1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws, shall be liable to
the party injured in an action at law, suit in equity, or other proper proceeding for
redress...

42 U.S.C. § 1983. To establish a Section 1983 violation, a plaintiff must show (1) deprivation of a

constitutional right and (2) a person who committed the alleged violation acted under color of state law.

*West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered, and show causal relationship between the defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  A person deprives another of a right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Here, Plaintiff asserts Wooner and the City violated rights arising under the Constitution of the United States by unlawfully retaliating against her for engaging in conduct protected by the First Amendment.  (Doc. 33-1 at 4-5.)

### 1.    Liability of the City

Municipalities or other governmental bodies may be sued as a "person" under Section 1983 for the deprivation of federal rights. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978).  However, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Monell*, 436 U.S. at 691. Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains. *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). Thus, a government entity may be sued under Section 1983 when governmental policy or custom is the cause of a deprivation of federal rights. *Id.* at 694. The Ninth Circuit explained:

A plaintiff may . . . establish municipal liability by demonstrating that (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery,* 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)).  Plaintiff premises her liability of the City on the fact that (1) "Wooner had final policymaking authority from the City in relation to discipline of employees and also with the budget presented to the City of McFarland, and it was solely his responsibility to prepare the City budget;" and (2) the City's "ratification of [Wooner's] misconduct" through its vote to eliminate her position.  (Doc. 33-1 at 5-6, ¶¶ 32-34.)

*///*

16

2.     **First Amendment Standards**

"The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  The Supreme Court explained: "[P]ublic employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (citations omitted).  The Ninth Circuit set forth the five-step inquiry to determine whether a public employee's First Amendment rights were violated:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

3.     **Application**

At trial, a plaintiff bears the burden of showing the speech addressed a matter of public concern, and that her "constitutionally protected speech was a motivating factor in [the] adverse employment action." *Eng* v, 552 F.3d at 1070 (citing *Connick v. Myers*, 461 U.S. 138 (1983); *Marable v. Nitchman*, 511 F.3d 924, 930, 932-33 (9th Cir. 2007)).  If a plaintiff meets this burden, the burden shifts to the government to show "adequate justification" for its actions or, in the alternative, that it "would have reached the same adverse employment decision even in the absence of the employee's protected conduct." *Eng*, 552 F.3d at 1071-72 (citation omitted).

a.     **Matter of Public Concern**

Whether an employee's expression may be characterized as a matter of public concern "must be determined by the content, form and context of a given statement, as revealed by the whole record." *Rankin v. McPherson*, 483 U.S. 378, 384-85 (1987) (citation omitted).  In general, speech concerning "individual disputes and grievances and that would be of no relevance to the public's evaluation of the performance of government agencies, is generally not of public concern." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004) (citation omitted).  On the other hand, "[s]peech involves a

17

matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community." *Eng*, 552 F.3d at 1071 (quoting *Johnson v. Multnomah Cnty., Oregon*, 48 F.3d 420, 422 (9th Cir. 1995) (internal quotations omitted))).  Although this definition is broad, "there are limits."  *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009).  The Ninth Circuit explained: "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Id.* (quoting *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995)).

### i.      Car allowances

One topic of conversation that Plaintiff asserts concerned a matter of public policy was the issuance of car allowances given to Directors by the City.  (UMF 25.)  Plaintiff reports that she, Medina, and Escalante "discussed . . . the City's giving of a car allowance to directors."  (Doc. 47-1 at 4-5, Gonzalez Decl. ¶ 10.)  According to Plaintiff, Escalante reported in the conversation that she "cut the checks" for the Directors to receive the car allowance.  (Doc. 47-28 at 4)  Plaintiff expressed her concern as a resident of the City that it "was a waste of taxpayer money and the directors should not receive such an allowance."  (*Id.* at 5; Doc. 47-2 at 3)  Plaintiff expressed that "these kinds of perks . . . seem senseless to have . . . when you apply for a job."  (Doc. 47-28 at 3)

Plaintiff argues the "[p]otential misuse or waste of public funds involves a matter of public concern."  (Doc. 47 at 12) (citing, e.g., *Johnson*, 48 F.3d at 425; *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1405 (9th Cir. 1988); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 926 (9th Cir. 2004)).  Indeed, courts have held on numerous occasions that a public employee's exposure of wrongdoing by her employer—such as misuse of funds and mismanagement—is of inherent public concern.  *See, e.g.*, *Johnson*, 48 F.3d at 425 (9th Cir. 1995); *Hyland v. Wonder*, 972 F.2d 1129, 1139 (9th Cir. 1992); *Vasquez v. City of Bell Gardens*, 938 F. Supp. 1487, 1493 (C.D. Cal. 1996).  Thus, the topic of car allowances was a matter of public concern.

### ii.      Alleged affair between city employees

Plaintiff asserts she talked about an affair between two city employees, which she, Medina, and

18

Escalante knew about because their former supervisor told them about the affair.  (Doc. 47-1 at 5, Gonzalez Decl. ¶ 12.)  Plaintiff asserts she expressed a concern that "the situation could cause a problem for the city with potential liability for sexual harassment. (*Id.*)  However, Plaintiff admits this "may have been gossip." (Doc. 46-4 at 34, Gonzalez Depo. 161:23.)  In addition, Plaintiff testified that she did not voice her concern to any other City employees, and that it "was just a conversation."  (*Id.* at 33-34, Gonzalez Depo. 160:23-161:1.)  Plaintiff explained: "It wasn't meant to be, you know, to the Bakersfield Californian or anything like that.  It was just . . . Again, it was just a conversation that we had.  It wasn't . . . Followed with what are we doing for the weekend, you know." (*Id.* at 34, 160:1-2.)

