1  Jesse J. Maddox, Bar No. 219091
   jmaddox@lcwlegal.com
2  Kimberly A. Horiuchi, Bar No. 214869
   khoriuchi@lcwlegal.com
3  LIEBERT CASSIDY WHITMORE
   A Professional Law Corporation
4  5250 North Palm Ave, Suite 310
   Fresno, California 93704
5  Telephone:     559.256.7800
   Facsimile:     559.449.4535
6
   Attorneys for Defendants CITY OF McFARLAND, JOHN
7  WOONER, and MANUEL CANTU

8

9                  UNITED STATES DISTRICT COURT

10                 EASTERN DISTRICT OF CALIFORNIA

11 | ANITA GONZALEZ,                    | Case No.: 1:13-CV-00086 JLT
12 |                Plaintiff,           |
   |                                     | **DEFENDANTS' TRIAL BRIEF**
13 |     v.                              |
   |                                     | Trial Date:      November 12, 2014
14 | CITY OF McFARLAND,                  | Time:            8:30 AM
   | CALIFORNIA; JOHN WOONER;            |
15 | MANUEL CANTU; DOES 1 through        |
   | 100,                                |
16 |                                     |
   |                Defendants.          |
17

18 **TO THE COURT, AND PLAINTIFF AND HER ATTORNEY OF RECORD:**

19      Defendants CITY OF MCFARLAND ("City"), JOHN WOONER, and MANUEL

20 CANTU (collectively "Defendants") hereby submit the following Trial Brief in this matter,

21 pursuant to U.S. District Court, Eastern District of California Local Rule 285:

22

23

24

25

26

27

28

87408.2 MC060-010                                    DEFENDANTS' TRIAL BRIEF

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS .....................................................................................2

    A.  PROPOSED REORGANIZATION OF FINANCE
        DEPARTMENT AS PART OF THE 2012-2013 BUDGET.................................3

    B.  MR. WOONER HOLDS AN APRIL 2, 2012 STAFF MEETING
        TO ADDRESS RUMORS AND THE CITY'S FINANCIAL
        SITUATION ....................................................................................................4

    C.  THE CITY COUNCIL VOTES UNANIMOUSLY TO ADOPT
        THE 2012-2013 PROPOSED BUDGET .......................................................4

    D.  PLAINTIFF CHOOSES NOT TO APPLY FOR THE NEW
        FINANCE DEPARTMENT POSITIONS.....................................................4

    E.  PLAINTIFF, ESCALANTE, AND MEDINA RECEIVE AN
        EMPLOYEE WARNING REPORT FOR BAD MOUTHING THE
        CITY AND MOSQUEDA................................................................................4

    F.  ALICIA PUENTES ASKS MAYOR CANTU ABOUT THE
        REORGANIZATION........................................................................................5

    G.  PLAINTIFF SURREPTITIOUSLY RECORDED WOONER ON
        TWO SEPARATE OCCASIONS WHILE EMPLOYED AT THE
        CITY ...............................................................................................................6

        1.  June 21, 2012 Staff Meeting.................................................................6

        2.  July 26, 2012 Conversation Between Plaintiff And Wooner .....................6

III.  ADMISSIONS AND STIPLATIONS ....................................................................6

IV.  LEGAL ARGUMENT ...........................................................................................7

    A.  PLAINTIFF'S CLAIMS.................................................................................7

        1.  Claim 1: Defendant Wooner - Violation of 42 U.S.C. § 1983
            (Free Speech Retaliation) ....................................................................7

        2.  Claim 2: City of McFarland - Violation of 42 U.S.C. § 1983
            (Free Speech Retaliation) ....................................................................7

        3.  Claim 3: Retaliation in violation of Labor Code section 98.6
            and 96(k)............................................................................................8

        4.  Claim 4: Defamation against Cantu and the City .........................................8

    B.  DEFENDANTS' LEGAL ARGUMENTS ON THE
        INSUFFICIENCY OF PLAINTIFF'S EVIDENCE.................................................9

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1.   Plaintiff did not discuss matters of public concern......................................9

    a.   The speech of which Wooner's was aware was not speech on a matter of public concern .............................................9

    b.   Plaintiff's alleged topics of discussion do not amount to speech of a public concern ...........................................10

2.   Plaintiff cannot prove, by a preponderance of evidence, that her participation in the Pioneer breakfast conversation was a substantial motivating factor in the decision to reorganize the Finance Department....................................................................................12

3.   Defendants have a legitimate, non-retaliatory reason for the reorganization of the Finance Department ...................................................13

4.   The City is not liable for Plaintiff's alleged Free Speech retaliation because Wooner is not a final policymaker and the City did not ratify his alleged unlawful acts.........................................13

5.   Claim 3: City of McFarland - Violation of California Labor Code sections 98.6(b) and 96(k) (Retaliation for Lawful Off-Duty Conduct) ....................................................................................16

6.   Claim 4: Mayor Manuel Cantu and the City of McFarland – Defamation ..........................................................................................17

C.   DEFENDANTS' AFFIRMATIVE DEFENSES ....................................................17

1.   Affirmative Defense 21: Qualified Immunity on Plaintiff's § 1983 claim ...............................................................................................18

2.   Affirmative Defenses No. 14 and 19: Qualified Privilege on Plaintiff's Defamation claim ....................................................................18

3.   Affirmative Defense 20: Failure to Comply With Tort Claims Act..................................................................................................19

4.   Affirmative Defense 8: After-Acquired Evidence.....................................19

5.   Affirmative Defense 4: Opinion as a defense to Defamation....................20

6.   Affirmative Defense 28: Truth as a defense to Defamation......................21

7.   Affirmative Defense 31 and 32: No Actual Damages...............................21

8.   Affirmative Defense 2: Failure to Mitigate Damages ..............................22

9.   Affirmative Defense 8: Punitive Damages...............................................23

V.   CONCLUSION ...................................................................................................24

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

2

## Federal Cases

*Anthoine v. North Central Counties Consortium*
  605 F.3d 740, 748 (9th Cir. 2010) ...................................................................................... 10

*Berg v. California Horse Racing Board*
  419 F.Supp.2d 1219, 1232 (E.D. Cal. 2006) ...................................................................... 13

*Brewster v. Board of Educ. of Lynwood Unified School Dist.*,
  149 F.3d 971 (9th Cir. 1998) ............................................................................................... 20

*Buscemi v. McDonnell Douglas Corp.*
  736 F.2d 1348 (9th Cir. 1984 .............................................................................................. 23

*Christie v. Iopa*
  176 F.3d 1231, 1235 (1999) ............................................................................................. 8, 15

*City of Canton, Ohio v. Harris*
  489 U.S. 378, 388 (1989) ..................................................................................................... 17

*City of St. Louis v. Praprotnik*
  485 U.S. 112, 123 (1988) ..................................................................................................... 15

*Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001)........................................... 13

*Collins v. City of San Diego,*
  841 F.2d 337 (9th Cir.1988) ................................................................................................ 16

*Connick v. Myers*
  461 U.S. 138, 142, 103 S.Ct. 1684 (1983) ............................................................... 7, 10, 11

*Coszalter v. City of Salem*
  320 F.3d 968, 977 (9th Cir. 2003) ....................................................................................... 13

*Dahlia v. Rodriguez*
  735 F.3d 1060, 1067 (9th Cir. 2013)...................................................................................... 7

*Dang v. Cross*
  422 F.3d 800, 807 (9th Cir.2005) ........................................................................................ 23

*Desrochers v. City of San Bernardino*
  572 F.3d 703, 709 (9th Cir. 2009) ....................................................................................... 10

*Erickson v. Pierce County*
  960 F.2d 801, 804 (9th Cir. 1992) ....................................................................................... 14

*Forsburg v. Pacific Northwest Bell Tel. Co.*
  840 F.2d 1409, 1419 (9th Cir. 1988) ................................................................................... 15

