UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANITA GONZALEZ, | ) | Case No.: 1:13-cv-00086 - JLT |
| Plaintiff, | ) ) | ORDER ON MOTIONS IN LIMINE |
| v. | ) ) | (Docs. 60, 61, and 62) |
| CITY OF MCFARLAND, et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

Before the Court are the motions in limine filed by Plaintiff Anita Gonzalez and Defendants City of McFarland, John Wooner, Manuel Cantu (collectively, "Defendants"), which were filed on October 10, 2014.  The Court held a final pre-trial conference on November 4, 2014, at which the Court heard the oral arguments of counsel.

**I.      Procedural History**

Plaintiff initiated this action by filing a complaint against the City of McFarland, California; John Wooner; and Manuel Cantu on January 17, 2013.  (Doc. 1.)  She filed a First Amended Complaint against Defendants on April 4, 2013.  (Doc. 15.)  Plaintiff alleged she was employed by the City of McFarland ("the City") beginning in 2003.  (Id. at 1.)  She was one of three employees in the City's finance department, and her duties included processing "utility and miscellaneous payments made to the City" as well as Accounts Payable.  (Id. at 2.)  Defendants filed a motion to dismiss and a motion to strike on April 18, 2013.  (Docs. 16, 17.)  The Court granted the motions in part, dismissing Plaintiff's

1

1    claim for defamation with prejudice and the claim arising under Labor Code §§ 98.6 and 96(k) without

2    prejudice for failure to exhaust administrative remedies.  (*See* Doc. 27 at 23.)

3         Plaintiff filed her Second Amended Complaint on July 9, 2013.  (Doc. 33.)  Thereafter, the

4    Labor Code § 224 was implemented, stating "[a]n individual is not required to exhaust administrative

5    remedies or procedures in order to bring a civil action under any provision of this code, unless that

6    section under which the action is brought expressly requires exhaustion of an administrative remedy."

7    In light of this, the Court granted a motion for reconsideration filed by Plaintiff, and reinstated her

8    claim arising under Labor Code §§ 98.6 and 96(k) on January 24, 2014.  (Doc. 45.)  Accordingly,

9    Plaintiff's claims include: (1) a violation of the First Amendment under 42 U.S.C. § 1983 by Wooner;

10   (2) a violation of 42 U.S.C. § 1983 by the City; (3) discrimination, discharge, or refusal to hire for

11   exercise of employee rights in violation of Cal. Labor Code 98.6 and 96(k) by the City; (4) violation of

12   California Civil Code § 52.1; and (5) defamation by Cantu and the City.  (*See* Docs. 15, 45.)

13        Defendants filed a motion for summary judgment, which was granted in part by the Court on

14   August 12, 2014.  (Doc. 50.)  The Court determined Defendants were entitled to summary adjudication

15   on Plaintiff's fourth claim for relief, but denied the motion as to the remaining claims.  (<u>Id.</u> at 15-38.)

16   **II.     Legal Standards Governing Motions in Limine**

17        "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

18   practice has developed pursuant to the district court's inherent authority to manage the course of

19   trials."  <u>Luce v. United States</u>, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in

20   limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present

21   potentially prejudicial evidence in front of a jury."  <u>Brodit v. Cabra</u>, 350 F.3d 985, 1004-05 (9th Cir.

22   2003) (citations omitted).

23        Importantly, motions in limine seeking the exclusion of broad categories of evidence are

24   disfavored.  <u>See Sperberg v. Goodyear Tire and Rubber Co.</u>, 519 F.2d 708, 712 (6th Cir. 1975).  The

25   Court "is almost always better situated during the actual trial to assess the value and utility of

26   evidence."  <u>Wilkins v. Kmart Corp.</u>, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).  The Sixth Circuit

27   explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in

28   trial]" as opposed to ruling on a motion in limine.  <u>Sperberg</u>, 519 F.2d at 712.  Nevertheless, motions

1  in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded

2  management of the trial proceedings."  <u>Jonasson v. Lutheran Child & Family Services</u>, 115 F.3d 436,

3  440 (7th Cir. 1997).

4  **III.    Plaintiff's Motion in Limine No. 1 (Doc. 61)**

5          Plaintiff requests that the Court "exclude any evidence relating to alleged performance issues

6  including in particular alleged theft of funds from the City in 2009 or 2010."  (Doc. 61.)  Plaintiff

7  notes that Defendant John Wooner reported in his declaration that "[t]he decision to reorganize the

8  Finance Department had nothing to do with Plaintiff's work performance."  (<u>Id.</u> at 1.)  As a result,

9  Plaintiff contends "any testimony or argument that Plaintiff had performance issues is irrelevant."

10  (<u>Id.</u>)  Further, Plaintiff argues that "any admissibility purposes are substantially outweighed by

11  prejudice which would occur by admitting this evidence as it would involve confusion to the jury as

12  the City is claiming a layoff occurred for non-performance reasons and then claims performance issues

13  are relevant."  (<u>Id.</u> at 1-2.)