Generally, comments between coworkers about the sexual relationships of other coworkers would not be considered protected speech.  S*ee Sullivan v. Chappius*, 711 F.Supp.2d 279, 285 n. 4 (W.D.N.Y.  2010) (complaints about a state employee's "alleged affair with a subordinate did not involve a matter of public concern"); *Smith v. Citrus County*, 2005 U.S. Dist. LEXIS 38861, at *14 (M.D. Fl. Apr. 26, 2005) (explaining that whether a county employee "had 'sexual affairs' with county employees is not a matter of public concern").  In *Belk v. City of Eldon*, 228 F.3d 872, 879 (8th Cir. 2000), the plaintiff brought to the attention of a city Alderman that an employee, Carpenter, appeared to be receiving benefits to which she was not entitled and it appeared and this was allowed to occur by a particular city official, Link, who, rumor had it, was romantically involved with Carpenter.   When Belk's job was ended following her speech, she sued and claimed that the job impacts were in retaliation.  *Id.*  In finding that the statements were protected speech, the court found that the allegation of misuse of public funds was the key issue and the fact that the rumor affair was mere "context" for this issue.  *Id.*

Here, the conversation related to the affair was focused on the affair and the details of the affair, e.g., that the male member of the relationship was married, that he was a person of high stature in the City's management organization and that the female was pregnant with the married man's child.  It appears that Plaintiff's comment stating her concern for the City's sexual harassment liabilitymay not have been more than a passing comment.  In *Belk*, the rumor of the affair was mere explanation for Link's motivation to condone Carpenter's improper level of benefits. It did not add to or detract from the documented concern that Carpenter was receiving greater benefits than an employee of her stature

1    should receive; the same does not appear to be true here.  In any event, because the Court finds that

2    Plaintiff engaged in protected speech when discussing the car allowances, the Court need not determine

3    whether the discussion related to the affair was also protected speech.

4    ###         iii.       Prohibition from working at the front counter

5    Plaintiff asserts that the conversation at Pioneer Restaurant also included statements about "the

6    fact that [Mosqueda] prohibited Plaintiff from walking to the counter at the front of the City building

7    and helping customers with matters which occurred daily."  (Doc. 47 at 13, citing Gonzalez Decl. ¶ 11,

8    Escalante Decl. ¶ 5.)  She reports:

> I indicated that this presented issues for me and the City when residents would come to the counter and ask specifically for me. By forcing me to sit still and not help, this created a bad image for the City and also for me. In addition, at times the other two ladies might be involved with work, not present, or helping someone else and I would be needed at the front counter. I felt this also presented a situation where the City and myself looked bad because I would not get up and help someone obviously standing at the front counter who needed help and was not being helped. This caused poor customer service for the residents of the City by not allowing me to help at the front counter. I stated that this could cause people to resent the City and feel they were not having their concerns handled in a timely manner, and that the City appeared to be uncaring.

15    (Doc. 47-1 at 5, Gonzalez Decl. ¶ 11.)  According to Plaintiff, "[t]here can be little doubt that helping

16    citizens with City business at the front counter of City Hall is a matter of public policy, and Plaintiff's

17    discussion about how to handle it constitute matters of public concern.  (Doc. 47 at 14, citations

18    omitted.)  On the other hand, Defendants argue that her "alleged comments about no longer working in

19    customer service are not . . . a matter of public concern, but the complaints of an employee unhappy

20    about a change in duties."  (Doc. 48-4 at 19.)

21    Although Plaintiff asserts the change in office policy was a matter of public concern, it does not

22    appear that it involved "a legitimate news interest."  See *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 84

23    (2004).  In general, the public would not be concerned with why a certain person no longer works at the

24    front counter of an agency.  Rather, Plaintiff's comments regarding the restrictions from working at the

25    front counter and "poor customer service" policy implemented by her new supervisor appear "animated

26    instead by 'dissatisfaction' with [her] employment situation."  See *Connick*, 461 U.S. at 148.

27    In *Derochers*, the Ninth Circuit evaluated whether statements made by two police officers

28    criticizing their supervisor were matters of public concern.  *Id.*, 572 at 713-15.  The officers stated that

1    the supervisor "'made it difficult for the sergeants' teams to function' and impacted [the police

2    department 'in a negative way.'"  *Id.* at 713.  The officers argued "the context in which their speech

3    was uttered suggests that they were motivated, not by a personal vendetta against [their superior], but

4    rather out of a concern for the well-being of the [police] department." *Id.* at 715.  Although the Court

5    found the record contained some support for plaintiffs' claims of altruistic motivation, the Court

6    observed that the evidence also indicated that the two officers were motivated by their dissatisfaction

7    with their employment situation brought on by "a difference of personalities between" them and their

8    supervisor. *Id.* The Court concluded the officers' speech was "merely an extension of the running spat

9    between the sergeants and [the supervisor]."  *Id.* at 716 (internal quotation, citation omitted). The Court

10   explained: "The ultimate source of the grievances can be traced to the simple fact that the sergeants and

11   [their Lieutenant] did not get along. They preferred a particular management style, and he employed

12   another." *Id.* Thus, the Court determined the speech was not a matter of public concern.  *Id.*

13            Here, the Court appreciates that the speakers addressed the issue of the inefficiency of not

14   having Plaintiff attend to customers at the counter but it is not clear that the conversation was

15   substantially motivated by this concern or by a mere disagreement with Mosquedo's management style.

16   However, because the Court finds that Plaintiff engaged in protected speech when discussing the car

17   allowances, the Court need not determine whether the discussion related to the restriction on Plaintiff's

18   duties was also protected speech.

19            **b.        Speech as a private citizen or public employee**

20            "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to

21   make the questioned statements, or if the speech was not the product of 'performing the tasks the

22   employee was paid to perform.'" *Eng*, 552 F.3d at 1071 (quoting *Posey v. Lake Pend Oreille School

23   Dist. No.* 84, 546 F.3d 1121, 1126-27 (9th Cir. 2008)).  On the other hand, "when public employees

24   make statements pursuant to their official duties, the employees are not speaking as citizens for First

25   Amendment purposes, and the Constitution does not insulate their communications from employer

26   discipline."  *Garcetti*, 547 U.S. at 421.  The plaintiff bears the burden of showing that the speech was

27   made in the capacity of private citizen and not a public employee.  *Id.*, 547 U.S. at 421-22; *Posey*, 546

28   F.3d at 1126-27.

1      Plaintiff testified that she first learned of the car allowances at Pioneer Restaurant, where Sylvia

2 Escalante told her about cutting the checks to the directors for their car allowances. (Doc. 46-4 at,

3 Gonzalez Depo. 150:20-151: 21.)  Escalante was in charge of issuing the car allowance checks and

4 Plaintiff had no role in this task.  (See Doc. 47-27 at 3, Escalante Depo. 26:5-14.)   As such, Plaintiff's

5 statements regarding car allowances were not the result of "performing the tasks [she] was paid to

6 perform.'" *Eng*, 552 F.3d at 1071.  Accordingly, Plaintiff has met her burden of showing she was

7 speaking as a private citizen.