*Franklin v. Sacramento Area Flood Control Agency*
  2009 WL 2399569, *18 (E.D. Cal. 2009) .............................................................................. 9

*Garcetti v. Ceballos*
  547 U.S. 410, 419, 126 S.Ct. 1951 (2006) ............................................................................ 7

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

*Gibson v. County of Washoe, Nev.*
  290 F.3d 1175, 1186 (9th Cir. 2002) ................................................................. 18

*Gile v. United Airlines, Inc.*
  213 F.3d 365 (7th Cir. 2000) ............................................................................ 23

*Gillette v. Delmore*, 886 F.2d 1194, 1198 (1989) .............................................. 13

*Gillette v. Delmore,*
  979 F.2d 1342 (9th Cir. 1996) ................................................................. 13, 16, 17

*Hufford v. McEnaney*
  249 F.3d 1142, 1148 (9th Cir. 2001) ................................................................. 16

*Huskey v. City of San Jose*
  204 F.3d 893, 899 (9th Cir. 2000) ..................................................................... 13

*Jett v. Dallas Indep. Sch. Dist.,*
  491 U.S. 701 (1989) .................................................................................... 8, 15

*Johnson v. Multnomah County, Or.*
  48 F.3d 420, 421 (9th Cir. 1995) ......................................................................... 7

*Jones v. Tennessee Valley Authority*
  948 F.2d 258, 266 (6th Cir. 1991) ..................................................................... 23

*Karam v. City of Burbank*
  352 F.3d 1188 (9th Cir. 2003) .......................................................................... 15

*Karcher v. Emerson Elec. Co.*
  94 F.3d 502 (8th Cir 1996) ............................................................................... 23

*Keyser v. Sacramento City Unified School District*
  265 F.3d 741, 751-52 (9th Cir. 2001) ........................................................... 14, 20

*Los Angeles v. Gates,*
  907 F. 2d 879 (9th Cir. 1990) ............................................................................. 8

*Lytle v. Wondrash,*
  182 F.3d 1083 (9th Cir. 1999) .......................................................................... 19

*Malley v. Briggs,*
  475 U.S. 335 (1986) ........................................................................................ 20

*McDonnell Douglas Corp. v. Green*
  411 U.S. 792, 802-803 (1973) ....................................................................... 9, 26

*McKinley v. City of Eloy*
  705 F.2d 1110, 1114 (9th Cir. 1983) ............................................................. 10, 11

*Monell v. Department of Social Services of New York*
  436 U.S. 658, 98 S. Ct. 2018 (1978) ................................................................... 8

*Nelson v. Pima Community College*
  83 F.3d 1075, 1080 (9th Cir. 1996) ................................................................... 14

*O'Day v. McDonnell Douglas Helicopter Company*
  79 F.3d 756, 760 (9th Cir. 1996) .................................................................................21, 22

*Pembaur v. City of Cincinnati*
  475 U.S. 469, 480-481 ............................................................................................17

*Pickering v. Board of Education*
  391 U.S. 563, 568, 88 S.Ct. 1731 (1968) ...............................................................7

*Romero v. Kipsap County,*
  931 F.2d 624 (9th Cir. 1991) ..................................................................................20

*Russell v. Microdyne Corp.*
  65 F.3d 1229, 1238 (4th Cir. 1995) ..................................................................21, 22

*Saucier v. Katz,*
  533 U.S. 194 (2001) ................................................................................................20

*Smith v. Wade*
  461 U.S. 30, 56 (1983) ............................................................................................23

*U.S. v. National Treasury Employees Union*
  513 U.S. 454, 466 (1995) ........................................................................................12

*Ulrich v. City and County of San Francisco*
  308 F.3d 968, 978 (9th Cir. 2002) ..........................................................................11

**State Cases**

*Beroiz v. Wahl*
  84 Cal.App.4th 485, 493 (2000) .............................................................................21

*Camp v. Jeffer, Mangels, Butler & Marmaro*
  35 Cal.App.4th 620, 632 (1995) .............................................................................19

*Campanelli v. Regents of University of California*
  44 Cal.App.4th 572, 578 (1996) .............................................................................21

*Gould v. Maryland Sound Industries, Inc.*
  31 Cal.App.4th 1137, 1153 (1995) .........................................................................21

*Khawar v. Globe International*
  19 Cal.4th 254, 273-274 (1998) ..........................................................................9, 21

*McGrory v. Applied Signal Technology, Inc.*
  212 Cal.App.4th 1510, 1538 (2013) .........................................................................9

*Smith v. Maldonado*
  72 Cal.App.4th 637, 647 (1999) ........................................................................21, 23

**State Statutes**

Cal. Gov. Code, § 910 et seq. ........................................................................................19

Civ. Code § 47(c) .............................................................................................................9

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

3

1

Civ. Code § 48 ......................................................................................................................... 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

## I.   **INTRODUCTION**

This lawsuit arises from the City's 2012 decision to reorganize its Finance Department. The reorganization eliminated three positions within the Finance Department, including the Accounts Payable position held by Anita Gonzalez ("Plaintiff"). Plaintiff's last day of work was August 17, 2012. Approximately six months later, she sued the City, its City Manager, John Wooner, and Mayor Manuel Cantu, alleging six claims. Four claims remain:

(1)   Free speech retaliation in violation of 42 U.S.C. § 1983 [against Mr. Wooner];

(2)   Free speech retaliation in violation of 42 U.S.C. § 1983 [against the City];

(3)   Retaliation in violation of California Labor Code sections 98.6(b) and 96(k) [against the City]; and

(4)   Defamation [against Mr. Cantu and the City].

The first three claims allege that Mr. Wooner and the City eliminated the Accounts Payable position and two other positions in the Finance Department in retaliation for a conversation Plaintiff, Sylvia Escalante and Cecilia Medina had on April 26, 2012 at Pioneer Restaurant in McFarland, California. Plaintiff claims she, Medina, and Escalante were discussing matters of a public concern and, therefore, her speech during the conversation was protected by the First Amendment to the U.S. Constitution.

Plaintiff's defamation claim arises from a conversation her friend, Alicia Puentes, had with Mr. Cantu at least a month after the meeting at which the City Council adopted the 2012-2013 City Budget. The 2012-2013 Budget included the elimination of several positions, including the Accounts Payable position. Ms. Puentes allegedly asked Mayor Cantu why the Accounts Payable position was eliminated, to which the Mayor allegedly responded, "The City needed to have employees that would be able to perform alone and not be asking Claudia [Ceja] and Rocio [Mosqueda] for help" and they "would always be asking for help and asking what they needed to do next at their jobs." Ms. Puentes has signed conflicting declarations, under oath: one declaration states she understood Mayor Cantu's statement to mean Plaintiff was incompetent at her job and the other states she did not understand Mayor Cantu's statements to mean anything derogatory about Plaintiff.

87408.2 MC060-010

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1    Plaintiff's claims lack merit, and she will be unable to meet her burden of proof at trial.

2    She will be unable to establish that her position was eliminated in retaliation for her alleged

3    speech at the Pioneer Restaurant on April 26, 2012 because, among other reasons:

4        1.      The conversation Plaintiff now alleges took place at Pioneer Restaurant did not

5    involve matters of a public concern;

6        2.      Plaintiff has no admissible evidence anyone at the City knew what she now claims

7    she said at Pioneer Restaurant; therefore, she cannot prove her alleged speech was a substantial

8    motivating factor in the City's decision to reorganize the Finance Department.

9        3.      Defendants had legitimate, non-retaliatory reasons for their actions.

10        4.      Defendants would have reorganized the Finance Department even if Plaintiff had

11    not engaged in the alleged speech.

12        5.      Plaintiff will not be able to establish municipal liability against the City for First

13    Amendment Retaliation because she has not established that any action taken against her was

14    based on an official policy, custom, or practice, or that there was any action taken against her by a

15    final policymaker that violated her constitutional rights.