14          On the other hand, Defendants argue, "Evidence of Plaintiff's work performance is directly

15  relevant to Defendants' affirmative defenses."  (Doc. 67 at 2.)  Defendants observe that "Plaintiff's

16  defamation claim alleges Cantu made statements to Alicia Puentes that implied Plaintiff was

17  incompetent at her job."  (<u>Id.</u> at 2.)  Because the truth is a defense to defamation, Defendants assert that

18  "evidence of Plaintiff's work performance is directly relevant to Mr. Cantu and the City's affirmative

19  defense that Mr. Cantu's alleged statements were true."  (<u>Id.</u>, citing <u>Gilbert v. Sykes</u>, 147 Cal.App.4th

20  13, 27 (2007) ("There can be no recovery for defamation without falsehood.")).  Further, Defendants

21  assert evidence related to Plaintiff's work performance is "directly relevant to the City's legitimate non-

22  retaliatory reason for reorganizing the finance department," because Mr. Wooner's and Finance

23  Director Rocio Mosqueda's observations of the existing Finance Department employees' performance

24  led them to believe the employees did not have the knowledge and skills necessary for the new

25  positions."  (<u>Id.</u> at 3.)

26          Under the Federal Rules of Evidence, any evidence that is not relevant is not admissible.

27  Fed.R.Evid. 402.  To determine that evidence is relevant, the Court must find "(a) it has a tendency to

28  make a fact more or less probable than it would be without the evidence; and (b) the fact is of

consequence in determining the action." Fed.R.Evid. 401.  Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Importantly, to succeed on a claim for defamation, a plaintiff must establish the defendant made "the intentional publication of a statement of fact that is false." Smith v. Maldonado, 72 Cal.App.4th 637, 644 (1999) (citing Cal. Civ. Code §§ 45, 46).  Because the falsity of a statement is an element of defamation, "[i]n all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability." Smith, 77 Cal.App.4th at 646 (citing, e.g., Campanelli v. Regents of Univ. of California, 44 Cal. App. 4th 572, 581-582 (1996); Schmidt v. Foundation Health, 35 Cal. App. 4th 1702, 1715 (1995); Ellenberger v. Espinosa, 30 Cal. App. 4th 943, 953 (1994)).  The defendant has the burden of pleading and proving the truth of a statement, and once the defendant has done so the truth is "an *absolute* defense." Id. (emphasis in original); Lipman v. Brisbane Elementary School Dist.,55 Cal. 2d 224, 233 (1961).

In the operative complaint, Plaintiff alleges defendant "Cantu told Alicia Puentes that the City needed to have a staff that would be able to perform alone and not be asking for help or asking what to do," and Plaintiff and her coworkers in the finance department "were always asking for help and what to do next." (Doc. 33-1 at 9, ¶ 60.)  Defendants responded as a twenty-eighth affirmative defense that the statements made by Cantu were reasonably believed to be true.  (Doc. 35 at 12.)  If Defendants establish that Plaintiff had difficulties with work performance, and was constantly seeking assistance with her work, the truth of Cantu's statements is an absolute defense to Plaintiff's defamation claim. As a result, whether or not Plaintiff had any problems with work performance "has a tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining" Plaintiff's defamation claim.  *See* Fed.R.Evid. 401.  Further, such evidence is not likely to cause the jury to confuse the issues.  Accordingly, Plaintiff's motion in limine for the exclusion of evidence related to Plaintiff's work performance (Doc. 61) is **DENIED**.

**IV.     Plaintiff's Motion in Limine No. 2 (Doc. 62): Exclusion of Evidence related to City Audit**

Plaintiff seeks the exclusion of "any evidence relating to alleged audit reports or results

4

relating to alleged accounting issues supposedly contained therein." (Doc. 62 at 1.) According to

Plaintiff, Defendants should "not be allowed to discuss during opening statement or during testimony

or argument the alleged contents of audits that reflected alleged problems with accounting issues."

(Id.) Plaintiff argues the Court that any statements by Cantu and Mosqueda related to the audits "is

inadmissible as hearsay and . . . testimony about the content of such audits violates the best evidence

rule." (Id.) Further, Plaintiff asserts that "any alleged audits indicating accounting errors are also

irrelevant" because "Plaintiff requested all documents relied upon in the reorganization and no audits

were submitted or produced." (Id. at 2.)