8         **c.**    **Substantial or motivating factor of the adverse employment action**

9      Once a plaintiff meets her burden of showing she spoke on a matter of public concern as a

10 private citizen, the next step is to determine "whether the plaintiff's protected speech was a substantial

11 or motivating factor in the adverse employment action." *Eng*, 552 F.3d at 1070.  First, this requires the

12 Court to determine whether an adverse employment action took place.  Next, a plaintiff must prove

13 "'retaliatory animus [w]as the cause of injury,' with causation being 'understood to be but-for

14 causation.'" *Lacey v. Maricopa County*, 693 F.3d 896, 916-17 (9th Cir. 2012) (quoting *Hartman v.*

15 *More*, 547 U.S. 250, 260 (2006)).

16         **i.**    **Adverse action**

17      The Ninth Circuit determined, "To constitute an adverse employment action, a government act

18 of retaliation need not be severe and it need not be of a certain kind. Nor does it matter whether an act

19 of retaliation is in the form of the removal of a benefit or the imposition of a burden." *Coszalter v. City*

20 *of Salem*, 320 F.3d 968, 975 (9th Cir.2003).  An act is adverse within the context of the First

21 Amendment if it is "reasonably likely to deter employees from engaging in a protected activity." *Id.* at

22 976.  Here, Plaintiff asserts that she suffered two adverse actions: "(1) the written reprimand that

23 directly related to her protected speech . . . and (2) her termination."  (Doc. 46 at 10, citation omitted.)

24 Defendants do not dispute that these qualify as adverse actions under the First Amendment and the

25 Court finds that they are.

26         **ii.**    **Causation**

27      To demonstrate that retaliation was a substantial or motivating factor, "a plaintiff can (1)

28 introduce evidence that the speech and adverse action were proximate in time, such that a jury could

infer that the action took place in retaliation for the speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for the adverse action were false and pretextual." *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 750 (9th Cir. 2010) (citing *Coszalter*, 320 F.3d at 975) (emphasis added).  Here, Plaintiff asserts that there is "direct evidence of causation as well as indirect evidence" to support her claims under Section 1983.  (Doc. 47 at 20.)

**(a.)     Indirect evidence: timing**

There is no "mechanically applied criterion" for the Court to determine whether a specific time period supports an inference that an adverse action was retaliatory.  *Coszalter*, 320 F.3d at 977.  The Ninth Circuit explained:

> Retaliation often follows quickly upon the act that offended the retaliator, but this is not always so. For a variety of reasons, some retaliators prefer to take their time: They may wait until the victim is especially vulnerable or until an especially hurtful action becomes possible. Or they may wait until they think the lapse of time disguises their true motivation...There is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation.

*Coszalter*, 320 F.3d at 978.  Nevertheless, the Ninth Circuit has "held that proximity in time may support an inference of retaliation sufficient to survive summary judgment." *Anthoine,* 605 F.3d at 751 (citing *Allen v. Iranon*, 283 F.3d 1070, 1077-78 (9th Cir. 2002)).

Here, Plaintiff's protected speech was made on April 26, 2012.  Mosqueda issued the Employee Warning Report after talking with Wooner and Plaintiff on April 27, 2012.  In addition, Mosqueda and Wooner presented the proposed budget eliminating Plaintiff's position as part of the Finance Department reorganization in the beginning of June 2012.  Given the close proximity in time, a jury could reasonably infer that Plaintiff's position was eliminated in retaliation for her speech.  *See, e.g., Anthoine*, 605 F.3d at 751 (finding causation could be inferred where the plaintiff was disciplined within a couple weeks of his protected speech, and given notice of his termination approximately four months later); *Salem v. Terhune*, 72 Fed. App'x 670, 672 (9th Cir. 2003) (where the protected activity took place in May and retaliation occurred between August and October of the same year, the temporal proximity was sufficient to survive summary judgment).

///

1

### (b.)   Direct evidence

2   "Direct evidence is evidence which, if believed, proves the fact [of retaliatory animus] without

3   inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

4   Plaintiff reports that when the Employee Warning Report was issued, Wooner stated that "if it were up

5   to him he would terminate [Plaintiff, Medina, and Escalante]."  (Doc. 47-1 at 5, Gonzalez Decl. ¶ 13.)

6   Similarly, Medina and Escalante report: "Mr. Wooner told all three of us that if it was up to him he

7   would terminate us."  (Doc. 47-2 at 4, Escalante Decl. ¶ 5; Doc. 47-3 at 3, Medina Decl. ¶ 5.)  Such a

8   statement is a direct evidence of a retaliatory intent.  See *Godwin*, 150 F.3d at 1221; *Vasquez v. County*

9   *of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

10   ### d.   Whether Defendants would have taken the same action

11   Because Plaintiff has carried her burden on the first three *Eng* factors, the burden shifts to

12   Defendants to demonstrate either they "had adequate justification for treating Plaintiff differently from

13   other members of the general public," or "would have reached the same adverse employment decision

14   even in the absence of the employee's protected conduct."  *Eng*, 552 F.3d at 1072.  The Court should

15   consider whether the City "would have taken the adverse action if the proper reason alone had existed."

16   *Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996).

17   Here, Defendants assert that Wooner—and the City Council[2]—did not know the specific topics

18   of conversations Plaintiff discussed during the breakfast at Pioneer Restaurant.  (Doc. 46-3 at 13.)