16        6.      The only evidence Plaintiff has that Mr. Cantu made defamatory statements is

17    testimony from her friend, who has already perjured herself if in this action;

18        7.      The statements Plaintiff attributes to Mr. Cantu were true and opinion.

19        8.      Even if Cantu did make defamatory statements, Plaintiff cannot prove he did so

20    with ill will or hatred and as such, Cantu is entitled to qualified privilege.

21        9.      During this action, Defendants have discovered evidence that Plaintiff engaged in

22    misconduct during her employment, which would have resulted in her immediate termination had

23    Mr. Wooner known about it while she was employed; consequently, Plaintiff will not be able to

24    recover damages for on her claim for First Amendment retaliation.

25    **II.**    **STATEMENT OF FACTS**

26        Plaintiff was an at-will Accounts Payable Clerk in the City's Finance Department. In

27    2003, the City absorbed the McFarland Mutual Water Company and its employees, at which time

28    Plaintiff became a City employee. In June 2012, the City Council adopted the 2012-2013 Budget

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

("Budget"), which included a reorganization of the Finance Department and elimination of one Wastewater Operator position. The Finance Department reorganization entailed eliminating three positions – including the Accounts Payable position – and creating two new positions. The purpose was to help the Finance Department become efficient and employ staff who could perform their job duties at higher customer service level. The City offered Plaintiff and the other two employees affected by the reorganization an opportunity to apply and test for the newly created positions or another vacant City position. Plaintiff chose not to apply and opted to file this lawsuit instead.

## A.   PROPOSED REORGANIZATION OF FINANCE DEPARTMENT AS PART OF THE 2012-2013 BUDGET

In late March 2012, Wooner and City Finance Director Rocio Mosqueda began preparing the proposed 2012-2013 Budget. Mosqueda requested each department to submit its proposed spending plans for the next year. Around the same time, Mosqueda met with auditors from the firm Albert & Associates to discuss errors in reports generated by the City Finance Department. After reviewing budget proposals from each City department, Mosqueda and Wooner realized that – based on the budgets submitted by each department – the proposed budget for the City was running a deficit of $300,000 to $400,000. As a result, each department was asked to find ways to reduce spending and increase efficiency. In order to reduce the Finance Department budget, Mosqueda proposed reorganizing the Accounts Payable Clerk, Utility Billing Clerk, and Payroll Clerk positions – into two new positions: Accounting Assistant II and Accounting Technician. At the time, Plaintiff was the Accounts Payable Clerk. Cecilia Medina was Utility Billing Clerk, and Sylvia Escalante was the Payroll Clerk. Mosqueda believed the reorganization would make the Finance Department more efficient. In addition, she hoped the new positions would be filled by employees with a strong understanding of accounting principles. Wooner agreed that reorganizing the Finance Department would make it more efficient. In fact, Wooner considered reorganizing the Finance Department when he began as City Manager in July 2011, but decided to wait until he had a chance to better survey the existing employees' capabilities.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

**B.    MR. WOONER HOLDS AN APRIL 2, 2012 STAFF MEETING TO ADDRESS RUMORS AND THE CITY'S FINANCIAL SITUATION**

Budget preparations began in late March 2012. On April 2, 2012, long before completing the proposed Budget, Wooner met with staff, including Finance Department employees, to discuss the City's overall financial health and address rumors about layoffs. He stated that, at that time, the City was not planning any layoffs.

**C.    THE CITY COUNCIL VOTES UNANIMOUSLY TO ADOPT THE 2012-2013 PROPOSED BUDGET**

In June 2012, Wooner and Mosqueda presented the proposed Budget to the City Council for a vote. The specifics of the reorganization were included in the proposed Budget and explained to the Councilmembers. The City Council is responsible for approving the Budget and may reject or modify certain provisions, as it sees fit. The City Council voted five (5) to zero (0) to pass the Budget without modification. As a result, Plaintiff's, Escalante's, and Medina's positions were eliminated. Plaintiff's last day with the City was August 17, 2012.

**D.    PLAINTIFF CHOOSES NOT TO APPLY FOR THE NEW FINANCE DEPARTMENT POSITIONS**

On July 26, 2012, Plaintiff received a letter from Wooner explaining her rights to apply for other vacant City positions. The letter included job descriptions for five different positions: Accounting Technician; Accounting Assistant II; Police Officer Technician; Water Operator I; and Wastewater Plant Operator II. Plaintiff chose not to apply for the vacant positions.

**E.    PLAINTIFF, ESCALANTE, AND MEDINA RECEIVE AN EMPLOYEE WARNING REPORT FOR BAD MOUTHING THE CITY AND MOSQUEDA**

On or about April 26, 2012, Plaintiff, Escalante, and Medina were having breakfast at Pioneer Restaurant in McFarland before work. Plaintiff's Second Amended Complaint alleges they discussed: (1) the potential legal consequences of an alleged affair between Iselda Nunez and Public Works Director Mario Gonzalez; (2) Plaintiff's allegation that Mosqueda prohibited her from speaking with customers at the front counter of the Finance Department; and (3) fuel reimbursements for the City's Department Director, including Mario Gonzalez (hereinafter the

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

"Pioneer Breakfast Conversation").[1] An unidentified third party in the restaurant overheard Plaintiff's alleged conversation with Medina and Escalante and contacted Iselda Nunez. Nunez is a Crime Scene Technician with the City's Police Department.

Later that same day, Nunez informed former Police Chief Greg Herrington that Plaintiff, Medina, and Escalante were bad mouthing the City and Ms. Mosqueda, and that one of the women called Mosqueda a "bitch."  Herrington reported this information to Wooner and Mosqueda.

On or about April 27, 2012, Wooner and Mosqueda had a meeting with Plaintiff, Escalante, and Medina. Wooner told them he heard they were "bad mouthing" the City and Mosqueda, and asked if it was true. Mosqueda issued Plaintiff, Escalante, and Medina an "Employee Warning Report" for insubordination, carelessness, violations of policy and procedure, and unsatisfactory behavior toward others in violation of the City's Employee Handbook. Plaintiff and Escalante refused to sign their Warning Reports. Medina signed her Employee Warning Report, admitted badmouthing Mosqueda and the City, and apologized.

### F.    ALICIA PUENTES ASKS MAYOR CANTU ABOUT THE REORGANIZATION

Plaintiff alleged that, near the end of July 2012, her friend Alicia Puentes approached Mayor Cantu outside City Hall Chambers. Puentes asked Cantu why Plaintiffs' position was being eliminated. Plaintiff alleges Puentes told her Cantu said "The City needed to have staff that would be able to perform alone and not be asking Claudia or Rocio for help" and "[Plaintiff, Escalante, and Medina] would always be asking for help and asking what they needed to do next at their jobs." Pl. ['] Opp. Mot. Summ. J., Doc 47-4, Puentes Decl. ¶ 3. Cantu did not say or imply that Plaintiff was incompetent at her job. *Id.*, 199:10-13.

Puentes declared under penalty of perjury that she did not interpret Cantu's statements as impugning or insulting Plaintiff's reputation and that Cantu did not imply Plaintiff was bad at her

---

[1] Plaintiff and Escalante give conflicting accounts about what specifically was discussed. Plaintiff testified in her deposition that she, Escalante, and Medina only talked about some directors receiving "car allowances," but did not mention who was receiving these allowances and did not discuss the amounts or types of car allowances. Escalante, on the other hand, testified in her deposition that the three specifically talked about Mario Gonzalez receiving $250 per month in fuel reimbursements.

job. Puentes also stated under oath that Cantu told her Plaintiff was welcome to apply and test for the new positions in the Finance Department. However, Puentes signed a second statement under penalty of perjury in support of Plaintiff's Opposition to Summary Judgment, which said she interpreted Cantu's statements as implying Plaintiff was incompetent at her job. No one else was party to the conversation between Puentes and Cantu, and neither Puentes nor Cantu ever talked to anyone except for Plaintiff about the conversation. Consequently, Puentes' contradictory testimony and Mayor Cantu's testimony is the only evidence of this conversation.