Opposing the exclusion of evidence related to the audit, Defendants assert they intend to call

Mark Albert, who conducted the Finance Department audit, as a witness. (Doc. 66 at 2.) Defendants

contend that any testimony from Albert "About the City's Finance Department are not hearsay because

he is the declarant and his statements about the City's Finance Department will be made in court and

subject to cross-examination at trial." (Id., citing Anderson v. U.S., 417 U.S. 211, 200 (1974) (The

primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to

cross-examine the absent declarant whose out-of-court statement is introduced into evidence."))

Notably, Defendants did not present any evidence from Mark Albert at the summary judgment

phase. The Court only had statements from defendants Manuel Cantu and Rocio Mosqueda regarding

the contents of the audit, which was also not presented to the Court. Cantu reported, "In 2011, the

City of McFarland had an audit conducted that recommended raising the qualifications in the Finance

Department." (Doc. 50 at 4, quoting Doc. 46-4 at 199.) Plaintiff objected to the statement as hearsay

and a violation of the best evidence rule, which states "[a]n original writing, recording, or photograph

is required in order to prove its content unless these rules or a federal statute provide otherwise." (See

id.; Fed.R.Evid. 1002.) The Court sustained the objections, explaining "the statements in Cantu's

declaration [were] used to 'prove the contents of a writing'—namely, that the audit included a

recommendation to raise the qualifications of the Finance Department employees," and his "statements

purporting to provide the information contained in the audit [was] hearsay." (Id. at 4-5.) Similarly,

the Court sustained the objection to Mosqueda's statement that "[t]he auditor pointed out to [her] that

there were several errors in the City's billing and coding" as impermissible hearsay. (Id. at 5.) These

objections are no longer pertinent.

Notably, though Mosquedo testified that the audit result was not a basis for the reorganization—which, they say was budget-related—this is evidence that could explain why she and Wooner wanted to replace the three employees with employees with a greater level of accounting competency.  Their state of mind is pertinent to Defendants' assertion that they would have taken the same action to reorganize the department regardless of the protected speech and that the reorganization or its impacts were not motivated by a retaliatory animus.

Consequently, though the content of the audit and the audit itself will be introduced, given it was not produced in discovery, Plaintiff's motion to exclude any evidence related to the audit report (Doc. 62) is **DENIED IN PART**.  Mosquedo and Wooner may testify how coding errors discovered during the audit impacted their decision making but they may not detail the content of the audit or introduce the audit documents.

## V.      Defendants' Motion in Limine No. 1 (Doc. 60 at 4-9)

Defendants seek the exclusion of "all testimony and/or evidence of other lawsuits, actions, and/ or administrative complaints against Defendants."  (Doc. 60 at 2.)  Defendants explain they "anticipate that Plaintiff will attempt to introduce evidence and/or testimony regarding current and previous lawsuits, actions, complaints, or allegations ("Claims") by other individuals against Defendants, including, but not limited to Claims based on retaliation and discrimination."  (Id. at 4.)  Specifically, Defendants believe Plaintiff may call Sylvia Escalante, Cecilia Medina, Angelica Gutierrez, Vidal Santillano, Reynaldo De Leon, and Christy King to testify about Claims against Wooner and the City, which Defendants believe "should be excluded because it is not relevant to Plaintiff's claims and is unfairly prejudicial to Defendants."  (Id.)  Thus, Defendants assert such testimony and evidence should be excluded under Rules 402 and 403 of the Federal Rule of Evidence.  (Id. at 4-7.)  Further, Defendants contend any testimony and evidence related to Defendants' treatment of others who alleged unlawful employment practices is impermissible character evidence under Rule 404(b).  (Id. at 8-9.)

At the hearing, Defendants clarified that they do not seek to preclude the testimony of Escalante and Medina and admit that neither have filed a lawsuit, complaint or other administrative actions which would bring their testimony within the confines of this motion.  Thus, as to these witnesses, the motion

is **DENIED**.

According to Defendants, "Courts routinely prohibit witnesses unrelated to the plaintiff's case from testifying about unlawful conduct they claim to have suffered." (Doc. 60 at 4.) Defendants note the Second Circuit determined "it was reversible error to allow the plaintiff in that case to introduce evidence of alleged discrimination in the termination of other employees." (Id., citing Haskell v. Kaman Corp, 743 F.3d 113 (2nd Cir. 1984)). The court found "the trial court erred in allowing former employees to testify concerning the circumstances of their terminations," explaining "such proof was not relevant to the question of whether the plaintiff was terminated for discriminatory reasons." (Id., citing Haskell, 743 F.3d at 122.) In addition, Defendants assert the Fifth Circuit determined testimony of others regarding "their own individualized dealings" with the defendant did not relate to the issue of whether the plaintiff suffered discrimination by the defendant. (Id. at 5-6, citing Groff v. Continental Oil Co., 678 F .2d 593 (5th Cir. 1982), *overruled on other grounds by* Carter v. South Cent. Bell, 912 F.2d 832 (5th Cir. 1990)). Therefore, the Defendants contend the Court should find that "[w]hether other current or former City employees claim to have suffered unlawful employment practices is wholly irrelevant to this case." (Id. at 5.)