19   However, an employer's unreasonable conclusion that the employee's statements were not protected

20   will not insulate the employer from liability for retaliation. *See Waters v. Churchill*, 511 U.S. 661, 677-

21   78. Here, Wooner was informed that Plaintiff had "bad-mouthed" the City but failed to investigate what

22   Plaintiff had said and refused to allow her and the others to explain.  Notably, "Criticism, no matter

23   how obnoxious or offensive, of government officials and their policies clearly addresses matters of

24   _____

25   [2] Notably, the testimony of the one councilmember seems to indicate that the officials were unaware that they could vote against the proposed budget because "we need to approve budgets . . . we have to approve it" (Doc. 47-26 at 7)  Moreover,

26   it is noteworthy that the councilmembers testified that they met in advance in small groups to discuss the information about Wooner's proposed reorganization. (Doc. 47-26 at 5, 6; Doc. 47-21 at 4, 5, 6; Doc. 47-20 at 5)  Thus, when taken in the light most favorable to Plaintiff, it appears that Wooner explained the situation to Cantu and other councilmembers and

27   Catu also explained it to one councilmember who then approached another councilmember with the information.  Thus, a reasonable interpretation is that Wooner took direct and indirect steps to ensure the budget would be passed and, in doing

28   so, that the three positions would be eliminated.

public concern." *Casey v. City of Cabool*, 12 F.3d 799, 802 (8th Cir.1993).  Thus, Wooner was placed on notice that an investigation was needed and he acted unreasonably in failing to conduct one.  Thus, the refusal to know whether Plaintiff engaged in protected speech will not protect Defendants from liability.

In any event, Defendants fail to establish that Plaintiff's position would have been eliminated as part of a reorganization of the Finance Department even in the absence of her protected conduct. Wooner asserts that he "considered recommending a reorganization of the Finance Department" when he was hired in 2011.  (Doc. 46-4 at 189, Wooner Decl. ¶ 3.)  However, he does not state that he considered eliminating one of the three clerical positions in the department, or that he considered consolidating the work of the three positions into two different positions.  There is no evidence that the reorganization Wooner contemplated involved the only positions occupied by Plaintiff, Medina and Escalante; or whether there were other positions that could have been "reorganized" in the Finance Department.  Further, Defendants present no evidence of the Auditor's Report or budget numbers that Defendants assert prompted the reorganization, or of how the reorganization saved the City money. Finally, Mosqueda asserts that she did not propose the idea of reorganization to Wooner until May, which, at most, was a month after Plaintiff was determined to have "badmouth[ed] the city" which was conduct of which Wooner and Mosqueda disapproved.  Consequently, the Court finds that Defendants have not carried their burden under *Eng* to show summary judgment is appropriate for Plaintiff's claims against Wooner.

Moreover, Defendants have not presented any evidence that the City would have eliminated Plaintiff's position, or reorganized the Finance Department, without the proposal from Wooner. Rather, by voting to adopt the proposed budget without modification, the City ratified his actions.  See, e.g., *Hammond v. County of Madera*, 859 F.2d 797, 802-803 (9th Cir. 1988) (a board, which was responsible for approving transfers of rights-of-way, approved a transfer that resulted in deprivation of constitutional rights).

Accordingly, Defendants' motion for summary adjudication of Plaintiff's Section 1983 claims for retaliation in violation of the First Amendment is **DENIED**.

///

**B.     Defendants' "After-Acquired Evidence" Affirmative Defense**

In the Answer filed on August 7, 2013, Defendants raised the following affirmative defense: "Defendants allege that to the extent that Defendants have discovered or will discover relevant evidence, Plaintiff is barred from recovering damages or any other remedy by reason of such after-acquired evidence." (Doc. 35 at 9.)  Defendants assert that they learned during the course of litigation that Plaintiff recorded the meeting on June 21, 2012, as well as the private conversation with Wooner on July 26, 2012.  According to Defendants, the after-acquired evidence defense precludes any recovery by Plaintiff for damages related to emotional distress, back pay, or loss of benefits because "Plaintiff would have been terminated if Wooner had known about the recordings." (Doc. 46-3 at 27-28, emphasis omitted.)

1.     Notice to Plaintiff

Plaintiff argues that Defendants' affirmative defense for after-acquired evidence was not adequately plead, because "[n]o facts are mentioned or pled which would give Plaintiff any notice of what defendants are referring to in this defense." (Doc. 47 at 40.)  Plaintiff explains:

> Without these facts, and in particular, without that amendment to the answer, Plaintiff is left without knowledge the defense's plan to utilize this as a defense and failed to engage in discovery which might negate the defense. For instance, defendants produced their own recording of the June meeting where the reorganization was announced.  At the time, the person who recorded it was inconsequential to Plaintiff's claims or the defenses.  With knowledge of this as a defense, Plaintiff would have engaged in discovery to determine who made it, was it made with Wooner's consent, and whether disciplinary repercussions occurred to the employee who recorded it.

(Doc. 47 at 40-41.)  On the other hand, Defendants argue that the affirmative defense was "pled with enough specificity to put Plaintiff on notice that Defendants' may attempt to limit Plaintiff's recovery with a defense of after acquired evidence."[3]  (Doc. 48 at 22.)  Further, Defendants argue Plaintiff "had more than enough time to inquire about what Defendants knew" about the recordings Plaintiff possessed.  (*Id.* at 23.)

---

[3] The pleaded defense clearly indicates that defendants intend to offer relevant evidence it has or will discover and will rely upon this evidence to prelude or limit liability.  However, this is the very definition of the purpose of discovery from a defendant's perspective.  Moreover, while using the term of art, "after-acquired evidence," it is keenly important that Defendants failed to indicate that this to-be-discovered or already-discovered relevant evidence related to Plaintiff's acts of misconduct.

1    As an initial matter, the parties disagree regarding the level of specificity required for pleading

2    an affirmative defense.  Defendants assert, "A defense of after acquired evidence need only conform to

3    the requirements of Rule 8(c)."  (Doc. 48 at 22, citing *Stubbs v. Regents of University of California*,

4    2007 WL 1532148, *8 (E.D. Cal. May 25, 2007)).  However, Plaintiff asserts the Court should apply

5    the heightened "plausibility" standards articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell*

6    *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), asserting that "[a] bare legal argument without the

7    benefit of facts is insufficient."  (Doc 47 at 41, citing *J & J Sports Productions, Inc. vs. Franco*, 2011

8    2011 WL 794826 (E.D. Cal. Mar. 1, 2011)).