## G.   PLAINTIFF SURREPTITIOUSLY RECORDED WOONER ON TWO SEPARATE OCCASIONS WHILE EMPLOYED AT THE CITY

### 1.   June 21, 2012 Staff Meeting

Mr. Wooner held a staff meeting on June 21, 2012 to discuss the impact of the Budget on City departments and explain the rationale behind the reorganization of the Finance Department. Plaintiff surreptitiously recorded that meeting on her phone. Wooner did not know Plaintiff was recording the meeting, and nobody, including Wooner, consented to being recorded. Wooner did not learn about the recording until the discovery phase of this litigation.

### 2.   July 26, 2012 Conversation Between Plaintiff And Wooner

On or about July 26, 2012, Plaintiff went to see Wooner in his private office to discuss the reorganization of her position. She also secretly recorded this conversation on her phone. Wooner did know that Plaintiff was recording that meeting and did not consent to being recorded. He did not learn that Plaintiff had recorded this conversation until the recordings were produced during discovery. Wooner will testify at trial that if he had known Plaintiff secretly recorded his private conversations, he would have terminated her employment immediately.

## III.   ADMISSIONS AND STIPLATIONS

Pursuant to Local Rule 285(a), Defendants offer no other admissions or stipulations other than what is included in the Pretrial Order. Order, Doc. 53, 2:5-26.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

## IV.   LEGAL ARGUMENT

### A.   PLAINTIFF'S CLAIMS

#### 1.   Claim 1: Defendant Wooner - Violation of 42 U.S.C. § 1983 (Free Speech Retaliation)

Plaintiff alleges Wooner eliminated her position in retaliation for what she claims she said at Pioneer Restaurant. In *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731 (1968), the Supreme Court defined a balancing test for First Amendment retaliation cases involving public employees. The Court must balance the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the employer, in promoting the efficiency of the public services it performs through its employees. See also *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684 (1983). The Court has recognized that "the First Amendment interests at stake extend beyond the individual speaker ... [because of] the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion." *Garcetti v. Ceballos*, 547 U.S. 410, 419, 126 S.Ct. 1951 (2006). "In unraveling the case law since *Pickering*, we have further refined the Court's balancing test into a five-step inquiry. We ask: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013). If the Defendants are able to demonstrate a legitimate, non-retaliatory reason for its decision, Plaintiff must prove, by a preponderance of evidence that the stated reason is pretext for retaliatory intent. *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 421 (9th Cir. 1995).

#### 2.   Claim 2: City of McFarland - Violation of 42 U.S.C. § 1983 (Free Speech Retaliation)

In order to prevail on her 42 U.S.C. § 1983 free speech retaliation claim against the City, Plaintiff must prove essentially the same elements as those discussed for Claim 1. In addition, she

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

must prove, by a preponderance of the evidence, that: (1) Wooner acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the City of McFarland when he took adverse action against Plaintiff; or (2) Wooner had final policymaking authority from the City of McFarland when he took adverse action against Plaintiff. See *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 2037-38 (1978); *Los Angeles v. Gates*, 907 F.2d 879, 889 (9th Cir. 1990). Plaintiff cannot prevail in her § 1983 action against the City under a theory of *respondeat superior*. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978). A municipality may only be liable to an isolated alleged constitutional violation where the Plaintiff can prove: (1) that the person causing the violation has final policy making authority; (2) that the final policy maker ratified a subordinate's actions; or (3) the final policymaker acted with deliberate indifference to a subordinate's constitutional violation. *Christie v. Iopa*, 176 F.3d 1231, 1235 (1999).[2] Plaintiff is unable to prove Wooner is a final policy maker or that the City either ratified or acted with deliberate indifference to a constitutional violation.

### 3.    Claim 3: Retaliation in violation of Labor Code section 98.6 and 96(k)

Courts in the Ninth Circuit apply the *McDonnell Douglas* burden-shifting analysis in evaluating the validity of a plaintiff's claim for relief pursuant to Cal. Labor Code § 98.6 and 96(k). *Franklin v. Sacramento Area Flood Control Agency*, 2009 WL 2399569, *18 (E.D. Cal. 2009); See also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973).

### 4.    Claim 4: Defamation against Cantu and the City

Plaintiff alleges Cantu made the following defamatory statements to Puentes that were injurious to her professional reputation: (1) "The City needed to have a staff that would be able to perform alone and not be asking for help or asking what to do"; and (2) "[Plaintiff, Medina, and Escalante] were always asking for help and what to do next." To prevail on a claim of defamation per se about a matter of public concern, Plaintiff must prove to the jury, by a preponderance of

---

[2] Whether Wooner is a final policy maker is a question of state law for the court to determine. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). However, whether the City Council in approving the budget ratified Wooner's alleged constitutional violation, or whether it demonstrated deliberate indifference is an issue of fact for the jury.

1  evidence: (1) that Cantu made one or both of these statements to Puentes; (2) Puentes reasonably

2  understood those statements to be about Plaintiff and her professional competence; (3) the

3  statements were false; and (4) Cantu failed to use reasonable care to determine the truth or falsity

4  of the statements. *Khawar v. Globe International*, 19 Cal.4th 254, 273-274 (1998).

5  Furthermore, in order for Plaintiff to prevail against Cantu, she must show that he acted

6  with hatred or ill will toward her. If she cannot demonstrate hatred or ill will, Cantu is entitled to

7  qualified privilege. Civ. Code § 47(c); *McGrory v. Applied Signal Technology, Inc.*, 212

8  Cal.App.4th 1510, 1538 (2013) ("A triable issue of malice would exist if [employer] made a

9  statement in reckless disregard of employee's rights that employer either did not believe to be true

10  (i.e., he actually knew better) or unreasonably believed to be true (i.e., he should have known

11  better). In either case, a fact finder would have to ascertain what employer subjectively knew and

12  believed about the topic at the time he spoke.")

**B.    DEFENDANTS' LEGAL ARGUMENTS ON THE INSUFFICIENCY OF PLAINTIFF'S EVIDENCE**

**1.    Plaintiff did not discuss matters of public concern**

16  "Speech involves a matter of public concern, for purposes of a First Amendment

17  retaliation claim, when it can be fairly said to relate to any matter of political, social, or other

18  concern to the community." *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 748

19  (9th Cir. 2010). To garner the protection of the First Amendment, the employee must be speaking

20  about a public, not a personal interest. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709

21  (9th Cir. 2009), citing *Connick v. Myers*, 461 U.S. 138, 147 (1983) (hereinafter "*Connick*").

> . . . only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick* at 147.

**a.    The speech of which Wooner's was aware was not speech on a matter of public concern**

28  Wooner and Mosqueda were only told that Plaintiff, Escalante, and Medina were making

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1   derogatory comments about the City, and that they called Mosqueda a "bitch." Regardless of

2   what Plaintiff claims she actually was talking about, that is what Wooner and Mosqueda heard.

3   There is no evidence to the contrary.

> 4   Speech by public employees may be characterized as not of public concern when it is
> 5   clear that such speech deals with individual personnel disputes and grievances and that the
> 6   information would be of no relevance to the public's evaluation of the performance of
> governmental agencies.

7   *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (hereinafter "*McKinley*").

8   It can hardly be said that an evaluation of the success or performance of the Finance

9   Department in McFarland depends on the public knowing that Plaintiff said Mosqueda was a

10   "bitch." Rather, such a statement is a personal gripe or opinion.

### b.   Plaintiff's alleged topics of discussion do not amount to speech of a public concern

13   Second, even assuming Plaintiff actually discussed what she alleges; said topics do not

14   rise to the level of public concern warranting First Amendment protection. Although Plaintiff's

15   alleged comments were made in public, she made no deliberate effort to broadcast those

16   comments to the public. The Court in *McKinley, supra,* found that McKinley's comments were of

17   a public concern in part because he specifically and purposefully directed his comments to the

18   public via public hearings and television interviews. *McKinley* at 1115. In contrast, the U.S.