Significantly, however, Plaintiff has not only a discrimination claim, but also a claim for retaliation in violation of the First Amendment. The Ninth Circuit has determined a plaintiff may rely upon a comparison with other similarly situated people or demonstrate other circumstances which provide an inference that retaliation was the motive. Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010). Whether "me too" evidence can be admitted at trial is a case-by-case determination that "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 388 (2008).

In general, evidence of other acts or wrongs may be admitted to demonstrate motive. Fed. R. Evid. 404(b). Indeed, courts admit this type of evidence frequently, upon the proper showing. For example, in Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1286 (11th Cir. 2008)— a case involving claims of retaliation and discrimination—the court held: "The 'me too' evidence was admissible, under Rule 404(b), to prove the intent of Bagby Elevator to discriminate and retaliate."

1    The court permitted the evidence under 404(b) to demonstrate the unlawful intent of a common

2    decision maker, even though the common decision maker was only one of several, and the

3    circumstances were very different from those of the plaintiff.   <u>Id</u>. at 1286.  The court held similarly in

4    <u>Demers v. Adams Homes of Northwest Florida, Inc.</u>, 321 F. App'x 847, 853-854 (11th Cir. 2009),

5    when other women were permitted to testify as to the unlawful intent.

6        In <u>Buckley v. Mukasey</u>, 538 F.3d 306, 319 (4th Cir. 2008), the court determined that evidence

7    of retaliatory motive is relevant under Fed. R. Evid. 401 and is admissible under 404(b).  Likewise, in

8    <u>Griffin v. Finkbeiner</u>, 689 F.3d 584, 598-99 (6th Cir. 2012), the court found error when the district

9    court limited the introduction of "me too" evidence only to the same decision-maker.  The court

10   observed,

11       Whether the same actors are involved in each decision is a factor, but <u>Sprint</u> makes
         clear that it cannot be the only factor in the decision whether to admit "other acts"
12       evidence. Notably, the testimony in <u>Sprint</u> involved supervisors "who played no role in
         the adverse employment decision challenged by the plaintiff." 552 U.S. at 380, 128
13       S.Ct. 1140. Here, the district court did not consider other ways in which the excluded
         evidence could be "related ... to the plaintiff's circumstances and theory of the case," id.
14       at 388, 128 S.Ct. 1140, such as temporal and geographical proximity, whether the
         various decisionmakers knew of the other decisions, whether the employees were
15       similarly situated in relevant respects, or the nature of each employee's allegations of
         retaliation.
16

17   <u>Id</u>. at 598-99.  The Ninth Circuit agrees, as set forth in <u>Heyne v. Carruso</u>, 69 F.3d 1475, 1481 (9th Cir.

18   1995).  In <u>Heyne</u>, the Court reversed the trial court's decision to preclude "me too" evidence, finding

19   evidence from other employees who suffered harassment by the defendant was probative of the

20   defendant's motive for firing her.  <u>Id</u>.

21       Here, Plaintiff asserts Reynaldo DeLeon was "terminated for complaints about how funds of the

22   city were being misspent." (<u>Id</u>. at 1.)  As the Ninth Circuit explained, such testimony from these

23   individuals should be permitted, because Escalante and Medina are part of the same "group" as

24   Plaintiff—Finance Department employees whose positions were reorganized by the City—and

25   DeLeon's testimony may be used establish the inference of a retaliatory motive.  <u>See Heyne</u>, 69 F.3d at

26   1481; <u>Hawn</u>, 615 F.3d at 1156.  However, the Court has insufficient information before it to determine

27   whether the testimony DeLeon would offer should be admitted.  Thus, the Court **RESERVES** ruling on

28

the admissibility of this testimony and any other "me too" evidence unless and until it hears this

testimony outside the presence of the jury.

## VI.    Defendants' Motion in Limine No. 2 (Doc. 60 at 10-14)

Defendants request that the Court "exclude all testimony and/or opinion evidence from non-

supervisory employees/non-decision-makers concerning Plaintiff's work performance." (Doc. 60 at 2.)