9    Importantly, the case upon which Defendants rely to assert the pleading need only conform to

10   Rule 8 was decided in 2007 and, consequently, did not have the benefit of *Iqba*, in which the Court

11   clarified its prior ruling in *Twombly* and the requirements of pleading specificity by explaining: "A

12   pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action

13   will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual

14   enhancement."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks

15   omitted).

16   Although "courts are in disagreement as to whether the pleading standard articulated in

17   *Twombly* and *Iqbal* extends to the pleading of affirmative defenses," this Court has determined that

18   "affirmative defenses are subject to the heightened pleading standards announced in *Twombly* and

19   *Iqbal*."  *Dodson v. Strategic Rests. Acquisition Co. II, LLC*, 289 F.R.D. 595, 599, 603 (E.D. Cal. 2013);

20   *see also J & J Sports Prods. v. Franco*, 2011 U.S. Dist. LEXIS 25642 (E.D. Cal. 2011) (adopting the

21   heightened pleading standard).  Accordingly, "[i]n pleading an affirmative defense, a party must give

22   'fair notice of what the affirmative defense] is and the grounds upon which it rests.'"  *Dodson*, 289

23   F.R.D. at 603 (citing *Twombly*, 550 U.S. at 555; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) *see also*

24   *Kohler v. Staples,* 291 F.R.D. 464, 469 (S.D. Cal. 2013) (finding that an affirmative defense "must at

25   least give notice of the grounds upon which it rests").

26   Here, Defendants fail to identify any facts upon which the affirmative defense may rest.  Indeed,

27   the affirmative defense is stated in a speculative manner, providing that Defendants may raise it "to the

28   extent that Defendants have discovered *or will* discover relevant evidence" related to Plaintiffs' claims.

This is insufficient to provide Plaintiff fair notice of the grounds upon which Defendants' affirmative

defense rests.  *See Dodson*, 289 F.R.D. at 559, 603; *Kohler*, 291 F.R.D at 469.

### 2.    Application of the after-acquired evidence doctrine

Even assuming Defendants provided Plaintiff with adequate notice regarding the affirmative

defense of after-acquired evidence, they fail to meet their burden of establishing that it precludes

liability for the retaliation.  The Ninth Circuit stated:

> The "after-acquired evidence" doctrine precludes or limits an employee from receiving remedies for wrongful discharge if the employer later "discovers" evidence of wrongdoing that would have led to the employee's termination had the employer known of the misconduct. *McKennon v. Nashville Banner Publishing Co*., 513 U.S. 352, 360-63, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995). As we have explained, "[a]n employer can avoid backpay and other remedies by coming forward with after-acquired evidence of an employee's misconduct, but only if it can prove by a preponderance of the evidence that it would have fired the employee for that misconduct." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (9th Cir. 1996).

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1070-71 (9th Cir. 2004).  When seeking to limit recovery under

the after-acquired evidence doctrine, "the employer must establish not only that it could have fired an

employee for the later-discovered misconduct, but that it would in fact have done so."  *O'Day*, 79 F.3d

at 759.  The burden of proof is placed "squarely" on the employer to prove these elements by a

preponderance of the evidence.[4]  *Rivera* at 1071.  In *O'Day*, the Court noted, "We could hardly require

employers in these cases to come forward with proof that they discharged other employees for the

precise misconduct at issue (though such evidence would no doubt be helpful to their case), as often the

only proof an employer will have is that adduced in this case—a company policy forbidding the

conduct and the testimony of a company official that the conduct would have resulted in immediate

discharge."  *O'Day*, at 762.  The *O'Day* Court found it important that the proffered declaration

supporting that firing would have occurred, was "corroborated both by the company policy, which

plausibly could be read to require discharge for the conduct at issue here, and by common sense. There

---

[4]  At the hearing, while chastising the Court for requiring, evidence—rather than a mere conclusion—Defendants argued that Court was imposing a standard of proof by clear and convincing evidence.  Instead, Defendants argued that the situation called for shifting burdens, seemingly arguing that only prima facie evidence as permitted by the *McDonnell Douglas* standard, was required.  Clearly, neither this minimal standard nor the more stringent clear and convincing evidence standard is proper in this situation.  *O'Day* makes clear that Defendants *always* bear the burden of proof on this topic and Plaintiff's burden in opposing the motion for summary judgment requires her to demonstrate a genuine issue of triable fact *only* if Defendants first demonstrate an absence of a triable issue.

is nothing inherently incredible about McDonnell Douglas asserting that it would discharge an employee, even an employee with a spotless record, for sneaking into his supervisor's office, stealing sensitive documents pertaining to employment matters, and showing them to one of the very people affected by the documents." *Id*. at 762.

Here, Defendants argue that "Plaintiff surreptitiously recorded two meetings: the first was a staff meeting on June 21, 2012, and the second was a private meeting between Wooner and Plaintiff on July 26, 2012." (Doc. 46-3 at 27.) Defendants observe that under California law, "[a] person may not surreptitiously record confidential communications-to do so is a misdemeanor." (*Id.*, citing Cal. Pen. Code § 632(a)). In support of their argument that the fact that Plaintiff recorded these meetings should preclude or limit their liability, Defendant Wooner reports that if he had known that Plaintiff recorded the staff meeting or their conversation, he would have terminated her "at will employment and for violation of Section 12.01, subdivision (S) of the City Employee Handbook." (Doc. 46-4 at 192, Wooner Decl. ¶ 20.) Specifically, Section 12.01 of the Handbook governs the City's disciplinary procedure, and provides that "[e]mployees may be counseled, admonished, reprimanded, suspended, demoted, discharged or incur a reduction in pay" for actions including, under subdivision (S), "[v]iolation of the City's or a department's confidentiality policies, or disclosure of confidential City information to any unauthorized person or entity." (Doc. 464 at 184-85.)