19   Supreme Court did not find speech of a public concern in *Connick* where the Plaintiff circulated a

20   questionnaire to her co-workers about morale. *Connick*, 461 U.S. at 441. In that case, the Court

21   found that because the Plaintiff did not seek to inform the public about the operations of a public

22   agency, it was more like personal grievances regarding office policy. *McKinley* at 1114, citing

23   *Connick*, 461 U.S. at 441.

24   Plaintiff alleges that she discussed an affair between two employees, car allowances for

25   City Directors, and her complaints about no longer being able to interact with customers at the

26   front counter of the Finance Department. In ruling on Defendants' Motion for Summary

27   Judgment, the Court stated that it did not believe the conversation about the affair or Plaintiff's

28   alleged inability to answer customer questions at the front counter of the Finance Department

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

1  constituted speech of a public concern, but stopped short of making that decision. See Order, Doc.

2  50, 18:27-21:18.

3       Speech about issues that do not enable the members of the public to make informed

4  decisions about the operation of their government is not speech of a public concern. *Ulrich v. City*

5  *and County of San Francisco*, 308 F.3d 968, 978 (9th Cir. 2002). At the time of the Pioneer

6  breakfast conversation, Plaintiff had no direct knowledge of any City Director receiving a car

7  allowance or fuel reimbursements. Plaintiff's speculation about possible car allowances or fuel

8  reimbursements could not reasonably be seen as enabling members of the public to make an

9  informed decision, when she had no information about the issue. Given that she had no specific

10  knowledge of any car allowances, or for what purpose the City might issue fuel reimbursements

11  to certain employees, her alleged comments are tantamount to speculation and not information the

12  public would have an interest in knowing.

13       Plaintiff's comments about no longer being able to speak to customers at the front counter

14  are also not a matter of public concern. Plaintiff contends that Mosqueda told her that she was not

15  to assist costumers anymore, but instead to focus on her position in accounts payable.

16       Private speech that involves nothing more than a complaint about a change in the
        employee's own duties may give rise to discipline without imposing any special burden of
17      justification on the government employer.

18  *U.S. v. National Treasury Employees Union*, 513 U.S. 454, 466 (1995).

19       Plaintiff's alleged comments about no longer working in customer service are not

20  statements made as a private citizen on a matter of public concern, but the complaints of an

21  employee unhappy about a change in duties.

22       Finally, Plaintiff contends that she, Medina, and Escalante were talking about an alleged

23  affair between Nunez and another City employee, and how such an affair could lead to a claim of

24  sexual harassment against the City. Plaintiff admitted in her deposition that this conversation was

25  gossip.

26

27

28

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

2. **Plaintiff cannot prove, by a preponderance of evidence, that her participation in the Pioneer breakfast conversation was a substantial motivating factor in the decision to reorganize the Finance Department**

In any First Amendment retaliation case, a plaintiff must prove a nexus between the adverse employment action and the protected speech. *Berg v. California Horse Racing Board*, 419 F.Supp.2d 1219, 1232 (E.D. Cal. 2006); *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Applying that here, Plaintiff must prove that her alleged speech was a substantial motivating factor in the decision to reorganize the Finance Department. To be a substantial motivating factor in an employment action, the employer must in some way rely upon, use, or otherwise take into account that factor in reaching a decision or taking an action. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003). At a minimum, Plaintiff must be able to demonstrate that the employer knew she engaged in protected speech. *Sutton vs. Derosia*, 2012 WL 4863788 *23 (E.D. Cal. 2012); *Gillette v. Delmore*, 886 F.2d 1194, 1198 (1989); *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001).

Iselda Nunez reported to Chief Herrington that Plaintiff, Medina, and Escalante were "bad mouthing" the City and Mosqueda. Herrington passed along this information to Wooner and Mosqueda. Wooner and Mosqueda never knew what Plaintiff specifically discussed, only that she made derogatory comments about the City and called Mosqueda a "bitch." Plaintiff has no evidence that Wooner or Mosqueda knew or suspected she discussed the topics she now claims to have discussed.

Mosqueda issued an Employee Warning Report for, among other things, insubordination and unsatisfactory treatment of other employees. Plaintiff, Escalante, and Medina were issued Employee Warning Reports because Wooner and Mosqueda believed that they were calling their supervisor names in public, and generally badmouthing the City.[3] No one from the City expressed objections to the specifics of Plaintiff's conversations because no one knew what was said. Plaintiff must prove Wooner and the City knew she what she specifically discussed and based on

___

[3] Plaintiff claims she and Escalante called Nunez a "bitch," not Mosqueda. Plaintiff testified she called Nunez a "bitch" because she was having an affair with Mario Gonzalez – a married man. However, that alone is sufficient to justify the issuance of an Employee Warning Report, as would gossiping about an affair between two employees.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1   that knowledge, terminated her employment. If Plaintiff has no such evidence, she cannot prove

2   her alleged protected speech was a substantial motivating factor in the reorganization.

### 3.   Defendants have a legitimate, non-retaliatory reason for the reorganization of the Finance Department

5   Even if a plaintiff is able to make out a prima facie case for First Amendment retaliation,

6   an employer may still prevail if it is able to prove that it would have made the same decision even

7   if the employee had not engaged in the protected conduct. *Nelson v. Pima Community College*, 83

8   F.3d 1075, 1080 (9th Cir. 1996), citing *Erickson v. Pierce County*, 960 F.2d 801, 804 (9th Cir.

9   1992). Once an employer is able to demonstrate a legitimate non-retaliatory reason for an adverse

10  employment action, the burden shifts back to the plaintiff to prove that the employer's stated

11  reason is pretext. *Keyser v. Sacramento City Unified School District*, 265 F.3d 741, 751-52 (9th

12  Cir. 2001).

13  Mr. Wooner and the City will present evidence that the alleged adverse employment

14  actions were taken for legitimate, non-retaliatory reasons, i.e., that they had an adequate

15  justification for treating the employee differently from other members of the general public. The

16  City reorganized the positions in the Finance Department to make the Department more efficient

17  and with the desire to employ individuals who had a greater understanding of accounting

18  principles. Other than speculation, Plaintiff has no evidence that the City's reason for

19  reorganizing the Finance Department is pretext for retaliation. Speculation and conclusory

20  assertions about retaliatory intent do not establish the existence of retaliation. *Karam v. City of*

21  *Burbank*, 352 F.3d 1188 (9th Cir. 2003); *Forsburg v. Pacific Northwest Bell Tel. Co.,* 840 F.2d

22  1409, 1419 (9th Cir. 1988).

### 4.   The City is not liable for Plaintiff's alleged Free Speech retaliation because Wooner is not a final policymaker and the City did not ratify his alleged unlawful acts.

26  Plaintiff does not allege her federally protected right was violated pursuant to the

27  enforcement of a municipal custom or policy. Hence, as explained above, in order to prevail on

28  her § 1983 claim against the City, Plaintiff must prove: (1) that the person causing the violation

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1    has final policy making authority; (2) that the final policy maker ratified a subordinate's actions;

2    or (3) the final policymaker acted with deliberate indifference to a subordinate's constitutional

3    violation. *Christie v. Iopa*, 176 F.3d 1231, 1235 (1999).[4] Hence, Plaintiff must prove that Wooner

4    was a final policy maker or that the City Council ratified or was deliberately indifferent to

5    Wooner's alleged decision to eliminate Plaintiff's position in retaliation for her protected speech.

6        First, Wooner was not the final policy maker in the reorganization. To be final policy

7    maker, Wooner would need to be "the highest official responsible for setting policy in that area of

8    the government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). As a

9    matter of law, and a matter to be determined by the Court, Wooner has final policymaking

10   authority from the City of McFarland only for employee discipline, not the City budget. *See Jett*

11   *v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) (the district court should decide as a matter of

12   law whether an official has final policymaking authority before submitting the case to the jury).