Defendants contend such testimony and evidence should only be obtained "from persons responsible

for evaluating Plaintiffs performance and/or who participated in the alleged employment actions at

issue in this matter."  (Id. at 10.) According to Defendants, "opinion testimony from individuals who

did not supervise Plaintiff's work in the Finance Department" is irrelevant, because it "will not aid the

jury in deciding the essential issues."  (Id.)  In addition, Defendants argue:

> [T]estimony pertaining to Plaintiff performance offered by employees other than
> Plaintiff's supervisors (i.e., current City Manager John Wooner, former City Manager
> Gerald Forde, and current Finance Director Rocio Mosqueda) has no bearing on the
> fundamental issue of whether the decision-makers retaliated against Plaintiff because of
> her alleged protected speech or reorganized the Finance Department positions for
> legitimate, non-retaliatory reasons. Instead, the only relevant inquiry is the assessment
> of Plaintiff's performance by those who are responsible for assessing her performance
> and taking action thereon. *Kilgore v. Sears, Roebuck & Co.*, 722 F.Supp. 1535, 1541
> (N.D. Ill. 1989).

(Id. at 11.)  Defendants assert testimony from Plaintiff's co-workers regarding her work performance is

irrelevant, lacks probative value, and is improper opinion evidence.  Defendants conclude such

testimony must be excluded under Federal Rules of Evidence 402, 403, 602, and 701. (Id. at 12-13.)

On the other hand, Plaintiff maintains that testimony from others, including observations "as to

whether [Plaintiff] was constantly asking for help . . . is relevant and should be admitted" in light of

her claim for defamation.  (Doc. 69 at 2.)  Plaintiff notes defendant Wooner "declared that he had no

issues with Plaintiff's performance," and she intends to present this testimony.  (Id. at 1.)  She also

intends to present evidence related to whether or not she asked for assistance and asked what she

needed to do next at her job to support her claim for defamation.  (Id. at 1-2.)

The observations of Plaintiff's co-workers and others who may have observed her at work are

relevant to support Plaintiff's defamation claim.  Witnesses may testify as to their personal knowledge

of Plaintiff's work performance, and offer opinions "which are (a) rationally based on the perception of

the witness and (b) helpful to a clear understanding of . . . the determination of a fact in issue."  Fed. R.

1   Evid. 701; *see also* Fed. R. Evid. 602 (witnesses may testify to a matter when "evidence is introduced

2   sufficient to support a finding that the witness has personal knowledge of the matter").  Here, the jury

3   will have to decide the truth or falsity of Cantu's statements that "the City needed to have a staff that

4   would be able to perform alone and not be asking for help or asking what to do," and Plaintiff and her

5   coworkers in the finance department "were always asking for help and what to do next."  (Doc. 33-1 at

6   9, ¶ 60.)  Non-supervisory co-workers who observed Plaintiff while working may have personal

7   knowledge regarding whether she was able to work alone or asked for assistance from others.  Because

8   such observations are relevant and have significant probative value related to the defamation claim,

9   Defendants' motion in limine No. 2 is **DENIED**.

10  **VII.    Defendants' Motion in Limine No. 3 (Doc. 60 at 15-18)**

11          At the hearing, Defendants withdrew motion in limine no. 3.

12  **VIII.   Defendants' Motion in Limine No. 4 (Doc. 60 at 19-20)**

13          Defendants assert the Court should "exclude all testimony and/or evidence regarding Plaintiff's

14  alleged conversation about Rocio Mosqueda prohibiting Plaintiff from assisting customers at the front

15  counter of the Finance Department."  (Doc. 60 at 2.)  Defendants assert such evidence and testimony

16  "is irrelevant under Federal Rule of Evidence 402 and unfairly prejudicial under Federal Rule of

17  Evidence 403."  (Id. at 19.)  Defendants fail to explain how this evidence is prejudicial or how it paints

18  Mosquedo in an unfair light.

19          On the other hand, in light of Plaintiff's defamation claim, the Court anticipates the parties will

20  present evidence of her work performance.  Part of this may include Plaintiff's position that she was

21  well-liked at the counter such that members of the public would ask to see her.  Thus, the Court

22  concludes that the probative value of evidence identifying Plaintiff's job duties and restrictions

23  outweighs the danger of unfair prejudice.  Therefore, Defendants' motion to exclude evidence related to

24  the work restrictions placed upon Plaintiff by Mosqueda is **DENIED**.

25  **IX.    Defendants' Motion in Limine No. 5 (Doc. 60 at 21)**

26          Defendants requests that the Court "exclude expert testimony and evidence not included in

27  Plaintiff's Expert Disclosures."  (Doc. 60 at 2.)  Defendants assert:  "Plaintiff did not designate any

28  retained or non-retained experts, and no expert reports were produced pursuant to Fed. R. Civ. P.