Significantly, neither section corroborates Wooner's bare conclusion that Plaintiff would have been fired. Defendants have not produced evidence of the confidentiality policies of the City and Finance Department that were in place during 2012 and have made no effort to explain how Plaintiff's conduct violated the policies. Further, they have not identified any evidence that Plaintiff disclosed the information to any unauthorized person or entity. Indeed, at the oral argument, counsel admitted that Defendants had no evidence that she divulged the recordings to anyone other than her attorney. Furthermore, to the extent that Defendants rely upon the fact that the recording violated California law, they have failed to demonstrate that all of the elements of the offense are met.[5] Even still, even if

---

[5] Defendants fail to provide evidence as to each of the elements of California Penal Code section 632(a) and rest only upon Plaintiff's admission that she recorded two meetings without the permission of the participants. However, Penal Code section 632(a) requires not only this conduct but also that the communication that was recorded was "confidential." To

1  Plaintiff committed acts which constitute a crime, it would not qualify because the Handbook requires

2  actual conviction of a felony.  The Handbook states that "malfeasance or misconduct" includes:

3       1.     Conviction of a felony.  "Conviction" shall be construed to be a determination of guilt by the accused by a court, including a plea of guilty or nolo contendere, regardless of sentence, grant of probation, or otherwise; [and]

4

5       2.     The damaging of City property, equipment, or vehicles, or the waste of City supplies through negligence or misconduct.

6

7  (Doc. 46-4 at 185.)  Accordingly, the employee handbook does not support Wooner's conclusion that

8  Plaintiff *could* have been fired, let alone that she *would* have been.  Further, as noted above, Wooner

9  fails to provide any factual support for his conclusion that Plaintiff would have been fired and the

10  conclusion, in and of itself, is insufficient.  Wooner does not indicate what about Plaintiff recording the

11  meetings caused him to feel it was a terminable offense and common sense does not dictate that firing

12  was the only logical response.  Wooner's failure in this regard is significant in light of Plaintiff's

13  evidence which demonstrates that someone else at the June 21, 2012 meeting also recorded it. [6]  (Doc.

14  47-5 at 2-3)  A moving party in a motion for summary judgment may not rest on conclusory

15  allegations, but must set forth specific facts showing that there is an absence of genuine issues of

16  material fact. *See Mosher v. Saalfeld*, 589 F.2d 438, 442 (9th Cir.1978).

17       The Ninth Circuit has observed, "The inquiry focuses on the employer's actual employment

18  practices, not just the standards established in its employee manuals, and reflects a recognition that

19  employers often *say* they will discharge employees for certain misconduct while in practice they do

20  not."  *O'Day*, 79 F.3d at 759 (emphasis in original).  Consequently, the Court finds Defendants have

21

22

23

24  constitute a confidential communication, it must have been "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." *Id*.  Defendants make no showing that the statements made at the meetings were "confidential."

25

26

27  [6]Had Wooner or another City official authorized a recording to be made of the meeting by someone (other than Plaintiff) as Defendant's attorney implied at the oral argument, why Wooner would have felt the need to fire Plaintiff because she also recorded the meeting is a mystery also left unsolved.

28

failed to meet their burden to demonstrate the doctrine of after-acquired evidence is applicable. [7]

(*O'Day*, at 762 ["Working from hindsight, and given the opportunity to limit the backpay and other remedies it might otherwise have to provide, an employer has a strong incentive not only to discover previously undisclosed wrongdoing on the part of the plaintiff, but also to conclude that that conduct would in fact have resulted in the plaintiff's immediate discharge."])

### C.    Plaintiff's Third Claim for Relief: Violations of California Labor Code

Plaintiff alleges her termination is a violation of Cal. Labor Code §§98.6 and 96(k), because the termination was due to "conduct off the premises while Plaintiff was not working." (Doc. 33-1 at 6.) In pertinent part, Cal. Labor Code § 98.6 provides: "No person shall discharge an employee or in any manner discriminate against any employee . . . because the employee . . . engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96... or because of the exercise of the employee . . . of any rights afforded him or her." The conduct described in Section 96(k) includes "lawful conduct occurring during nonworking hours away from the employer's premises." Cal. Labor Code § 96(k).

Previously, courts in the Ninth Circuit have applied the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973), to evaluate a plaintiff's claim for a violation of Cal. Labor Code § 98.6. See, e.g., *Franklin v. Sacramento Area Flood Control Agency*, 2009 WL 2399569, at *18 (E.D. Cal. Apr. 29, 2009) ("Though the parties have not identified, nor is the court aware of, applicable law on the elements or methods to prove a claim for retaliation under section 98.6 of the California Labor Code, the court will apply the same burden-shifting analysis to plaintiffs state law claim, since California law tracks federal standards in other areas of labor law"); *Hollie v. Concentra Health Servs*., 2012 WL 993522 at *3-5 (N.D. Cal. Mar. 23, 2012) (applying the burden-shifting test to evaluate the plaintiff's claims for violations of the Cal. Labor Code §§ 1102.5 and 98.6)

Moreover, "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination." *Guz v. Bechtal Nat'l Inc*., 24 Cal.4th 317,

---

[7] The Court does not suggest that corroboration is required but here, where Wooner fails to provide any factual support for his conclusion that the conduct justified firing and where his citations to the employee handbook provided no support for the position that Plaintiff *could* be fired in these circumstances, corroboration could have alleviated the evidentiary deficit.

354 (2000) (explaining that "California courts look to pertinent federal precedent when applying [state] statutes" "[b]ecause of the similarity between state and federal employment discrimination laws").

Under the *McDonnell Douglas* framework, the plaintiff bears the burden to establish a prima facie case of retaliation or discrimination. *Id.* at 802; *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). The evidence may be either direct or circumstantial, and the amount that must be produced to create a prima facie case is "very little." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To establish a prima facie case, the plaintiff must show (1) she engaged in a protected conduct, (2) her employer subjected her to an adverse action, and (3) there is a causal link between the protected conduct and the adverse action. See *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

If a plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155; *see also McDonnell Douglas*, 411 U.S. at 803. If the defendant carries this burden, the Court's inquiry does not end. Rather, the burden shifts back to the plaintiff to show the reasons proffered by defendant are pretextual. *Id.*; *McDonnell Douglas*, at 805. Thus, the plaintiff has "the ultimate burden of persuading the trier of fact" that the defendant intentionally retaliated or discriminated against her. *Reeves v. Sanderson Plumbing Products, Inc*. 530 U.S. 133, 142 (2000).