13   Wooner's role in the budget process is to prepare the recommended budget for the City Council,

14   which is responsible for approving it.

15       In *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1996), the Ninth Circuit held that although

16   a fire chief had discretionary authority to hire and fire employees, this was not a sufficient basis

17   for imposing municipal liability. "Municipal liability could be imposed on the basis of [the

18   Chief's] actions only if he was responsible for establishing the City's employment policy." *Id.* at

19   1350. That power was not lodged in the fire chief but in the city manager and city council.

20   Therefore, the Court held that the fire chief was not a "final policymaker" whose individual

21   decision could be attributed to city. *See Collins v. City of San Diego*, 841 F.2d 337, 341-42 (9th

22   Cir.1988) (city was not liable for employment actions of police department sergeant, even though

23   he had "discretion to recommend hiring, firing, and discipline of employees," where sergeant was

24   not the official responsible for establishing final department policy in the area in question); *see*

25   *also Gillette,* 979 F. 2d at 1346 (9th Cir. 1992) (fire chief's discretionary authority to hire and fire

26

---

27   [4] Whether Wooner is a final policy maker is a question of state law for the court to determine. *Jett v. Dallas Indep.*
     *Sch. Dist.*, 491 U.S. 701, 737 (1989). However, whether the City Council in approving the budget ratified Wooner's
28   alleged constitutional violation, or whether it demonstrated deliberate indifference is an issue of fact for the jury.

1  employees was not sufficient to establish a basis for municipal liability).

2  Wooner did not have authority to reorganize the Finance Department on his own. Only the

3  City Council could approve the Budget. Therefore, only the City Council could eliminate

4  Plaintiff's position. Plaintiff admits she does not believe the City Council voted for the Budget in

5  retaliation for her alleged conversation at Pioneer Restaurant.

6  Second, there is no evidence the City Council ratified Wooner's alleged constitutional

7  violation. The U.S. Supreme Court held,

> Municipal liability under section 1983 attached only where a
> deliberate choice to follow a course of action is made from among
> various alternatives by the official or officials responsible for
> establishing final policy with respect to the subject matter in
> question.

12  *Gillette*, 979 F.2d at 1347 (1992), *citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-481;

13  See *Praprotnik*, 485 U.S. at 126 (observing that "[i]f the mere exercise of discretion by an

14  employee could give rise to a constitutional violation, the result would be indistinguishable from

15  respondeat superior liability"). If Plaintiff cannot prove that the acts which violated her rights

16  were caused by a final policymaker of the City, she must prove that a final policymaker ratified

17  the alleged offending acts, i.e., knew of and specifically approved of the employee's acts.

18  *Gillette*, 979 F.2d at 1346-47. In other words, Plaintiff must prove in this case that the City

19  Council ratified the alleged offending actions. However, Plaintiff testified in her deposition she

20  did not believe the City Council approved the Budget simply to retaliate against her. Defs. [']

21  Mot. Summ. J., Doc. 46-4, 28:19-29:1.

22  Moreover, since there is no evidence that Wooner or Mosqueda had any knowledge of

23  Plaintiff's actual speech, there is no way the City Council could have made a deliberate choice to

24  ratify Wooner's alleged decision to reorganize the Finance Department in retaliation for

25  Plaintiff's speech. In *Gillette*, the Court expressly held that the City Manager did not ratify a fire

26  chief's decision to terminate an employee just because the City Manager knew about it and did

27  not overrule the Fire Chief's decision. The Court further held that the plaintiff did not adduce any

28  evidence of affirmative or deliberate conduct by the City Manager that may have ratified the Fire

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

1   Chief's decision to terminate the plaintiff for improper reasons. *Gillette*, 979 F.2d at 1348. The

2   same is true in this case. Plaintiff presents no evidence the City Council made an affirmative or

3   deliberate choice to eliminate Plaintiff's position in retaliation for her alleged speech at Pioneer

4   Restaurant.

5   Finally, there is no proof the City Council acted with deliberate indifference to Wooner's

6   recommendation to reorganize the Finance Department. Cases involving liability on a theory of

7   deliberate indifference deal mostly with a municipality's failure to train or where there is

8   evidence of a systemic practice of deliberate indifference to the rights of its inhabitants. *City of*

9   *Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Furthermore, to hold a municipality liable

10   under section 1983, Plaintiff must show that the municipality was on actual or constructive notice

11   that its decision or omission would likely result in a constitutional violation. *Gibson v. County of*

12   *Washoe, Nev.*, 290 F.3d 1175, 1186 (9th Cir. 2002) ("To prove deliberate indifference on the part

13   of a municipality, a § 1983 plaintiff must show that the municipality was on actual or constructive

14   notice that its omission would likely result in a constitutional violation."). There is no evidence of

15   deliberate indifference in this case.

16   Hence, Plaintiff will not prevail on her section 1983 claim against the City because she

17   cannot show that Wooner was a final policymaker or that the City Council ratified or was

18   deliberately indifferent to any constitutional violation.

19        **5.**    **Claim 3: City of McFarland - Violation of California Labor Code**

20                   **sections 98.6(b) and 96(k) (Retaliation for Lawful Off-Duty Conduct)**

21   Similar to Plaintiff's Free speech retaliation claims, in order to prevail on claims pursuant

22   to Labor Code 98.6 and 96(k), she must prove that her off-duty conduct was the substantial

23   motivating factor for the City's decision to reorganize the Finance Department. Plaintiff cannot

24   prove by a preponderance of evidence that anyone at the City knew what she now claims she said

25   at Pioneer Restaurant. If no one at the City knew she engaged in protected speech, said speech

26   cannot be a substantial motivating factor in the decision to reorganize the Finance Department.

27   Plaintiff also has no evidence, other than speculation, that the City's stated legitimate, non-

28   retaliatory reason for reorganizing the Finance Department is pretext. Plaintiff cannot prove she

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

1  suffered any retaliation for her alleged protected speech so she cannot prove she suffered any

2  retaliation for her allegedly lawful off-duty conduct.

### 6. Claim 4: Mayor Manuel Cantu and the City of McFarland – Defamation

5  Plaintiff has no first-hand knowledge of what Cantu said to Puentes. Puentes asked Cantu

6  about the reorganization at Plaintiff's request, but she was not present during the conversation.

7  Puentes, who has little or no credibility at this point, is the only person besides Cantu who knows

8  specifically what was said. Puentes has signed two declarations, under oath, contradicting one

9  another as to what Cantu said and how she interpreted those statements. In order to prove

10  defamation, Plaintiff must prove Cantu made defamatory comments about her professional

11  competence. Puentes' testimony is the only evidence Plaintiff has of any defamatory comments.

12  Plaintiff further admits in her deposition that Puentes did not repeat the substance of her

13  conversation with Cantu to anyone else except Plaintiff. She also has no evidence that Cantu

14  repeated the specifics of his conversation with Puentes. The only evidence Plaintiff has that Cantu

15  made any defamatory remarks is the testimony of an extremely unreliable witness who has

16  changed her story three times since the start of this case. Plaintiff cannot prove by a

17  preponderance of evidence that Cantu ever made any defamatory statements about her

18  professional competence. Similarly, Plaintiff cannot prove Puentes understood Cantu's statements

19  to be defamatory. As explained above, Puentes has declared under penalty to perjury that she did

20  not understand Cantu's statements to be defamatory. She directly contradicted these statements in

21  her declaration in support of Plaintiff's Opposition to Summary Judgment.

22  As stated above, Plaintiff must prove Cantu's statements are false. Plaintiff has no

23  evidence that Cantu's statements were false or that he knew his statements were false when he

24  made them.