26(a)(2)(A)."  (Id. at 21.)  Also, Defendants report that "no doctor has been designated for the purpose of offering any opinion testimony as it relates to any subject."  (Id.)  However, Plaintiff identified Drs. Mary Milkie-Andrews and Uzma Khan on the pretrial witness list, and Defendants anticipate she may offer testimony from these physicians regarding her "depressive episodes at or near the time she learned about the re-organization."  (Id.)  Defendants assert the Court should exclude any testimony from the physicians, or any other "expert opinion testimony offered by Plaintiff as no information was disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(A), (B), or (C)."  (Id.)

On the other hand, Plaintiff asserts she identified her "medical care providers in her disclosures which were submitted under Rule 26(a)(1) and (2)" on January 9, 2012.  (Doc. 72 at 1; Doc. 72-1.)  In the initial disclosures, Plaintiff indicated Drs. Milkie-Andrews and Khan "treated Plaintiff for conditions related to her employment with the City of McFarland and [have] knowledge concerning that course of treatment, including but not limited to diagnosis of issued suffered by Plaintiff, causation, and steps taken to alleviate those issues."  (Doc. 72-1 at 4, ¶¶ 15-16.)  Because Drs. Milkie-Andrews and Khan were her treating physicians, Plaintiff asserts no expert reports were required and that she complied with the disclosure requirements of Rule 26(a)(2)(A). (Doc. 72 at 1, citing, e.g., Goodman v. Staples the Office Superstore, LLC, 644 F.3d 817, 825-826 (9th Cir. 2011); Armatis v. Owens-Brockway Glass Container Inc., 2010 WL 148692 (E.D. Cal. 2010); Lindsey v. City of Santa Paula, 2001 WL 36097435 (C.D. Cal. 2001)).

The disclosure of expert witnesses is governed by Rule 26(a) of the Federal Rules of Procedure. Parties must disclose he "identity of any witness" who may be used at trial to present evidence pursuant to Rules 702, 703, or 705, and witnesses who are "retained or specially employed to provide expert testimony" must provide an expert report.  Fed. R. Civ. P. 26(a)(2).  In general, a treating physician is neither retained nor specially employed to provide expert testimony, as he or she is a percipient witness of the treatment rendered.  In Goodman, the Ninth Circuit addressed the situation of "hybrid" experts and provided guidance regarding when a treating physician must prepare a Rule 26(a)(2)(B) report. The Court determined a treating physician is not required to make an expert report to the extent the treating physician's opinions are formed during the course of treatment and limited to the scope of treatment rendered.  Goodman, 644 F.3d at 826.  Notably, Goodman considered Fed. R. Civ. P.

26(a)(2) before the 2010 amendment.

In 2010, Fed. R. Civ. P. 26(a)(2)(C) was amended to address situations, like here, where a party seeks to provide the testimony of a non-retained percipient expert.  The Rule states, "if the witness is not required to provide a written report, this disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected testify." See Fed.R.Civ.P. 26(a)(2)(C). These disclosure requirements were added "to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions." See Adv. Comm. Notes to 2010 Amendments. The disclosures were designed to be "considerably less extensive" than those required under Rule 26(a)(2)(B) and courts "must take care against requiring undue detail." Id. Treating physicians are primary examples of those who must be identified under Rule 26(a)(2)(A) and provide disclosures pursuant to Rule 26(a)(2)(C) as they may testify as both a fact and expert witness. Though Plaintiff argues that treating physicians need not comply, the cases upon which she relies were decided before the 2010 amendment to Fed.R.Civ.P. 26(a).

Here, indisputably, Plaintiff identified Dr. Mary Milkie Andrews and Dr. Uzma Kahn in her January 9, 2012 disclosure.  (Doc. 72-1 at 5)  Clearly, also, she identified the subject matter upon which each would testify.  Id.  However, what she did not do is identify "a summary of the facts and opinions to which the witness is expected testify."  Indeed, from the disclosure, there is no way to determine what the opinions are that the doctors will express or the facts upon which they rely to form these opinions.  Though extensive detail was not required, *some* detail was. <u>Pineda v. City & Cnty. of San Francisco</u>, 280 F.R.D. 517, 523 (N.D.Cal.2010). Thus, though the Court agrees that no expert report was required, the disclosure was deficient.

According to Federal Rule of Civil Procedure 37(c)(1), if a party fails to properly disclose an expert, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Rule 37(c)(1) is limited to a party's failure "to provide information or identify a witness as required by Rule 26(a) or 26(e)." See <u>id</u>. The burden to prove harmlessness is on the party seeking to avoid Rule

37's sanction. <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1107 (9th Cir.2001).