### 1.    Plaintiff's prima facie case

As set forth above, Plaintiff has presented evidence that she was engaged in conduct protected under the First Amendment. Plaintiff's conversation at Pioneer Restaurant prior to work satisfies the definition of "lawful conduct occurring during nonworking hours away from the employer's premises." See Cal. Labor Code § 96(k). In addition, it is indisputable that Plaintiff suffered an adverse action through the loss of her job with the City. See *Brooks v. City of Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000) ("[a]mong those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion").

Further, a causal link may be inferred from the timing of the reorganization that eliminated

Plaintiff's position in the Finance Department, because it occurred within two months of the protected conduct.  *See Anthoine*, 605 F.3d at 751; *Coszalter*, 320 F.3d at 975 (explaining that "[e]ven if elapsed time, considered regard to other circumstances, were the criterion, three to eight months is easily within the time range that supports an inference").  Accordingly, Plaintiff has carried her burden to state a prima facie case of a violation of Cal. Labor Code §§ 98.6 and 96(k).

### 2.    Defendants' legitimate, nondiscriminatory reasons

Defendants assert that the reorganization was not motivated by a discriminatory or retaliatory animus toward Plaintiff, but rather to address a budget deficit.  (Doc. 46-3 at 20; Doc. 46-4 at 189, Wooner Decl. ¶¶ 5-6; Doc. 46-4 at 195, Mosqueda Decl. ¶¶ 3-4.)  In addition, Defendants assert that the reorganization was intended to make the Finance Department more efficient by hiring staff with a good understanding of accounting principles.  (*Id.*)  The Ninth Circuit has determined that budget and efficiency concerns are legitimate, nondiscriminatory reasons for employment decisions.  See *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding an agency "met its burden of articulating legitimate, nonretaliatory reasons for its employment decisions" where it asserted the decisions "were related to agency reorganization plans, budget cuts, and the inability of staff members to fulfill necessary duties").  Consequently, Defendants have carried their burden to identify legitimate business reasons for the reorganization and elimination of Plaintiff's position.

### 3.    Pretext

"A plaintiff can show pretext directly, by showing that discrimination [or retaliation] more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence."  *Vasquez*, 349 F.3d at 641; see also *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094-95 (9th Cir. 2005).  Direct evidence typically consists of retaliatory statements or actions by the employer.  Coghlan, 413 F.3d at 1095.  Indirect evidence "requires an additional inferential step" to establish retaliation.  *Id.*

Plaintiff asserts pretext may be inferred because "all three individuals who were involved in the Pioneer Discussion had their jobs 'reorganized' out of existence by Wooner," and if it were truly a budget concern only one of the positions would have been eliminated.  (Doc. 47 at 22, 24.)  Plaintiff argues, "The fact Wooner eliminated all three and then created two new positions (involving the same

duties), evidences clear pretext if it was truly only a budgeting issue." (*Id.* at 24.)  Further, Plaintiff reports that at the meeting held on April 2, 2012, Wooner told the City employees that "the City's financial situation was good and there would be no layoffs in the future." (Doc. 47-2 at 4, Gonzalez Decl. ¶ 8.)  Similarly, Medina and Escalante report that Wooner "informed [them] at that meeting that the City was doing fine financially and there were no plans for layoffs." (Doc. 47-2 at 4, Escalante Decl. ¶ 7; Doc. 47-3 at 4, Medina Decl. ¶ 7.)  Indeed, Wooner admits he informed employees that "the City's financial health was improving" and "the City was not planning any layoffs based on financial services." (Doc. 46-4 at 190, Wooner Decl. ¶ 12.)  This evidence is sufficient to establish pretext, and raise a triable issue of fact.

Moreover, as discussed above, Plaintiff presents direct evidence of an unlawful motive behind the elimination of her position because in the meeting regarding the breakfast conversation at Pioneer Restaurant, Wooner stated that "if it were up to him he would terminate [Plaintiff, Medina, and Escalante]." (Doc. 47-1 at 5, Gonzalez Decl. ¶ 13.)  Accordingly, Defendants' have not demonstrated summary adjudication is appropriate for Plaintiff's Third Claim for Relief for the violation of California Labor Code §§ 98.6 and 96(k), and the motion, on these grounds, is **DENIED**.

**D.    Plaintiff's Fourth Claim for Relief: Violation of California Civil Code § 52.1**

Plaintiff alleges that Wooner and the City interfered with, by use of intimidation, threats, and coercion, the exercise or enjoyment by Plaintiff's right to free speech secured by the California Constitution in violation of California Civil Code § 52.1, known as the "Bane Act". (Doc. 33-1 at 6-7). Specifically, the Bane Act provides a cause of action for interference "by threats, intimidation, or coercion" or attempted interference, "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a).

A claim under the Bane Act "requires a showing of an attempted or completed act of interference with a legal right, accompanied by a form of coercion.'" *Martin v. County of San Diego*, 650 F.Supp.2d 1094, 1108 (S.D. Cal. 2009) (quoting *Jones v. Kmart Corp*., 17 Cal. 4th 329, 334 (1998)).  Thus, unless there were threats, coercion or intimidation, the Bane Act has no application. *See Gant v. County of Los Angeles*, 765 F. Supp. 2d 1238, 1253-54 (C.D. Cal. 2011).  "Speech alone is not

34

sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person." Cal. Civ. Code § 52.1

Previously, this Court explained that to establish a violation of the Bane Act, a plaintiff must demonstrate:

> (1) the defendant interfered with or attempted to interfere with plaintiff's constitutional or statutory right; (2) the plaintiff reasonably believed that if he exercised his constitutional right the defendant would commit violence against him, or the defendant injured plaintiff to prevent him from exercising his constitutional right; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.