### C. DEFENDANTS' AFFIRMATIVE DEFENSES

26  In addition to the affirmative defenses discussed in conjunction with the claims above,

27  Defendants have pleaded and will argue several affirmative defenses at trial, including the

28  following.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

1.  **Affirmative Defense 21: Qualified Immunity on Plaintiff's § 1983 claim**

Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lytle v. Wondrash*, 182 F.3d 1083, 1086 (9th Cir. 1999). The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law....[I]f officials of reasonable competence could disagree on th[e] issue [of whether a specific action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986). The law regarding public-employee free speech claims will "rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity." *Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 980 (9th Cir. 1998). Although asserted as an affirmative defense, Plaintiff bears the burden of establishing: (1) that the individual defendant's conduct violated a constitutional right, and (2) the constitutional right was clearly established. *(Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Romero v. Kipsap County*, 931 F.2d 624, 627 (9th Cir. 1991); Keyser v. Sacramento City Unified School District, 265 F.3d 741, 747 (9th Cir. 2001)).

In this case, Plaintiff has no evidence anyone at the City even knew what specifically she discussed at Pioneer restaurant. If there is no evidence anyone at the City knew what specifically Plaintiff discussed, there is certainly no evidence Plaintiff's constitutional right was clearly established. Furthermore, if reasonable public officials could disagree on the issue of whether particular conduct is unlawful, then Wooner is entitled to qualified immunity.

2.  **Affirmative Defenses No. 14 and 19: Qualified Privilege on Plaintiff's Defamation claim**

Defendants will prove that Cantu is entitled to qualified privilege for any statements he may have made to Alicia Puentes. Qualified privilege for communications made without malice protects good faith, well-intended communications serving significant interests.

> "The so-called qualified privilege in subdivision (c) of section 47 protects communications made without malice to protect a recognized interest. This privilege applies to any communication made, 'without malice, to a person interested therein, (1) by one

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

1

2

3

4

> who is interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.' This privilege protects good faith, well-intended communications serving significant interests."

*Beroiz v. Wahl*, 84 Cal.App.4th 485, 493 (2000), citing Cal. Civ. Code §47(c).

5

6

7

8

9

10

11

In order for Plaintiff to recover against Cantu for defamation, she must prove that he acted with malice in making any alleged statements to Puentes. Cantu only responded to Puentes' question about Plaintiff's position was being eliminated. Plaintiff does not allege that Cantu boisterously announced to the whole City that she was bad at her job; any statements were well-intentioned and made in response to Puentes' inquiry. Plaintiff has no evidence to the contrary. Hence, even if Plaintiff is able to prove that Cantu made the alleged defamatory statements, she will still fail because Defendants will prove Cantu is entitled to a qualified privilege.

12

### 3.    Affirmative Defense 20: Failure to Comply With Tort Claims Act

13

14

15

Plaintiff did not submit her tort claim to the City within six months of the employee warning report. As a result, she cannot use the Warning Report as a basis for her Labor Code section 98.6 and 96(k) claim. (Cal. Gov. Code, § 910 et seq.)

16

### 4.    Affirmative Defense 8: After-Acquired Evidence

17

18

19

20

21

22

23

24

25

The "after acquired evidence" defense requires an employer to demonstrate that the employee's wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of the conduct at the time of the discharge. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238 (4th Cir. 1995); *O'Day v. McDonnell Douglas Helicopter Company*, 79 F.3d 756, 760 (9th Cir. 1996). The "after acquired evidence" doctrine shields an employer from liability or limits available remedies where, after a termination, the employer learns for the first time about the employee's wrongdoing, and that wrongdoing would have resulted in discharge. *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal.App.4th 620, 632 (1995).

26

27

28

In order to invoke the "after acquired evidence" defense, an employer must prove, by a preponderance of evidence, that the "wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1  the discharge." *Russell*, 65 F.3d 1229, 1238, *citing McKennon v. Nashville Banner Pub. Co.*, 513

2  U.S. 352, 360 (1995); *O'Day vs. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (9th Cir.

3  1996). Moreover, the employer need not have been legally justified in its decision to terminate the

4  employee on the basis of the after-acquired evidence, only that the employer would have made

5  the decision to terminate had it known the facts. Chin, Wiseman, Callahan & Exelrod, California

6  Practice Guide: Employment Litigation § 17:472 (2013); *McKennon*, 513 U.S. at 360.

7          Plaintiff was an at will employee. Wooner had sole discretion to terminate her for any

8  reason, so long as that reason is not discriminatory. Wooner testified in support of Defendants'

9  Motion for Summary Judgment that had he known Plaintiff secretly recorded the June 21, 2012

10  meeting and the July 26, 2012 meeting, he would have fired her for violation of existing City

11  policy pertaining to confidentiality and employee criminal conduct.[5] Moreover, given the

12  duplicitous manner in which Plaintiff made these recordings, Plaintiff's damages should be

13  limited to the date of the wrongful conduct, not the date Defendants' learned of the act. As such,

14  Plaintiff would have been terminated before her position was eliminated.

15          Plaintiff contends that this defense does not apply because she engaged in the unlawful

16  conduct after the City voted to eliminate her position. However, Plaintiff was entitled to apply for

17  several other City position and likely would have been given preference if she had applied for

18  another position. However, if she had been terminated for violating both state law and settled City

19  policy, she would have been excluded from all other City positions. Hence, she is not entitled to

20  any back pay for the time she was out of work or any emotional distress damages resulting from

21  the reorganization.

22          **5.**          **Affirmative Defense 4: Opinion as a defense to Defamation**

23          Cantu testified that when Puentes asked him why Plaintiff's position was being

24  eliminated, he told her that it was his understanding that the Finance Department needed to add

25  positions that required a greater degree of accounting knowledge and that Plaintiff should apply

---

[5] Plaintiff argues that the City also recorded the June 21, 2012 staff meeting; therefore, Plaintiff did not record a
27  confidential communication and there was no expectation of privacy. However, the City did not record the June 21,
2012 meeting; it recorded the June 22, 2012 budget meeting. Even if the City had recorded the June 21, 2012 staff
28  meeting, Wooner certainly had an expectation of privacy during the July 26, 2012 meeting in his private office
behind closed doors. Plaintiff's secret taping of her July 26, 2012 meeting would have also resulted in termination.

DEFENDANTS' TRIAL BRIEF

1   for one of the new positions. In determining whether a statement is fact or opinion, the jury must

2   consider the totality of the circumstances surrounding the alleged defamatory statement, and put

3   themselves in the place of the average listener and decide the natural and probable effect of the

4   statements. *Campanelli v. Regents of University of California*, 44 Cal.App.4th 572, 578 (1996). A

5   statement is less likely to be deemed opinion where the statement may be refuted by facts or

6   concrete, provable data. *Gould v. Maryland Sound Industries, Inc.*, 31 Cal.App.4th 1137, 1153

7   (1995).

8        Plaintiff's knowledge of the conversation between Cantu and Puentes derives solely from

9   Puentes. Puentes has no credibility. Cantu, on the other hand, has consistently testified that he

10  only stated his belief that the Finance Department needed to create positions with a greater degree

11  of accounting knowledge. He expressed his opinion as to what would be best for the City. Cantu's

12  opinion as to what would be best for the City derives only from evidence of his point of view and

13  could only be refuted by evidence that he did not actually have or share that opinion, and Plaintiff

14  has no evidence he told anyone that he believed the Finance Department should keep the same

15  level of skill.

16        **6.      Affirmative Defense 28: Truth as a defense to Defamation**

17        As explained above, Plaintiff must prove that Cantu's statements are false in order to

18  prevail on her claim of defamation. Conversely, Defendants will prevail if they can prove Cantu's

19  alleged statements were true. *Smith v. Maldonado*, 72 Cal.App.4th 637, 647 (1999). Cantu said

20  the City needed to create positions that required a greater degree of accounting knowledge. Even

21  if Plaintiff proves Cantu said the City needed employees who were not always asking what to do

22  next, Defendants will still prevail if they show Plaintiff lacked sufficient accounting knowledge

23  or that she frequently asked Claudia Ceja or Mosqueda what to do.