Here, though the Court suspects that the failure to comply with the disclosure requirements was due to a lack of awareness of the 2010 change to Fed. R. Civ. P. 26(a), Plaintiff has not offered argument that her failure to comply with the disclosure requirement was substantially justified or harmless. The Court cannot rely upon its own speculation as a substitute for arguments that could have been made on Plaintiff's behalf. Failure to disclosure the scope of expected expert testimony may prejudice an opposing party in its ability to properly depose that witness, select a rebuttal expert witness, and prepare for trial. *See* <u>BP W. Coast Prods, LLC v. Shalabi</u>, 2013 WL 1694660, at *2 (W.D.Wash. Apr. 18, 2013) (excluding witness as experts where the non-moving party failed "to provide more than a one sentence description" of expected expert testimony, leaving the moving party "no way of preparing to oppose the witnesses"). Thus, Defendants' motion to exclude this expert testimony is **GRANTED**.

## X.   Defendants' Motion in Limine No. 6 (Doc. 60 at 22-23)

Defendants seek "[t]o exclude evidence and/or reference to the Employee Warning Report as an adverse employment action." (Doc. 60 at 2.) According to Defendants, "[t]he issuance of an Employee Warning Report does not constitute an adverse employment action." (<u>Id.</u> at 22.) However, in ruling upon Defendants' motion for summary judgment, this Court determined the issuance of the Employee Warning Reports to Plaintiff and her coworkers *is* an adverse employment action, because the warnings were "reasonably likely to deter employees from engaging in a protected activity." (Doc. 50 at 22, quoting <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 975 (9th Cir. 2003)).

Defendants also assert that Plaintiff is "shift[ing] her position at this late date" to assert that the issuance of the Employee Warning Report was an adverse employment action, and this purported change is "unfair to Defendants." (Doc. 60 at 23). However, Plaintiff has consistently alleged that her First Amendment rights were violated "by (1) disciplining Plaintiff with the "Employee Warning report" on April 27, 2012, and (2) eliminating her position. . ." (See Doc. 1 at 5; Doc. 33-1 at 5, emphasis added.) Thus, Defendants have been on notice since the filing of the initial complaint on January 17, 2013 that Plaintiff considered the Employee Warning Report to be an adverse action in violation of her First Amendment rights, and she has not deviated from this position.

1   Whether an adverse action was taken in retaliation is a legal conclusion that the jury must

2   determine.  The fact that Plaintiff lacks the legal training such to be able to list each action which her

3   lawsuit claims constitutes retaliation is the very reason she hired a lawyer.  Indeed, no witness—

4   Plaintiff included—will be permitted to testify that any act was retaliation.  Plaintiff described the

5   events at issue and counsel ensured that Defendants were not misled.  To the contrary, Defendants

6   were fully aware from the outset of the litigation, that evidence related to the written warning would

7   be offered as evidence of an adverse action such to support her claims.  Consequently, Plaintiff will

8   not be precluded from taking the position that the warning was an adverse action. Defendants'  motion

9   in limine No. 6 is **DENIED.**

10   **XI.      Defendants' Motion in Limine No. 7 (Doc. 60 at 24-25)**

11   Defendants anticipate that Plaintiff "will attempt to introduce evidence at trial of the City's risk

12   liability pool and/or communications between the City and its liability pool administration."  (Doc. 60

13   at 24.)  Defendants assert such evidence is irrelevant and inadmissible pursuant to the Federal Rules of

14   Evidence, and request the Court "exclude any mention of Defendants' risk liability pool, or any

15   evidence that Defendants participate in a risk liability pool."  (Id. at 2.)

16   Information regarding Defendants' risk liability pool is not relevant to Plaintiff's claims.  *See*

17   Fed. R. Evid. 401.  Even if such information were relevant, it should be excluded because its probative

18   value is substantially outweighed by both a danger of unfair prejudice to Defendants.  Fed. R. Evid.

19   403.  Notably, Plaintiff filed a notice of non-opposition to the motion.  (Doc. 74.)  Accordingly,

20   Defendants' motion in limine No. 7 is **GRANTED**.

21   **XII.     Defendants' Motion in Limine No. 8 (Doc. 60 at 26)**

22   Defendants seek to preclude Plaintiff from presenting evidence in support of claims previously

23   dismissed by the Court.  (Doc. 60 at 2, 26.)  Defendants note the dismissed Plaintiff's claim for

24   defamation against defendant Wooner, and the Court granted the motion for summary adjudication of

25   Plaintiff's claim for a violation of Cal. Civ. Code § 52.1.  (Id. at 26.)  Defendants argue evidence related

26   to these claims is irrelevant and, as such, should not be admitted.  The Court agrees, and Plaintiff has

27   not opposed this motion.  Therefore, Defendants' motion in limine No. 8 is **GRANTED**, and Plaintiff

28   **SHALL NOT** introduce evidence related to her Bane Act claim and defamation claim against Wooner.