*Davis v. Kissinger*, 2009 WL 256574, at *7 (E.D. Cal. Feb. 3, 2009), reversed on other grounds, 465 Fed. Appx. 715 (9th Cir. Dec. 19, 2011) (citing *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007); *Stamps v. Superior Court*, 136 Cal. App. 4th 1441, 1448 (2006)).  Defendants argue they are entitled to summary judgment on this claim because "Plaintiff has no evidence she was threatened, intimidated, or coerced in an attempt to interfere with the exercise of her constitutional rights." (Doc. 46-3 at 22.)  Defendants argue that "Plaintiff was not threatened with termination" but even assuming she was, "speech alone is not enough to constitute a violation of the Bane Act." (*Id.*)

Significantly, there is conflicting evidence regarding whether Plaintiff was threatened with termination.  Although Wooner reports that he did not threaten termination, Plaintiff, Medina, and Escalante report Wooner stated Plaintiff's employment would be terminated "if it was up to him." (Compare Wooner Decl. ¶ 18 with Gonzalez Decl. ¶ 13, Escalante Decl. ¶ 5, Medina Decl. ¶ 5.) Regardless, the relevant inquiry under the Bane Act "is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence." *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010) (emphasis added).  Here, Plaintiff presents no evidence that she was physically intimidated by Wooner's statement, and there is no evidence that such statement would be construed reasonably as a threat of violence.  Because Plaintiff fails to establish "an essential element" of her case, Defendants are entitled to summary adjudication of her claim for a violation of the Bane Act.  *See Celotex*, 477 U.S. at 323. Accordingly, Defendants motion for summary adjudication of Plaintiff's Fourth Claim for Relief is **GRANTED**.

**E.      Plaintiff's Sixth Claim for Relief: Defamation by Cantu and the City**

Plaintiff asserts Cantu and the City are liable for defamatory comments spoken by Cantu. (Doc. 33-1 at 7). Slander is defined as "is a false and unprivileged publication, orally uttered, which "[t]ends to injure [an individual] in respect to his office, profession, trade or business . . . by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires." Cal. Civ. Code § 46. Accordingly, to establish a defamation claim, Plaintiff must show Cantu (1) intentionally published a statement of fact (2) that is false, (3) unprivileged, and (4) has a natural tendency to injure. *See Smith v. Maldonado*, 72 Cal.App.4th 637, 645-46 (1999).

Here, there is conflicting evidence regarding the statements attributed to Cantu.  It is undisputed that Puentes had a conversation with Cantu, the Mayor of McFarland.  In the Puentes declaration proffered by Defendants, Puentes recalls,

> Mayor Cantu told me that the Finance Department needed to replace the positions with positions that required more accounting knowledge. He told me he had heard that the current employees needed to ask for help from Claudia or Rocio when performing certain accounting duties. He did specify that Ms. Gonzalez asked for help on one occasion . . .

(Doc. 46-4 at 202)  When describing her conversation with Mayor Cantu in the declaration proffered by Plaintiff, Puentes declares,

> He told me that the City needed to have a staff that would be able to perform alone and not be asking Claudia or Rocio for help. He informed me that the three employees who worked for the City who were losing their jobs (Anita Gonzalez, Cecilia, and Sylvia) would always be asking for help and asking what they needed to do next at their jobs.

(Doc. 47-4 at 2)  Commonly, a genuine issue of material fact is based upon conflicting evidence. Sometimes, this conflict is created by a party attempting to color a previous sworn statement.  The law provides techniques for addressing this situation, as discussed above.  Rarely, the conflict is created by one non-party witness as here.  In this event, there is little guidance provided.  However, because the Court cannot make a credibility determination—other than to conclude one of these declarations is not accurate—it must accept the evidence which is more favorable to the non-moving party.  Thus, for purposes of this motion, the Court accepts the version proffered by Plaintiff.

When the spoken words "are of ambiguous meaning, or innocent on their face and defamatory only in the light of extrinsic circumstances, the plaintiff must . . .  prove that as used, the words had a

1   particular meaning, or 'innuendo,' which makes them defamatory." *Smith*, 72 Cal. App. 4th at 646

2   (citing, *Washer v. Bank of America*, 21 Cal. 2d 822, 828-829 (1943); *MacLeod v. Tribune Publishing*

3   *Co.*, 52 Cal. 2d 536, (1959)).  In such an instance, the plaintiff also bears the burden to "show the third

4   person reasonably understood it in its derogatory sense."  *Id.* (citations omitted.)

5         Here, Puentes' declaration is not ambiguous and the comments attributed to Cantu are not

6   innocent on their face.  To the contrary, a reasonable person would know that the statements indicate

7   that Plaintiff was unable to perform her job without constant guidance by Claudia and Rocio and,

8   indeed, was not even able to understand what was the next step required by her job without prompting.

9   Thus, there is no need to rely upon Puentes' interpretation of the comments.  On the other hand, if there

10  is any ambiguity that the Court is not detecting, her comments clarifying that Cantu's statements

11  "insinuated that Anita and the other two employees did not know how to perform their work duties for

12  the City of McFarland" (Doc. 47-4 at 2),  meets Plaintiff's burden of proof sufficiently to demonstrate a

13  triable issue of fact.  Consequently, Defendants' request for summary adjudication for Plaintiff's Sixth

14  Claim of Relief is **DENIED**.

15  **VI.    Conclusion**

16        As set forth above, the evidence raises genuine issues of fact as to whether Plaintiff suffered

17  retaliation in violation of the First Amendment and Cal. Labor Code §§ 98.6 and 96(k).  In addition,

18  there are material issues of fact related to Plaintiff's claim for defamation against Canto and the City.

19  However, Plaintiff fails to prove essential elements of her claim for a violation of the Bane Act.

20                                              **ORDER**

21        Based upon the foregoing, the Court **ORDERS**:

22        1.    Defendant's motion for summary judgment (Doc. 46) is **GRANTED IN PART AND**

23  **DENIED IN PART** as follows:

24        a.    Summary adjudication of Plaintiff's First, Second, Third, and Sixth Claims for Relief

25              are **DENIED**; and

26  ///

27  ///

28  ///

                                                37

1          b.         Summary adjudication of Plaintiff's Fourth Claim for Relief is **GRANTED**.

2

3   IT IS SO ORDERED.

4      Dated:   **August 12, 2014**                      **/s/ Jennifer L. Thurston**

5                                                     UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28