24        **7.      Affirmative Defense 31 and 32: No Actual Damages**

25        Even if Plaintiff were to prove Cantu made defamatory statements about her job

26  performance, she is only entitled to recover actual damages unless she can prove, by clear and

27  convincing evidence that Cantu knew his statements were false when he spoke to Puentes. CACI

28  No. 1702; Civ. Code § 48; *Khawar v. Globe International*, 19 Cal.4th 254, 273-274 (1998)

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

1   (Private figure plaintiffs must prove actual malice to recover punitive or presumed damages for

2   defamation if the matter is one of public concern)). Plaintiff has no evidence of any actual

3   damages. Plaintiff cannot even prove Cantu made any defamatory statements let alone that she

4   suffered any damages as a result of those alleged statements. In fact, Plaintiff testified she did not

5   suffer any damages as a result of Cantu's alleged statements – only that Cantu's alleged

6   statements made her feel badly about herself. Although a jury may find actual damages for hurt

7   feelings, damages will likely be nominal. See CACI No. 1702 (nominal damages may be as little

8   as one dollar.)

9          If a plaintiff has no evidence of actual damages, he or she must prove by clear and

10  convincing evidence that Cantu knew the statements were false or had serious doubts about the

11  truth of the statements. Cantu only said the Finance Department needed to create positions that

12  required a greater degree of accounting knowledge. Not only is this statement not injurious to

13  Plaintiff's reputation, it is true. Consequently, Plaintiff does not have anything close to clear and

14  convincing evidence that Cantu made defamatory comments he knew to be untrue.

### 8.   Affirmative Defense 2: Failure to Mitigate Damages

16         Defendants have the burden of proving by a preponderance of the evidence that:

17         (1)   Plaintiff failed to use reasonable efforts to mitigate damages; and

18         (2)   The amount by which damages would have been mitigated.

19  See Ninth Circuit Model Jury Instruction 5.3.

20         According to Sections 3.06 and 11.05 of the Employee Handbook, employees subject to

21  layoffs are entitled to placement on a re-employment list and are eligible for re-hiring within one

22  year. Defs. ['] Mot. Summ. J., Doc. 46-4, 67-86. Plaintiff was offered the chance to apply for five

23  other City positions, including the two newly created Finance Department positions. Id. However,

24  Plaintiff declined to apply for any other position because she thought she shouldn't have to and

25  because she had "too much pride." Defs. ['] Mot. Summ. J., Doc. 46-4, 28:19-29:1. Plaintiff

26  alleges she was unemployed for eleven months – between August 2012 and July 2013 and is

27  alleging damages in the form of lost wages. However, Plaintiff did not have to be unemployed for

28  eleven months – she chose to be. She could have easily been hired for another position with the

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

DEFENDANTS' TRIAL BRIEF

1    City if she had applied. Even if Plaintiff prevails on her claims, she will not be entitled to any lost

2    wages because she failed to mitigate her damages.

3                    **9.    Affirmative Defense 8: Punitive Damages**

4    Plaintiff seeks punitive damages for her first claim (§ 1983 free speech retaliation against Mr.

5    Wooner) and fourth claim (Defamation against Mr. Cantu).  In order to recover punitive damages

6    from a defendant in his individual capacity on Section 1983 claim, a plaintiff must prove that the

7    defendant's conduct "involve[d] reckless or callous indifference to the federally protected rights

8    of others" (*Smith v. Wade*, 461 U.S. 30, 56 (1983)) or involved "malicious, wanton, or oppressive

9    acts or omissions" (*Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005)).  Numerous courts have

10   held that employment decisions do not rise to the level of conduct necessary to support a claim

11   for punitive damages.  For example, in *Karcher v. Emerson Elec. Co.*, 94 F.3d 502 (8th Cir.

12   1996), the Court held that an instruction for punitive damages should not have been given to the

13   jury because the employer's failure to promote the plaintiff was not "outrageous." *Id.* at 509.  In

14   *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348 (9th Cir. 1984), the Court held that firing

15   an employee does not constitute "outrageous" conduct for purposes of supporting a claim for

16   intentional infliction of emotional distress. *Id.* at 1352; *see also Jones v. Tennessee Valley*

17   *Authority*, 948 F.2d 258, 266 (6th Cir. 1991) (barring plaintiff from receiving promotions,

18   bonuses and raises was not "outrageous" conduct).  Finally, in *Gile v. United Airlines, Inc.*, 213

19   F.3d 365 (7th Cir. 2000), an employee sought punitive damages from her employer for violating

20   the American with Disabilities Act.  The Court held that the employer's failure to accommodate

21   the employee's request to transfer to a different shift was insufficient to support punitive

22   damages. *Id.* at 376.  In this case, Plaintiff has no evidence Wooner acted with "reckless or

23   callous indifference" to her federally protected rights.

24            Plaintiff also alleges punitive damages against pursuant to Civil Code section 3294, on the

25   grounds that his conduct was "malicious and oppressive." Punitive damages are available against

26   Mayor Cantu if Plaintiff can prove by clear and convincing evidence that Mr. Cantu either knew

27   the statements were false or had serious doubts about the truth of the statements, and that he acted

28   with malice, oppression, or fraud. CACI No. 1702. Plaintiff's has no evidence Cantu acted with

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1  malice, oppression, or fraud and no evidence Cantu thought what he allegedly said was untrue.

2  **V.  CONCLUSION**

3  Plaintiff has a heavy burden at trial.  In order for Plaintiff to establish a prima facie case of
4  free speech retaliation, she must prove by a preponderance of the evidence that: (1) she engaged
5  in protected speech; (2) Wooner knew about Plaintiff's protected speech; (3) Wooner took
6  adverse action against Plaintiff; and (4) Plaintiff's protected speech was a substantial or
7  motivating factor behind the adverse action.  Furthermore, in order to establish that Wooner is
8  individually liable she must overcome Wooner's affirmative defense of qualified immunity by
9  establishing that Wooner's conduct violated a clearly established constitutional right that a
10  reasonable person would have known. In order to establish municipal liability against the City of
11  McFarland, she must prove that Wooner acted pursuant to an expressly adopted official policy or
12  a longstanding practice or custom of the City of McFarland when he took an adverse action
13  against Plaintiff; or that Wooner had final policymaking authority from the City of McFarland
14  when he took an adverse action against Plaintiff.

15  Plaintiff's cause of action for defamation against Cantu and the City is based on hearsay
16  and the testimony of an extremely unreliable witness. She has no evidence of any damages and no
17  evidence Cantu's statements were false. Even if she were to prove that Cantu made defamatory
18  statements to Puentes, Cantu is entitled to qualified privilege. Finally, Plaintiff must show malice
19  in order to obtain punitive damages on either the § 1983 claim or the defamation claim and she
20  has no evidence of any malice.

21
22  Dated:  October 24, 2014                           LIEBERT CASSIDY WHITMORE

23
24                              By: _____
25                                    Jesse J. Maddox
                                      Kimberly A. Horiuchi
26                                    Attorneys for Defendants CITY OF
                                      McFARLAND, JOHN WOONER,
                                      and MANUEL CANTU
27
28

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

## PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in Fresno, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years and not a party to the within action.

On **October 24, 2014,** I served the foregoing document(s) described as **DEFENDANTS' TRIAL BRIEF** in the manner checked below on all interested parties in this action addressed as follows:

Randall Martin Rumph
Law Offices of Randy Rumph
1401 19th Street, Suite 200
Bakersfield, CA  93301

☑   **(BY U.S. MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Fresno, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐   **(BY FACSIMILE)** I am personally and readily familiar with the business practice of Liebert Cassidy Whitmore for collection and processing of document(s) to be transmitted by facsimile. I arranged for the above-entitled document(s) to be sent by facsimile from facsimile number 559.449.4535 to the facsimile number(s) listed above. The facsimile machine I used complied with the applicable rules of court. Pursuant to the applicable rules, I caused the machine to print a transmission record of the transmission, to the above facsimile number(s) and no error was reported by the machine. A copy of this transmission is attached hereto.

Executed on October 24, 2014, at Fresno, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Susan L. Pugh

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704