1    **XIII.   Defendants' Motion in Limine No. 9 (Doc. 60 at 27-29)**

2         Defendants request that the Court "exclude all evidence that Wooner and/or Mosqueda were

3    required to conduct an investigation into Plaintiff's alleged speech."  (Doc. 60 at 2.)  Defendants assert:

4         [T]he Court interpreted *Waters v. Churchill*, 511 U.S. 661 (1993) as requiring Wooner
          to investigate the specifics of Plaintiffs alleged comments during her breakfast

5         conversation at Pioneer Restaurant, simply because he did not hear about the comments
          first-hand. Doc. 50, 24:19-21.

6              Waters did not require Mr. Wooner to conduct an investigation in this case, and
          the Court should exclude any evidence that Wooner failed to conduct an investigation

7         into Plaintiffs alleged speech because it is irrelevant and unduly prejudicial.

8    (Id. at 27.)  Thus, in essence, Defendants request that the Court reconsider its findings that "Wooner

9    was placed on notice that an investigation was needed and he acted unreasonably in failing to conduct

10   one." (Doc. 50 at 25.)

11        Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and

12   conservation of judicial resources."  Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003).  A

13   reconsideration motion "should not be granted absent highly unusual circumstances."  McDowell v.

14   Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999), cert. denied, 490 U.S. 1059 (1989). Reconsideration is

15   appropriate if the court: (1) is presented with newly discovered evidence; (2) has committed clear error

16   or the initial decision was manifestly unjust; or (3) is presented with an intervening change in

17   controlling law.  School District 1J, Multnomah County v. AC and S, Inc., 5 F.3d 1255, 1263 (9th Cir.

18   1993), cert. denied, 512 U.S. 1236 (1994). In addition, there may be other highly unusual circumstances

19   warranting reconsideration.  Id.  Under this Court's Local Rule 230(j), a party seeking reconsideration

20   must demonstrate "what new or different facts or circumstances are claimed to exist which did not exist

21   or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the

22   facts or circumstances were not shown at the time of the prior motion."

23        Importantly, motion for reconsideration "is not a vehicle for relitigating old issues, presenting

24   the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the

25   apple.'"  See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).  "A party seeking

26   reconsideration must show more than a disagreement with the Court's decision, and recapitulation of

27   the cases and arguments considered by the court before rendering its original decision fails to carry the

28   moving party's burden."  United States v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal.

2001) (internal citations omitted).  "To succeed, a party must set forth facts or law of a strongly

convincing nature to induce the court to reverse its prior decision." Id.

Here, Defendants fail to show more than their disagreement with the Court's decision as part of

its order granting in part and denying in part their motion for summary judgment.  The Court

considered the facts of the case and the oral arguments of counsel, explaining:

> Defendants assert that Wooner—and the City Council—did not know the specific topics of conversations Plaintiff discussed during the breakfast at Pioneer Restaurant. (Doc. 46-3 at 13.) However, employer's unreasonable conclusion that the employee's statements were not protected will not insulate the employer from liability for retaliation.  *See Waters v. Churchill*, 511 U.S. 661, 677-78.  Here, Wooner was informed that Plaintiff had "bad-mouthed" the City but failed to investigate what Plaintiff had said and refused to allow her and the others to explain.  Notably, "Criticism, no matter how obnoxious or offensive, of government officials and their policies clearly addresses matters of public concern." *Casey v. City of Cabool*, 12 F.3d 799, 802 (8th Cir.1993).  Thus, Wooner was placed on notice that an investigation was needed and he acted unreasonably in failing to conduct one.

(Doc. 50 at 24-25.)  Although Defendants disagree with the Court's determination, this is insufficient

to carry the burden to demonstrate reconsideration is appropriate.  See Sequa Corp., 156 F.3d at 144;

Westlands Water Dist., 134 F.Supp.2d at 1131.

Evidence that Defendants' conducted or failed to conduct an investigation to determine

whether Plaintiff engaged in protected speech is relevant to the reasonableness of Wooner's action in

disciplining Plaintiff and it is not likely to confuse the jury. Rather, it will assist the jury in

determining whether Plaintiff's First Amendment rights were violated.  Consequently, Defendant's

motion in limine No. 9 is **DENIED**.


IT IS SO ORDERED.

Dated:   __**November 5, 2014**__                    _____**/s/ Jennifer L. Thurston**
                                                   UNITED STATES MAGISTRATE JUDGE

16